# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **EDMUND DI LISCIA**, et al., | Civil Action No. 1:21-cv-01047-TJK |
| *Plaintiffs*, | |
| v. | **STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF MOHAMMED SHOYEB'S APPLICATION FOR PRELIMINARY INJUNCTION** |
| **LLOYD JAMES AUSTIN III**, et al., | |
| *Defendants*. | |

## TABLE OF CONTENTS

INTRODUCTION ......................................................................................................1

BACKGROUND ......................................................................................................4

STANDARD FOR GRANTING PRELIMINARY INJUNCTIVE RELIEF ..............................10

ARGUMENT ........................................................................................................10

    I.    OS2 Shoyeb is likely to succeed on his RFRA claim.................................11

        A.  OS2 Shoyeb is sincerely compelled by his Muslim faith to abstain
            from shaving and instead maintain a beard...........................................12

        B.  The Navy's grooming regulations substantially burden OS2 Shoyeb's
            religious expression. ..........................................................................13

        C.  The Navy has no compelling interest in forcing OS2 Shoyeb to
            forgo his religious practice to continue serving his country. ....................14

        D.  Even if the Navy did have a compelling interest here, forcing OS2
            Shoyeb to violate his faith is not the least restrictive means of
            furthering that interest...........................................................................19

    II.   OS2 Shoyeb is likely to succeed on his Free Exercise Clause claim...........................23

    III.  OS2 Shoyeb is likely to succeed on his Equal Protection claim.................................25

    IV.  The remaining factors each weigh in favor of granting preliminary
          injunctive relief. .................................................................................26

        A.  OS2 Shoyeb will suffer irreparable harm absent injunctive relief........................27

        B.  The balance of harms and public interest weigh in OS2 Shoyeb's favor. .............28

    V.   The Court should not require security. .......................................................30

CONCLUSION.......................................................................................................30

CERTIFICATE OF SERVICE .....................................................................................32

## INTRODUCTION

Plaintiff Mohammed Shoyeb is an Operations Specialist 2nd Class Petty Officer (OS2) in the United States Navy. As a devout Muslim,  he sincerely believes that God wants him to maintain a fist-length beard—and refrain from shaving that beard—even while serving in the military. As a young adult he joined the Navy, and under threat of being kept from service, he shaved in order to serve his Country. But he has ever since sought a religious accommodation that would allow him to maintain his beard consistent with his religious beliefs. Yet the Navy—while allowing beards for other religious Sailors, for medical reasons, and for morale boosting—continues to deny OS2 Shoyeb's request, instead placing him under orders to shave daily in violation of his faith.

The Navy's denial of OS2 Shoyeb's religious accommodation contradicts its own regulations, the Religious Freedom Restoration Act (RFRA), and the United States Constitution. This district has previously granted similar emergency relief to soldiers in the Army, *Singh v. Carter*, 168 F. Supp. 3d 216, 229 (D.D.C. 2016) (issuing TRO against discriminatory testing of a Sikh soldier concerning his religious beard), and this Court—with the Navy's consent—has upheld relief for other Sailors in this case, Dkt. 7 at 1 (granting "stay enjoining Defendants from forcing Di Liscia to shave his beard"). Because the Navy has no compelling reason for continuing to deny OS2 Shoyeb a religious accommodation, he now seeks a preliminary injunction preventing the Navy from forcing him to shave during the pendency of this action, allowing him to live and serve in a manner consistent with his religious beliefs.

This case is particularly straightforward under RFRA and the Free Exercise Clause. As an observant Muslim, OS2 Shoyeb sincerely believes that he should wear a fist-length beard as an expression of fidelity to God, and that disobeying this command is a serious sin. The Navy's directives that put him to the choice of shaving or facing disciplinary action, including being discharged from the military, impose a substantial burden on his religious exercise. Thus, RFRA's

1

strict scrutiny framework applies. Because the Navy has permitted other Sailors to maintain beards, the Free Exercise Clause similarly requires strict scrutiny of the Navy's suppression of OS2 Shoyeb's religious exercise. Thus, under either legal regime, the Navy must show both that it has a compelling interest in forcing OS2 Shoyeb specifically to shave and that its order is the least restrictive means of furthering that interest. It can show neither.

The Navy has no compelling interest in requiring OS2 Shoyeb to shave in violation of his faith. He is stationed on a Navy ship currently dry docked in Yokosuka, Japan, and mainly works at a computer terminal. Accommodating OS2 Shoyeb would not harm the performance of his duties in any way. He does not use a mask for anything more than light duty (such as painting). The Navy has already granted religious exemptions to other Sailors, including Plaintiff MC3 Leandros Katsareas, who was granted a temporary accommodation to wear a 4-inch beard consistent with his Muslim faith.[1] Further, as a morale booster, the Sailors on Plaintiff EMN3 Di Liscia's ship were granted a broad no-shave "chit," a waiver permitting them to shave just once every two weeks. Such chits have long been offered Sailors throughout the Navy. And, more generally, the Navy has long exempted thousands of Sailors with medical-beard needs. Plaintiff ABF3 Braggs, for example, suffers from *pseudofolliculitis barbae*, a painful facial condition—prevalent among African-American men—inflamed by shaving. Before receiving a temporary religious accommodation while on shore duty, ABF3 Braggs obtained medical accommodations allowing him to avoid shaving for a period of one to three month. Moreover, the Navy is an outlier among the services, with both the Army and the Air Force allowing religious accommodations for beards. Finally, if an exigent circumstance arose posing a specific, concrete, and imminent threat to health or safety, OS2 Shoyeb, like the other Plaintiffs, has acknowledged that he would shave in

---

[1]    Although MC3 Katsareas has worn a quarter-inch beard since 2018 and a full beard since 2020, the DCNO is currently considering rescinding his accommodation. Baxter Decl. ¶ 8, Ex. G.

accordance with his faith's emphasis on preserving life. In the absence of such a threat, and in the presence of so many exemptions to the shaving requirement, the Navy's interest here is not compelling.

These exemptions also confirm that the Navy's order is not the least restrictive means of furthering any compelling government interest. If the Navy can safely fight fires while Sailors hold morale and medical-beard exemptions—as with Plaintiff EMN3 Di Liscia's crew—there is no reason it cannot allow OS2 Shoyeb to avoid shaving in accordance with his faith, especially where a beard poses no problem in his current duties and he is willing to shave in exigent circumstances.

Even if maintaining a beard posed a safety risk in OS2 Shoyeb's duties—which it does not—the Navy's own regulations direct that he may be assigned temporarily to some other duty for "protect[ion] from circumstances that are incompatible with [his] religious accommodation." Bureau of Navy Personnel Instruction 1730.11A ¶ 5(g)(2) (as updated Mar. 16, 2020) (hereinafter "Navy Instr."), https://perma.cc/ZT2Q-AGKR. Commanders may only suspend religious accommodations "if necessary due to an imminent threat to health or safety." *Id.* In other words, the Navy's own regulations recognize that its shave directives, as applied here, are not the least restrictive way to further any interest. Finally, that OS2 Shoyeb could maintain his desired beard in other branches of the U.S. Armed Forces (and certainly in militaries around the world) demonstrates that less restrictive alternatives are available.

Because the Navy cannot satisfy the extraordinarily high standard of strict scrutiny, OS2 Shoyeb is likely to prevail on the merits of his RFRA, Free Exercise, and Equal Protection claims. The other injunction factors weigh in his favor, too. He will continue suffering irreparable harm absent relief: either a blatant violation of his religious beliefs or harsh discipline from the Navy. As discussed, the Navy's safety interests are not compromised by allowing OS2 Shoyeb to

maintain his beard. And relief would be in the public's interest, as it would affirm the core rights of religious exercise and expression guaranteed by federal law and the U.S. Constitution, while upholding the religious diversity of our servicemembers. The Court should issue a preliminary injunction enjoining the Navy from requiring OS2 Shoyeb to shave during the pendency of this action.

## BACKGROUND

OS2 Shoyeb's Muslim Beliefs

OS2 Shoyeb is a devout Muslim and has practiced his religion since childhood. Shoyeb Decl. ¶ 3. His faith was at the core of his decision to join the Navy; as a native of New York City, after September 11, 2001, OS2 Shoyeb wished to show his fellow citizens that his love for America and the freedom it stands for does not conflict with his faith. Shoyeb Decl. ¶ 3. Through his time in the Navy, OS2 Shoyeb has continued to practice his faith to the fullest extent possible. He studies the Quran, prays five times a day, tries to maintain a halal diet, and fasts regularly. Shoyeb Decl. ¶ 6.

Within OS2 Shoyeb's Islamic faith, it is a religious requirement and expression of fidelity to God to abstain from shaving and to maintain a beard of at least a fist-length, to be groomed and trimmed neatly, with the edges lined up. Shoyeb Decl. ¶ 5. His beliefs on this point are common. As his imam attested in his letter of support, "[t]he growing of the beard is a command that is derived directly from Islamic Tradition." Shoyeb Decl. Ex. A, Letter of Support from Mohammed Hashem. Muslims share a belief in *fitra*, sometimes translated as "original state" or "primordial nature," the state of purity in which Muslims believe that all humans were born. Shoyeb Decl. ¶ 5; Dr. M. Nazir Khan, *Fitrah – The Primordial Nature of* Man, Spiritual Perception (Jan. 1, 2015), https://perma.cc/23KG-MQYD. Relevant here, Muslims believe that the appearance of the beard was a "specific miraculous event." Allamah Murtada Baghdadi, *The Islamic Perspective of the Beard*, Ahlul Bayt Digital Islamic Library Project 1995-2021, https://perma.cc/CHC8-S58D.

According to the Stories of the Prophets, the angel Gabriel told the first man, Adam, that his beard was a blessing from Allah, given "in response to the supplication you made to your Lord," "granted to you and your male offspring till the day of reckoning." *Id.* According to the Quran, it is a sin to "alter Allah's creation," and Muslims believe that "shaving of the beard is…an unnatural alteration with regard to what Allah, the Exalted, has created naturally." *Id*. Muslim tradition further explains that the beard was created to "differentiate between the male and the female." *Id.* Thus, Muslim holy texts refer to the beard as a sign of devotion to God as well as masculinity. Sahih Muslim, MSA Reference: Book I, Hadith 164 (Narrated by Abdullah b. Mas'ud).  In line with this understanding, Muslims follow several ritual purity practices regarding personal grooming, which involve letting the beard grow while clipping the mustache. Sunan Abu Dawud, MSA Reference: Book I, Hadith 0052 (Narrated by Aisha, Ummul Mu'minin). In accord with these and other teachings, major Islamic schools of jurisprudence consider it obligatory for males to have a beard. Shaving is "considered an unjust action" and "regarded a sin by which an individual may be considered worthy of being punished." Baghdadi.

Consistent with the above teachings, OS2 Shoyeb considers it to be sinful and spiritually degrading not to grow or maintain a fist-length beard that complies with his religious obligations. Shoyeb Decl. ¶ 5. This practice of maintaining a religious beard has been followed by numerous military personnel granted accommodations in other military branches—not only by fellow Muslims, but Sikhs and Orthodox Jewish servicemembers as well. *See*, *e.g.*, Anthony Hooker, *Rare Army Rabbi Serves Soldiers*, U.S. Army (July 13, 2010), https://perma.cc/6GC9-AES3 (Chaplain (Col.) Jacob Goldstein, who served with a beard for 38 years in the U.S. Army before retiring in 2015); Susan A. Merkner, *Holocaust Day of Remembrance Carries Message of Resiliency*, U.S. Army (Apr. 12, 2018), https://perma.cc/272J-QFX4 (Chaplain (Capt.) Menachem

Stern, U.S. Army); Jeannie Yandel & Hannah Burn, *Seattle Rabbi Becomes First Bearded Air Force Chaplain*, KUOW (Sept. 26, 2014), https://perma.cc/7VMT-GW2P (Chaplain (Capt.) Eli Estrin, U.S. Air Force).

<u>Relevant U.S. Navy Regulations</u>

Both the Department of Defense and the U.S. Navy have adopted regulations regarding religious accommodation requests. Binding Department of Defense regulations state that the Department "will normally accommodate practices of a Service member based on sincerely held religious belief." These regulations explicitly adopt the language and legal standards of RFRA: if a military "policy, practice or duty substantially burdens a Service member's exercise of religion, accommodation can only be denied if" the policy is "in furtherance of a compelling governmental interest" and is "the least restrictive means of furthering that compelling governmental interest." Dep't of Defense Instruction 1300.17 ¶ 1.2(e) (as updated Sept. 1, 2020) (hereinafter "Defense Instr."), https://perma.cc/FML5-VQU6. Navy regulations have long required that commanding officers "use all proper means to foster high morale, and to develop and strengthen the moral and spiritual well-being of the personnel under his or her command" and "provide maximum opportunity for the free exercise of religion by members of the naval service." U.S. Navy Regulations, Article 0820 (Sept. 14, 1990), https://perma.cc/QK52-N2J2. Likewise, a recently-updated Navy Instruction explains that "[r]eligious liberty is more than freedom to worship" and "includes the freedom to integrate one's religion into every aspect of one's life." Navy Instr. 1730.11A ¶ 3. The Instruction reiterates that "commanders will provide maximum opportunity for the free exercise of religion by members of the naval service." *Id.* ¶ 5. And the Instruction specifically contemplates the type of accommodation OS2 Shoyeb has requested: "When a Sailor is authorized to wear a beard of greater than 2 inches in length, the beard must be rolled, tied and/or

otherwise groomed to achieve a length not to exceed 2 inches when measured from the bottom of the chin." *Id.* ¶ 5(d)(4)(c).

After a religious accommodation is granted, "[a] commander may require immediate compliance with suspension of [the] religious accommodation only if necessary due to an imminent threat to health or safety." *Id.* ¶ 5(g)(2). Otherwise, "the Sailor or candidate must be given five business days to submit an appeal" of the suspension. *Id.* And "[w]hen the conditions that required the suspension are no longer present, the Sailor may resume the religious practice per the original waiver." *Id.* ¶ 5(g)(3).

<u>OS2 Shoyeb's Efforts to Obtain an Accommodation</u>

As an observant Muslim, OS2 Shoyeb faithfully observed all obligations of his faith prior to entering the military, including growing a beard. Shoyeb Decl. ¶ 8. In November 2017, when he originally entered the Navy, OS2 Shoyeb was unaware that he could seek a religious accommodation, and chose to shave rather than risk ejection from the Navy, despite the painful conflict with his religious practice. Shoyeb Decl. ¶ 9.

OS2 Shoyeb later became aware that the Navy had updated its guidance on religious accommodations, specifically to recognize religiously motivated beards as a possible accommodation, and began seeking such an accommodation in May 2018. His first attempt was aborted by his chaplain in 2018, but in June 2020, a new chaplain helped him submit an application. Shoyeb Decl. ¶ 10; *See* Navy Instr. 1730.11A. Lieutenant Joshua Hickman, a command chaplain, wrote a statement to accompany OS2 Shoyeb's request, which concluded that OS2 Shoyeb sought to grow a beard out of a sincere desire to live in accordance with his faith. Shoyeb Decl. ¶ 11, Shoyeb Decl. Ex A. At that time, as now, OS2 Shoyeb was stationed on a Navy ship dry docked

in Yokosuka, Japan. Shoyeb Decl. ¶ 2. There, OS2 Shoyeb works mostly at a computer terminal, occasionally making rounds to supervise others. Shoyeb Decl. ¶ 16.

The Deputy Chief of Naval Operations disapproved Shoyeb's request on July 13, 2020. Shoyeb Decl. Ex. B. On September 17, 2020, OS2 Shoyeb appealed the disapproval to the Chief of Naval Operations. Shoyeb Decl. Ex. C. The Chief of Naval Operations disapproved the request on December 14, 2020, citing concerns about protective masks being unable to function properly in the unlikely event that OS2 Shoyeb had to don one "at a moment's notice"—a category that appeared to include "firefighting training." Shoyeb Decl. Ex. D. In closing, the decision told OS2 Shoyeb to "put your ship and shipmates ahead of yourself." *Id.* During this current duty station, OS2 Shoyeb has only needed to use protective masks for training, never as part of his regular duties. Shoyeb Decl. ¶ 17. In the unlikely event that OS2 Shoyeb faced a life-threatening situation that would require him to be clean-shaven to properly wear a fitted mask, he would comply and shave without objection. Shoyeb Decl. ¶ 20.

In the context of other appeals, Naval authorities have admitted that "the probability of a negative consequence from an ineffective seal" based on a beard interfering with a mask "is relatively low." Dkt. 2-3, Exhibit D at 2. Plaintiff EMN3 Di Liscia has undergone and passed routine gas-mask-seal-integrity tests while wearing a full beard, and his full beard did not interfere with obtaining a satisfactory seal. Dkt. 2-4 ¶ 15 (Di Liscia Decl.). In Di Liscia's training, neither he nor fellow Sailors with him (including those with no-shave chits) were required to undergo a full-chamber test because, as indicated by the first-class petty officer overseeing the seal-integrity test, the Damage Control department was not concerned about their ability to safely don a mask in the event of damage control. Di Liscia Decl. ¶ 17.

8

It is unsurprising that other Sailors in comparable positions to OS2 Shoyeb have received religious-beard accommodations. For example, the Navy granted MC3 Leandros Katsareas, a practicing Muslim, a four-inch beard accommodation on sea duty while temporarily serving in the Auxiliary Security Force, because "the nature of [his] duties makes it highly unlikely that [he] will be required to don personal protective equipment." Baxter Decl. ¶ 2, Ex. A.

Other branches of the U.S. military currently accommodate service members with religious beards. As of 2017, the U.S. Army allows religious beards except when there is actual risk of CBRN (chemical, biological, radiological, and nuclear) exposure. *See* Army Directives 2017-03, https://perma.cc/K38G-BNL5; *see also* Army Directive 2018-19 ¶ 5(b)(1)-(2), https://perma.cc/X7P8-8492 (replacing Directive 2017-03 but still requiring accommodated soldiers to shave for actual "threat of exposure to toxic CBRN agents," but not for "training or tactical simulations designed to ensure that the Soldier is fully familiar with use of the protective mask"). The Air Force updated its policy in February 2020 to reflect its allowance of religious beards, and it has recently approved accommodations for Muslim and Sikh service members, among others. *See* Secretary of the Air Force, Air Force Instruction 36-2903, https://perma.cc/ME57-FDM7; *see also* Oriana Pawlyk, *Air Force Special Operations Approves First Beard, Turban Waiver for Sikh Airman*, Military.com (July 30, 2020), https://perma.cc/4UZZ-TX3G.

Further, since being at sea, Plaintiff EMN3 Di Liscia's fellow Sailors aboard the USS Theodore Roosevelt have received MWR (Morale, Welfare, and Recreation) no-shave chits that allow them to shave as seldom as every two weeks. Di Liscia Decl. ¶ 5. Moreover, even beyond this immediate context, many Sailors have been allowed beards for medical reasons. *Id*. ¶ 14; Braggs Decl., Shoyeb Decl. ¶ 19; see Bureau of Naval Personnel, Management of Navy Uniformed Personnel

Diagnosed with Pseudofolliculitis Barbae, Instruction 1000.22C ¶ 6 (Oct. 8, 2019), https://perma.cc/9ETC-QBJM.

There may be times when a high probability of CBRN warfare could serve as a basis for the Navy requiring all Sailors to be clean-shaven. In such circumstances, OS2 Shoyeb would comply and shave until the threat has passed, since his faith dictates that the preservation of life is of paramount importance in situations where there is a specific, concrete, or imminent threat. Shoyeb Decl. ¶ 20. But OS2 Shoyeb is *not* in such a high-risk situation; indeed, his circumstances are no riskier on this front than the circumstances of many military members, described above, who have been accommodated.

## STANDARD FOR GRANTING PRELIMINARY INJUNCTIVE RELIEF

OS2 Shoyeb is entitled to preliminary injunctive relief protecting his ability to maintain a beard during this case's pendency. When seeking a preliminary injunction under Federal Rule of Civil Procedure 65, a plaintiff must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm if injunctive relief is not granted; (3) that the balance of interest among the parties favors injunctive relief; and (4) that injunctive relief would be in the best interest of the public generally. *Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011) (citing *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7 (2008)). As explained fully below, OS2 Shoyeb is suffering and—absent injunctive relief—will continue to suffer a deprivation of his rights under RFRA, the Free Exercise Clause, and the Fifth Amendment Due Process Clause's guarantee of equal protection. All four factors, therefore, line up in his favor.

## ARGUMENT

In this application for preliminary injunction, OS2 Shoyeb raises three of the claims set forth in the verified complaint regarding the denial of his accommodation: RFRA, First Amendment Free Exercise, and Fifth Amendment Equal Protection. For the reasons set forth below, OS2

Shoyeb is likely to succeed on the merits of each of those claims. The Navy cannot show that forcing OS2 Shoyeb to shave, rather than grow and neatly trim his beard as religiously mandated, is the least restrictive means of furthering any compelling government interest. Because OS2 Shoyeb is likely to succeed on the merits of his claims and satisfy the other injunctive relief factors as well, preliminary injunctive relief should be granted.

## I.  OS2 Shoyeb is likely to succeed on his RFRA claim.

RFRA provides that the "Government shall not substantially burden a person's exercise of religion" unless it "demonstrates that application of the burden *to the person*—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(a), (b) (emphasis added). The term "government" includes any "branch, department, agency . . . and official . . . of the United States," 42 U.S.C. § 2000bb-2(1), including the Department of Defense, the Navy, and their officers in their official capacities. *United States v. Sterling*, 75 M.J. 407, 410 (C.A.A.F. 2016) (citing "Secretary of the Navy Instr[uction] 1730.8B CH-1, Accommodation of Religious Practices," which applies RFRA to the Navy); *Rigdon v. Perry*, 962 F. Supp. 150 (D.D.C. 1997) (applying RFRA against the Secretary of Defense and the Secretaries of the Army, Navy, and Air Force); *see also* Defense Instr. 1300.17 ¶ 1.2(e)(1) (adopting the RFRA standard for military accommodations); *Singh v. Carter*, 168 F. Supp. 3d 216, 229 (D.D.C. 2016) (granting TRO to protect Sikh Army soldier from discriminatory testing related to his religious beard and turban, because he showed a likelihood of success under RFRA); *Singh v. McHugh*, 109 F. Supp. 3d 72, 87 (D.D.C. 2015) (finding that Army's refusal to grant Sikh soldier an "accommodation that would enable him to enroll in ROTC while maintaining his religious practice" of wearing a beard and turban violated RFRA).

At the preliminary injunction stage, the burdens of proof on a RFRA claim "track the burdens at trial." *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429 (2006). Thus, it is the plaintiff's burden to show "more likely than not" that his sincere religious exercise has been substantially burdened. *Id*. at 428; *see also Holt v. Hobbs*, 574 U.S. 352, 360 (2015) ("[P]etitioner bore the initial burden of proving that the Department's grooming policy implicates his religious exercise."). The burden then shifts to the government to show that it has a compelling interest in overriding the religious exercise that cannot be satisfied through less restrictive means. *O Centro*, 546 U.S. at 429. Here, the Navy cannot reasonably dispute that OS2 Shoyeb's religious beliefs are sincere and substantially burdened by the Navy's grooming regulations. And considering that (1) OS2 Shoyeb is assigned to duties that would present no operational problems if performed by a person with a fist-length beard and (2) the Navy routinely grants medical and morale exemptions for beards, the Navy cannot show that requiring OS2 Shoyeb to shave is the least restrictive means of furthering any compelling government interest.

### A. OS2 Shoyeb is sincerely compelled by his Muslim faith to abstain from shaving and instead maintain a beard.

OS2 Shoyeb's sincere desire to observe Muslim religious practice cannot reasonably be questioned. "Though the sincerity inquiry is important, it must be handled with a light touch, or 'judicial shyness.'" *Moussazadeh v. Tex. Dep't of Crim. Just.*, 703 F.3d 781, 792 (5th Cir. 2012) (quoting *A.A. ex rel. Betenbaugh v. Needville Indep. Sch. Dist.,* 611 F.3d 248, 262 (5th Cir. 2010)). Thus, courts should limit themselves "to 'almost exclusively a credibility assessment' when determining sincerity." *Id*. (citing *Kay v. Bemis,* 500 F.3d 1214, 1219 (10th Cir. 2007)). At the preliminary injunction stage, OS2 Shoyeb's sworn statements are sufficient to establish his sincerity, particularly where accompanied by contemporaneous statements of Navy chaplains attesting to his sincerity and the Islamic basis of his beliefs. Shoyeb Decl., Ex. A. And in any event,

the U.S. Supreme Court has specifically recognized that—while civil rights laws like RFRA and

RLUIPA are "'not limited to beliefs which are shared by all of the members of a religious sect'"—

the "belie[f] that men must grow beards . . . is by no means idiosyncratic" in the Islamic faith.

*Holt*, 574 U.S. at 362 (citing *amicus* brief indicating that "hadith requiring beards . . . are widely

followed by observant Muslims across the various schools of Islam"); *see, e.g.*, *Ali v. Stephens*,

822 F.3d 776, 794 (5th Cir. 2016) (discussing Muslim prisoner's belief that he must grow a "fist-

length beard," and concluding prison officials' denial of the ability to grow same could not satisfy

strict scrutiny). Thus, it is likely that OS2 Shoyeb will prevail in any challenge to the sincerity of

his desire to fully observe Islamic religious practice.

## B. The Navy's grooming regulations substantially burden OS2 Shoyeb's religious expression.

There is also no question that refusing to accommodate OS2 Shoyeb's Islamic religious

practice would constitute a substantial burden on his exercise of religion. "A substantial burden

exists when government action puts 'substantial pressure on an adherent to modify his behavior

and to violate his beliefs.'" *Kaemmerling v. Lappin*, 553 F.3d 669, 678 (D.C. Cir. 2008) (quoting

*Thomas v. Rev. Bd.*, 450 U.S. 707, 717-18 (1981)). Although substantial burdens can come in other

forms as well, it is well established that this standard is satisfied when the plaintiff is "force[d] to

choose between following the precepts of her religion and forfeiting benefits, on the one hand, and

abandoning one of the precepts of her religion in order to accept work, on the other hand." *Sherbert

v. Verner*, 374 U.S. 398, 404 (1963); *see also Autor v. Pritzker*, 740 F.3d 176, 182 (D.C. Cir. 2014)

(finding a viable claim when lobbyists were forced to choose between their First Amendment right

to petition the government and the benefit of serving on a federal advisory committee). Being put

to the choice of giving up his religious beliefs or facing military discipline, including possible

expulsion from the Navy, unquestionably imposes a substantial burden on OS2 Shoyeb's religious

exercise. *See Holt*, 574 U.S. at 361 (grooming policy that subjected prisoner to "serious

disciplinary action" for growing beard constituted a substantial burden); *McHugh*, 109 F. Supp. 3d

13

at 87 (Army's refusal to grant Sikh soldier an "accommodation that would enable him to enroll in ROTC while maintaining his religious practice" constituted a substantial burden); *cf. Carter*, 168 F. Supp. 3d at 229 (Army's "specialized testing for further processing of [Sikh soldier's] religious accommodation request is a substantial burden when such testing is not required for soldiers to obtain exceptions from the Army uniform and grooming regulations"). Because the Navy's regulations impose a substantial burden on OS2 Shoyeb's religious beliefs, he is entitled to an accommodation unless the Navy can show that granting one would impair a compelling government interest that cannot be satisfied via a less restrictive means. As elaborated below, the Navy cannot make this showing.

### C. The Navy has no compelling interest in forcing OS2 Shoyeb to forgo his religious practice to continue serving his country.

Because the Navy's regulations substantially burden OS2 Shoyeb's religious exercise, "the burden [of strict scrutiny] is placed squarely on the [Navy]." *O Centro*, 546 U.S. at 429. Defendants thus must prove that coercing OS2 Shoyeb to shave "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. 2000bb-1(b). This is the "most demanding test known to constitutional law," *City of Boerne v. Flores*, 521 U.S. 507, 534 (1997), and a test that this Court recently ruled the Armed Forces flunked in a similar case. *See McHugh*, 109 F. Supp. 3d at 96-97; *cf.* Army Directive 2018-19.

To meet RFRA's demanding test, the Navy must show that it has a compelling interest in imposing its grooming requirement specifically *on OS2 Shoyeb*. The Navy cannot meet its burden by citing some "broadly formulated interes[ts]" that, at a high level of generality, seem compelling. *Holt*, 574 U.S. at 362. RFRA demands a "'more focused' inquiry: It 'requires the Government to demonstrate that the compelling interest test is satisfied through application of the challenged law 'to the person'—the particular claimant whose sincere exercise of religion is being substantially

burdened.'" *Burwell v. Hobby Lobby*, 573 U.S. 682, 726 (2014) (quoting *O Centro*, 546 U.S. at 430-31). This rule applies even to critically important interests such as protecting public health during a pandemic, *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020); enforcing the nation's drug laws, *O Centro*, 546 U.S. at 433; prison safety, *Holt*, 574 U.S. at 362; prevention of animal cruelty, *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 543-44, 546 (1993); traffic safety, *Solantic, LLC v. City of Neptune Beach*, 410 F.3d 1250, 1267-68 (11th Cir. 2005); protecting personnel in federal buildings, *Tagore v. United States*, 735 F.3d 324, 330-31 (5th Cir. 2013); and controlling government costs, *Rich v. Sec'y, Fla. Dep't of Corr.*, 716 F.3d 525, 533 (11th Cir. 2013). Under strict scrutiny, "so long as the government can achieve its interests in a manner that does not burden religion, it must do so." *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1881 (2021).

The Navy cannot meet its heavy burden on "mere say-so." *Holt*, 574 U.S. at 369. RFRA "demands much more," *id.*—namely, specific evidence "prov[ing]" a compelling interest as against OS2 Shoyeb individually in his actual duty circumstances. *McHugh*, 109 F. Supp. 3d at 93-94 (inquiring whether "defendants have proven that the decision to deny *this plaintiff* a religious accommodation . . . actually furthers the compelling interests defendants have identified"). Thus, this Court must "scrutinize the asserted harm of granting specific exemptions to particular religious claimants and . . . look to the marginal interest in enforcing the challenged government action in that particular context." *Holt*, 574 U.S. at 363 (cleaned up).

And even if that close scrutiny were to reveal that a compelling interest would be impaired by specifically allowing OS2 Shoyeb to maintain his beard, the Navy's own regulations direct that, rather than being subjected to a forced shave, OS2 Shoyeb should first be assigned temporarily to some other duty for "protect[ion] from circumstances that are incompatible with [their] religious

accommodation." Navy Instr. 1730.11A ¶ 5(g)(2). Naval commanding officers may only suspend religious accommodations immediately "if necessary due to an imminent threat to health or safety." *Id.* But in any case, the Navy has pointed to no such imminent threat here in denying either accommodation. To the contrary, it has been allowing ABF3 Braggs all along to maintain a beard for periods of time on nonreligious grounds, and allowing other Sailors exemptions from shaving for various reasons. *See* Baxter Decl. ¶¶ 3-5. Given that the Navy's own regulations would not require OS2 Shoyeb to immediately shave in violation of his religious beliefs, the Navy cannot claim a compelling interest in forcing him to do so. And that is particularly so where he has specifically acknowledged that if faced with a life-threatening situation where a beard would impede the safety of his unit, he would shave.

The Navy's *general* interests in safety, discipline, good order, or uniformity are insufficient to justify forcing OS2 Shoyeb to shave at this time. Any purported interest in safety, discipline, good order, or uniformity is fatally undermined by the fact that existing Navy regulations provide broad categorical exemptions, and the Navy has granted thousands of individualized exceptions to its beard policies. That includes the beards that, for example, Plaintiff EMN3 Di Liscia's shipmates have been allowed to grow for two weeks at a time for morale purposes while on deployment. Di Liscia Decl. ¶ 5. The presence of both categorical exemptions and individualized exceptions creates "a higher burden" on the Navy to "show[] that the law, as applied, furthers [its] compelling interest[s]." *McHugh*, 109 F. Supp. 3d at 94 (quoting *McAllen Grace Brethren Church v. Salazar*, 764 F.3d 465, 472-73 (5th Cir. 2014)). It also makes the existence of a compelling interest both more important (to guard against religious discrimination) and less likely. *Fraternal Ord. of Police v. Newark*, 170 F.3d 359, 365 (3d Cir. 1999) (Alito, J.). As a unanimous Supreme Court explained, "a law cannot be regarded as protecting an interest of the highest order when it leaves appreciable

damage to that supposedly vital interest unprohibited." *Lukumi*, 508 U.S. at 547 (cleaned up). Here, because the Navy's regulations "presently do[] not apply" to thousands of soldiers, the Navy's interests in denying even a temporary accommodation to OS2 Shoyeb "cannot be compelling." *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1143 (2013).

First, the Navy provides a broad medical exemption to its beard ban. For years, the Navy allowed Sailors suffering from *pseudofolliculitis barbae* (like ABF3 Braggs) to obtain "a permanent 'no shave' status," under which they were permitted to wear a quarter-inch beard at all times. Bureau of Naval Personnel, Management and Disposition of Navy Personnel with Pseudofolliculitis Barbae, Instruction 1000.22B ¶¶ 6-7 (Dec. 27, 2004), https://perma.cc/VEW4-ASUH. After a 2019 amendment, permanent no-shave statuses are unavailable, but Sailors with medical conditions may continue to receive both temporary no-shave statuses and no-shave statuses of indeterminate length that merely require annual reevaluations. Bureau of Naval Personnel, Management of Navy Uniformed Personnel Diagnosed with Pseudofolliculitis Barbae, Instruction 1000.22C ¶ 6 (Oct. 8, 2019), https://perma.cc/9ETC-QBJM. These broad medical exemptions demonstrate that the Navy does not have compelling safety or uniformity interests in forcing OS2 Shoyeb to shave.

Second, the Navy commonly grants individual exceptions to its beard ban. For instance, Sailors at sea can frequently "purchase" Morale, Welfare and Recreation waivers allowing them to grow a beard. *See* Di Liscia Decl. ¶ 5 (attesting that Sailors aboard the USS Theodore Roosevelt have enjoyed just such MWR no-shave chits); *see also* Baxter Decl. Ex. F at 3 (statement of Plaintiff Katsareas regarding MWR no-shave chit awarded to him while deployed). The Navy has also routinely granted religious beard accommodations to Sailors on shore duty. *See* Dkt. 2-3 at ¶ 5 &

Ex. C; *see also* Baxter Decl. Ex. B. The existence of these exceptions eviscerates any "uniformity" interest.

Third, OS2 Shoyeb has attested that if faced with a life-threatening situation where his beard impeded the safety of his team, he would shave. Shoyeb Decl. ¶ 20. In short, an accommodation for OS2 Shoyeb to refrain from shaving consistent with his religious beliefs certainly would not harm the Navy's interests any more than the categorical deviations in uniformity inherent in the medical regulations and the thousands of exceptions to uniformity the Navy has granted to individual Sailors.

Finally, even if there were something about OS2 Shoyeb's current assignments that raised some unique concerns—a doubtful proposition—the Navy's own regulations direct that he may be assigned temporarily to some other duty for "protect[ion] from circumstances that are incompatible with [his] religious accommodation." Navy Instr. 1730.11A ¶ 5(g)(2).

In analogous cases, other branches of the armed forces have tried and failed to meet the compelling interest standard with respect to the very same interests the Navy claims here. In one case, the Army denied Iknoor Singh's "request to wear unshorn hair, a beard, and a turban" because of the military's general interest in "[u]nit cohesion and morale," "[g]ood order and discipline," "[i]ndividual and unit readiness," and the Sikh applicant's "health and safety." *McHugh*, 109 F. Supp. 3d at 93-94; *see also Carter*, 168 F. Supp. 3d at 229, 234-36 (enjoining specialized military uniform testing that singled-out a Sikh military officer based on his request to wear unshorn hair, a beard, and a turban). Those justifications "d[id] not withstand scrutiny" then, *Singh v. McHugh*, 185 F. Supp. 3d 201, 224 (D.D.C. 2016), and the Navy's similar interests do not now. These interests are too broadly formulated to answer the question of whether the Navy may force OS2

Shoyeb to violate his faith instead of receiving an accommodation. The Navy has pointed to no compelling interest in this case.

**D. Even if the Navy did have a compelling interest here, forcing OS2 Shoyeb to violate his faith is not the least restrictive means of furthering that interest.**

Because the Navy cannot show a compelling governmental interest in applying shave orders to OS2 Shoyeb, this Court need go no further. But even if the Navy had shown such an interest, it could not show that forcing OS2 Shoyeb to shave in violation of his religious beliefs is the least restrictive means of furthering that interest.

Meeting the least-restrictive means standard is "exceptionally demanding." *Holt*, 574 U.S. at 364. But that is the intent of the standard—ensuring that the Government "must" use "a less restrictive means" if one "is available for the Government to achieve its goals." *Id.* at 365. Where there are exceptions to a scheme that the Government insists is the least restrictive, those exceptions defeat the Government's insistence by "demonstrat[ing] that other, less-restrictive alternatives could exist." *McHugh*, 109 F. Supp. 3d at 101 (quoting *McAllen Grace*, 764 F.3d at 475).

Applying the standard here yields the same outcome as it did in the *Singh* litigation: the Government flunks the test. A blanket directive for OS2 Shoyeb to shave rather than maintain a beard simply *cannot* be the least restrictive means in light of the existing accommodations for medical beards. And, as noted above, the Navy's own regulations direct that OS2 Shoyeb may be assigned temporarily to some other duty for "protect[ion] from circumstances that are incompatible with [his] religious accommodation." Navy Instr. 1730.11A ¶ 5(g)(2). With regulations that require accommodation, the Navy cannot argue that those accommodations are impossible.

Until recently, Sailors suffering from *pseudofolliculitis barbae* could receive permanent "no-shave chits" that would allow them to grow short, well-kept beards. As of October 2019, the Navy

may have discontinued those chits, *see* Instruction 1000.22C ¶ 6(d), but that decision does not yet apply to members of the Navy still on deployment or assigned to regions where medical evaluation and treatment are impossible. Some Sailors are thus still eligible for permanent medical chits. Even under the new rules, as discussed, a Sailor can receive an exemption of temporary or indeterminate length, requiring only annual reevaluation. *See, e.g., id.* ¶ 7(a)(9).

Other exceptions, too, show that forcing OS2 Shoyeb to shave in violation of his faith is not the least restrictive means of promoting any compelling interest. As mentioned, Sailors can purchase "chits" allowing them not to shave, and Sailors aboard Plaintiff EMN3 Di Liscia's ship, which is actually deployed at sea, have been granted no-shave chits. *See* Dkt. 2-4 at ¶ 5. *See also* Baxter Decl. Ex. F at 3 ("When I was stationed aboard the USS Nitze upon its deployment in 2016, I had a MWR no-shave chit that allowed me to grow a beard as long as I wanted[.]"). There is no reason to be stricter with OS2 Shoyeb, who is serving in primarily console work in dry dock in Japan.

It appears that, within a week after the complaint in this matter was filed, the Navy may have issued a dispatch claiming that "Navy senior leadership recently learned that some Fleet units may be allowing Sailors to grow beards while underway," but that despite the "good intentions to support morale, it is contrary to Navy policy and NOT within the commanding officers['] authority." *See* Baxter Decl. ¶ 6, Ex. E. Assuming the validity of this document, it is questionable whether "senior leadership" could truly have been unaware of this widespread and longstanding practice. But, in any case, the Navy cannot simply claim a new interest in banning beards for safety reasons without highly persuasive evidence. *Geller v. Sec'y of Def.*, 423 F. Supp. 16, 18 (D.D.C. 1976) (dismissing newly alleged governmental interest where Air Force chaplain had been "permitted to wear a beard without criticism, adverse action or ill effects for seven years"). While

the dispatch loosely mentions the risk of poor mask seals with beards in firefighting, medical beards and commander discretion to issue no-shave chits have existed in the Navy for decades with no appreciable injury to Sailor well-being. The Navy uses positive-pressure masks that are not dependent on having a perfect seal. Indeed, it appears the Navy does not even fit-test Sailors, who—in case of fire—simply don whatever mask is closest. Baxter Decl. ¶ 7, Ex. F, at 3. Indeed, the Navy has already acknowledged that "the probability of a negative consequence from an ineffective seal is relatively low." Dkt. 2-3, Ex. D at 2. It is not enough for the Navy to allege "objectives at a high level of generality." *Fulton*, 141 S. Ct. at 1881. "[T]he First Amendment demands a more precise analysis." *Id.*

Moreover, the policies of similarly situated entities confirm that the Navy cannot meet the least restrictive means test. When this Court found that "temporary accommodation is a less restrictive means" in *Singh v. McHugh*—allowing an exception to Army grooming requirements for a Sikh to wear unshorn hair, a beard, and a turban—it noted the Army's acknowledgement that "there are some protective masks that are capable of providing protection to individuals who wear beards." 185 F. Supp. 3d at 231, 231 n.23; *see also Kennedy v. District of Columbia*, 654 A.2d 847, 855 (D.C. 1994) (noting in 1994 "technological advancements" with positive-pressure masks used in firefighting that "are designed to accommodate short beards by preventing any inward leakage of harmful contaminants"). The Army makes use of its "Hard-to-Fit" program, which "has 'provided masks to more than 1,150 warfighters and civilians (including a brigadier general and a command sergeant major)' who have not otherwise been able to 'achieve a satisfactory fit.'" *Id.* at 231 n.23.

That Army program has created special masks for individuals and even obtained special masks from the United Kingdom. *Id.* The Navy has not explained why it could not do the same here.[2]

Indeed, other branches of our own nation's armed forces grant hundreds of thousands of individualized exemptions. For instance, Army regulations permit a "large-scale exception . . . to its grooming policies" by allowing soldiers to grow beards where medically necessary. *Singh*, 109 F. Supp. 3d at 97. Since 2007, "the Army has permitted more than 100,000 service members," including officers, "to grow beards for medical reasons." *Id.* at 95 (noting that the Army has authorized "at least 49,690 permanent 'shaving profiles,' and at least 57,616 temporary ones."). Though the standard exception allows the beards to be grown to 1/8 of an inch, they can be grown longer if medically necessary. *Id.* The Army permits beard exceptions because, according to the Army's Technical Bulletin, "[t]he existence of a beard does not prevent performance of most military duties" and "authorizing the growth of a beard should not ordinarily require . . . a change or limitation in the performance of military duties." Dep't of the Army, Pseudofolliculitis of the Beard and Acne Keloidalis Nuchae, Technical Bulletin Med. 287 § 2-6(c)(1) (Dec. 10, 2014), https://perma.cc/L54Q-VZ73. While a commander can order a beard be shaved for operational reasons, the Army did not "claim[] or show[] that even one of the more than 100,000 soldiers who have been permitted to grow a beard since 2007—including many who have served in deployed environments—has been ordered to shave it for any reason." *Singh*, 109 F. Supp. 3d at 96.

The Air Force has similarly liberalized its beard policy, especially in seeking to accommodate the religious beliefs of service members. *See* Secretary of the Air Force, Dress and Personal

---

[2]    That Britain's Royal Navy also permits male personnel to wear beards and moustaches, trimmed or tied up according to health and safety standards, suggests less restrictive means here. *See* "Policy and Appearance," Royal Navy § 3818(d) (Feb. 2019), https://perma.cc/CA2L-K8UK. "British naval greatness depends" upon many things, though clean-shaven male personnel seems not to be one of them. *Manella, Pujals & Co. v. Barry*, 7 U.S. (3 Cranch) 415, 434 (1806).

Appearance of Air Force Personnel, Instruction 36-2903, ¶ 3.1 (Feb. 7, 2020), https://perma.cc/ND7B-4BNY ("Beards are not authorized unless for medical reasons . . . or as authorized pursuant to a request for a religious accommodation."); *see also id.* Attachment 9 (offering "Sample Turban, Uncut Beard and Hair Approval Memorandum" templates for commanding officers).

Decisions involving police and firefighters confirm that forcing OS2 Shoyeb to shave is not the least restrictive means of furthering any government interest. For instance, in *Fraternal Ord. of Police*, 170 F.3d at 365, the Third Circuit struck down a police department's "no beard" policy that allowed for medical but not religious exemptions. As then-Judge Alito explained, "the medical exemption raises concern because it indicates that the Department has made a value judgment that secular (*i.e.*, medical) motivations for wearing a beard are important enough to overcome its general interest in uniformity but that religious motivations are not." *Id.* at 366. Then, applying heightened scrutiny, the court struck down the department's policy, emphasizing that "[w]e are at a loss to understand why religious exemptions threaten important city interests but medical exemptions do not." *Id.* at 367; *see also Potter v. District of Columbia*, 558 F.3d 542, 547 (D.C. Cir. 2009) (affirming summary judgment in favor of the plaintiffs—Muslim firefighters—because the District of Columbia did not "profe[r] evidence" to "establis[h] a genuine issue as to whether its clean-shaven requirement is narrowly tailored to further the interest of protecting firefighters"); *Kennedy*, 654 A.2d at 855 (highlighting how the D.C. Fire Department's arguments about the need for uniform grooming standards to promote "*esprit de corps*" and ensure proper operation of SCBA masks were undermined by inconsistent enforcement).

In sum, forcing Sailors to shave against their religious beliefs is not the least restrictive means of promoting any compelling government interest, Defendants' order cannot satisfy RFRA, and OS2 Shoyeb is likely to succeed on the merits of his RFRA claim.

## II. OS2 Shoyeb is likely to succeed on his Free Exercise Clause claim.

OS2 Shoyeb is also likely to prevail on his Free Exercise claim. Government action that burdens religious exercise is subject to strict scrutiny under the Free Exercise Clause if it is "not neutral or not of general application." *Lukumi*, 508 U.S. at 546. And actions are neither neutral nor generally applicable "whenever they treat *any* comparable secular activity more favorably than religious exercise." *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021) (per curiam). And "[c]omparability is concerned with the risks various activities pose" to the "asserted government interest that justifies the [action] at issue." *Id.*; *see also Fulton*, 141 S. Ct. at 1877 ("A law also lacks general applicability if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way."). Here, it cannot be disputed that any beard poses the exact same risks to the government's alleged interests, regardless of the reason for the beard. Thus, "*any*" exception triggers strict scrutiny. *Tanden*, 141 S. Ct. at 1296.

In *Lukumi*, the Supreme Court unanimously struck down an example of government action as not neutral or generally applicable. *Lukumi* involved four municipal ordinances that restricted the killing of animals. When challenged, the city argued that the ordinances were neutral because they were written "in secular terms, without referring to religious practices." *Lukumi*, 508 U.S. at 534. The Supreme Court emphasized that when determining whether a law is neutral and generally applicable, "[f]acial neutrality is not determinative." *Id.* at 534. The Court explained that because the ordinances applied to "Santeria adherents but almost no others," they prohibited Santeria sacrifice "even when it does not threaten the city's interest in the public health," and "selective[ly]"

"impose[d] burdens only on conduct motivated by religious belief," they were not neutral or generally applicable. *Id.* at 536, 538-39, 543.

Like the City's treatment of Santeria worship, the Navy's treatment of OS2 Shoyeb has not been neutral or generally applicable. As discussed, beard exemptions are routinely granted for morale and medical reasons, thus treating "comparable secular activit[ies] more favorably than religious exercise." *Tandon*, 141 S. Ct. at 1296. By refusing to grant OS2 Shoyeb an accommodation to practice his faith while granting accommodations for other reasons, the Navy has impermissibly "impose[d] special disabilities on the basis of . . . religious status," *Lukumi*, 508 U.S. at 533 (quoting *Emp. Div. v. Smith*, 494 U.S. 872, 877 (1990)). In light of the clearly different treatment that OS2 Shoyeb has received, the Navy's conduct should be evaluated under strict scrutiny for a violation of the Free Exercise Clause. As explained above, the Navy's regulations as enforced against OS2 Shoyeb are not the least restrictive means of upholding a compelling government interest.

## III.  OS2 Shoyeb is likely to succeed on his Equal Protection claim.

OS2 Shoyeb is also likely to succeed on his Equal Protection claim under the Due Process Clause of the Fifth Amendment.[3] "Strict scrutiny . . . is warranted if the restriction 'jeopardizes exercise of a fundamental right or categorizes on the basis of an inherently suspect characteristic.'" *Banner v. United States*, 428 F.3d 303, 307 (D.C. Cir. 2005) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)); *see also City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985). The Navy's actions here both jeopardize the exercise of a fundamental right—OS2 Shoyeb's

---

[3] The principles of the Equal Protection Clause apply with equal force to the federal government through the Due Process Clause of the Fifth Amendment. *See Bolling v. Sharpe*, 347 U.S. 497 (1954).

religious exercise—and categorize him on the basis of an inherently suspect characteristic—his religion.

Engaging in religious expression is the exercise of a fundamental right, both because it is religious exercise and because it is expression. *See*, *e.g.*, *Johnson v. Robison*, 415 U.S. 361, 375 n.14 (1974) ("Unquestionably, the free exercise of religion is a fundamental constitutional right."); *Niemotko v. Maryland*, 340 U.S. 268, 272 (1951) (Equal Protection Clause barred the Government from suppressing Jehovah's Witnesses from engaging in religious expression); *see also Harbin-Bey v. Rutter*, 420 F.3d 571, 576 (6th Cir. 2005) (both speech and religious freedom are fundamental rights for Equal Protection purposes); *Srail v. Village of Lisle*, 588 F.3d 940, 943 (7th Cir. 2009) ("Fundamental rights include freedom of speech and religion."). Here, OS2 Shoyeb seeks to exercise both his rights of expression and religious exercise. That is one of the two triggers for strict scrutiny.

The other trigger is the application of a suspect classification. The Navy's singling out of OS2 Shoyeb due to his religion also categorizes him on the basis of an inherently suspect class— religion. Discrimination on the basis of religious adherence "not only lacks a rational connection with any permissible legislative purpose, but is also inherently suspect. Such invidious discrimination violates the equal protection of the laws guaranteed by the Due Process Clause." *King's Garden, Inc. v. FCC*, 498 F.2d 51, 57 (D.C. Cir. 1974) (citing *Bolling*, 347 U.S. 497); *see also United States v. Batchelder*, 442 U.S. 114, 125 n.9 (1979) ("The Equal Protection Clause prohibits selective enforcement 'based on an unjustifiable standard such as race, religion, or other arbitrary classification'").

Here, as explained above, the Navy has discriminated on the basis of OS2 Shoyeb's religion by refusing to extend to him the same kinds of exemptions from the grooming requirements that it

extends to other Sailors who can pay for morale no-shave chits or who receive accommodations during medical treatment regimens, including those of indeterminate length.

For the reasons discussed in Sections I.C and I.D above, the Navy cannot defend its regulations under strict scrutiny. OS2 Shoyeb is likely to succeed on his claims.

## IV.    The remaining factors each weigh in favor of granting preliminary injunctive relief.

"In First Amendment cases, the likelihood of success 'will often be the determinative factor'" since preventing constitutional injuries tends to satisfy the other factors. *Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016) ; *see also Liberty Coins, LLC v. Goodman*, 748 F.3d 682, 691 (6th Cir. 2014) ("When a party seeks a preliminary injunction on the basis of the potential violation of the First Amendment, the likelihood of success on the merits often will be the determinative factor."); *Roman Catholic Archbishop of Wash. v. Bowser*, No. 20-cv-03625, 2021 WL 1146399, at *18 (D.D.C. Mar. 25, 2021) (RFRA protects First Amendment interests).

### A.   OS2 Shoyeb will suffer irreparable harm absent injunctive relief.

Defendants are discriminating against OS2 Shoyeb because of his religious beliefs and pressuring him to continue violating his faith. Believers "are irreparably harmed by the loss of free exercise rights 'for even minimal periods of time.'" *Tandon*, 141 S. Ct. at 1297 (per curiam); *accord Rigdon*, 962 F. Supp. at 165 (holding that the violation of First Amendment religious expression rights constituted irreparable injury); *see also Simms v. District of Columbia.*, 872 F. Supp. 2d 90, 104 (D.D.C. 2012) (violation of Fifth Amendment rights constitutes irreparable harm); *cf. Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 303 (D.C. Cir. 2006) ("[W]here a movant alleges a violation of the Establishment Clause, this is sufficient, without more, to satisfy the irreparable harm prong for purposes of the preliminary injunction determination."). The same is true for loss of RFRA protections. *Roman Catholic Archbishop of Wash.*, 2021 WL 1146399, at *18 (finding "the same is true of rights afforded under the RFRA");

27

*Capitol Hill Baptist Church v. Bowser*, 496 F. Supp. 3d 284, 301 (D.D.C. 2020) ("When plaintiffs establish a strong likelihood of success on the merits of their RFRA claim, they have also adequately demonstrated that they will suffer irreparable harm absent the issuance of a preliminary injunction.") (cleaned up). Because OS2 Shoyeb has demonstrated that his constitutional and civil rights are being violated, he has automatically established irreparable harm. *See Mills v. District of Columbia*, 571 F.3d 1304, 1312 (D.C. Cir. 2009) ("It has long been established that the loss of constitutional freedoms, 'for even minimal periods of time, unquestionably constitutes irreparable injury.'").

In addition, being subjected to blatantly discriminatory conditions constitutes irreparable harm. This Court faced a similar situation in *Bonnette v. D.C. Court of Appeals*, 796 F. Supp. 2d 164 (D.D.C. 2011). In that case, the disabled plaintiff sought an accommodation in taking the Multistate Bar Examination. Defendants "argue[d] that [the blind plaintiff] cannot show that she is likely to suffer irreparable harm because it is possible that she will pass the D.C. Bar Exam using either a human reader or an audio CD." *Id.* at 187. This Court rejected that argument, holding that "forcing Plaintiff to take the MBE under discriminatory conditions is itself a form of irreparable injury." *Id.*; *accord Singh*, 168 F. Supp. 3d at 233 ("[B]eing subjected to discrimination is by itself an irreparable harm.").

Under the governing regulations, OS2 Shoyeb is fully entitled to a religious accommodation and to receive one of the myriad individualized grooming exemptions that the Navy provides to others. It is irreparable harm to force him to continue choosing between abandoning his religious beliefs and serving his country. And if he chooses to live according to his faith in violation of Navy orders, the damage to his reputation and career from ensuing discriminatory actions will be irreparable.

**B. The balance of harms and public interest weigh in OS2 Shoyeb's favor.**

OS2 Shoyeb likewise meets the combined balance-of-harms and public-interest factors. *See Karem v. Trump*, 960 F.3d 656, 668 (D.C. Cir. 2020) (explaining that these remaining factors "'merge when,' as here, 'the Government is the opposing party'"). Defendants will suffer no injury from a preliminary injunction allowing OS2 Shoyeb to keep his requested beard pending a final merits decision from this Court. As explained above, the Navy has allowed other Sailors to maintain similar beards without incident—including ABF3 Braggs, who was granted a medical waiver, and MC3 Katsareas and ABF3 Braggs, to whom the Navy gave a partial religious accommodation. Thus, the Navy can demonstrate no harm to its interests stemming from accommodating OS2 Shoyeb.

In contrast, OS2 Shoyeb has demonstrated that he will suffer irreparable and severe injury if made to continue violating his faith or face military discipline. And enforcing an unconstitutional provision "is always contrary to the public interest." *Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013).

Further still, the military's engaging in religious discrimination undoubtably goes against the public interest. Indeed, the Navy's own regulations emphasize that Sailors' religious practices should be supported "to the broadest extent possible." Navy Instr. 1730.11A ¶ 3 ("Religious liberty is more than freedom to worship. It includes the freedom to integrate one's religion into every aspect of one's life."). As previously explained, there is a "vital public interest in safeguarding religious freedoms protected by the Constitution and by statutes enacted by Congress." *Roman Catholic Archbishop of Wash.*, 2021 WL1146399, at *19; *see also O Centro v. Ashcroft*, 389 F.3d 973, 1010 (10th Cir. 2004) (en banc), *aff'd* 546 U.S. 418 (2006) ("[T]here is a strong public interest in the free exercise of religion."); *Tyndale House Publishers v. Sebelius*, 904 F. Supp. 2d 106, 130

(D.D.C. 2012) ("[T]here is undoubtedly also a public interest in ensuring that the rights secured under . . . RFRA, are protected.").

Moreover, the Navy itself has extolled the public interest in diversity. *Our Commitment to Diversity and Equality*, https://www.navy.com/who-we-are/diversity (last visited May 25, 2021) ("No matter your . . . religious beliefs, there is a place for you in the Navy" since "[w]e believe that when a diverse group of individuals come together to do a job, they can do it better because of their differences," which reflect "the rich makeup of our country."); *accord* National Defense Authorization Act for Fiscal Year 2020, H.R. 2500, 116th Cong. § 530B (2019) ("Any personnel policy developed or implemented by the Department of Defense with respect to members of the armed forces shall ensure equality of treatment and opportunity for all persons in the armed forces, without regard to . . . religion."). Accommodating OS2 Shoyeb advances religious diversity.

**V. The Court should not require security.**

OS2 Shoyeb requests that the Court require no security. There is no prospect that Defendants would suffer damages even if it were later determined that they were wrongfully enjoined or restrained. Fed. R. Civ. P. 65(c). Thus, the relevant "sum" required to preserve Defendants' interests is zero. *Id.* In addition, "only a party seeking to change (not maintain) the status quo needs to post a bond." *Laster v. District of Columbia*, 439 F. Supp. 2d 93, 99 n.7 (D.D.C. 2006). OS2 Shoyeb is not seeking to "command the government to act," but rather "to *enjoin* the [Navy] from enforcing its restrictions"—*i.e.*, to let his facial hair grow as it would absent government interference. *Capitol Hill Baptist Church*, 496 F. Supp. 3d at 292 (emphasis added). His request, therefore, does not necessitate bond.

## CONCLUSION

For all the foregoing reasons, OS2 Shoyeb respectfully urges the Court to grant his application for a preliminary injunction.

Plaintiff also requests that the Court waive the posting of a bond.

Respectfully submitted this 16th day of July, 2021.

<div style="margin-left: 40%;">

/s/ Eric S. Baxter

Eric S. Baxter (D.C. Bar No. 479221)
Daniel Blomberg (D.C. Bar No. 1032624)
Diana Verm (D.C. Bar No. 1811222)
Chris Pagliarella (D.C. Bar No. 273493)
Kayla A. Toney (D.C. Bar No. 1644219)
William J. Seidleck (D.C. Bar No. 1602107)
The Becket Fund for Religious Liberty
1919 Pennsylvania Ave. NW, Suite 400
Washington, DC, 20006
(202) 955-0095 PHONE
(202) 955-0090 FAX
*ebaxter@becketlaw.org*

Amandeep S. Sidhu (D.C. Bar No. 978142)
Winston & Strawn LLP
1901 L St., NW
Washington, DC, 20036-3506
(202) 282-5828 PHONE
(202) 282-5100 FAX
*asidhu@winston.com*

*Counsel for Plaintiff*

</div>