UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EDMUND DI LISCIA, et al., **)** | |
| **)** | |
| Plaintiffs, **)** | |
| **)** | |
| v. **)** | Civil Action No. 21-01047 (TJK) |
| **)** | |
| LLOYD J. AUSTIN, III, *et al.*, **)** | |
| **)** | |
| Defendants. **)** | |
| **)** | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
OPPOSITION TO PLAINTIFF OS2 MOHAMMED SHOYEB'S APPLICATION FOR
<u>PRELIMINARY INJUNCTION</u>**

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................ 1

BACKGROUND ......................................................................................................................... 2

   A.   U.S. Navy grooming standards ................................................................................. 2

   B.   U.S. Navy operating environment ............................................................................ 4

   C.   Plaintiffs ................................................................................................................... 5

      1.   ABF3 Dominique K. Braggs ............................................................................ 5

      2.   EMN3 Edmund D. DiLiscia ............................................................................ 5

      3.   MC3 Leandros Katsareas ................................................................................. 6

      4.   OS2 Mohammed Shoyeb ................................................................................. 7

   D.   Plaintiffs' Complaint ................................................................................................ 7

   E.   Di Liscisa's application for temporary restraining order and preliminary injunction ........ 9

   F.   Plaintiff Shoyeb's application for preliminary injunction .......................................... 9

LEGAL STANDARD ............................................................................................................... 10

ARGUMENT ............................................................................................................................ 12

   A.   Plaintiff fails to establish that he is likely to succeed on the merits of his claims ........ 12

      1.   Shoyeb fails to demonstrate a likelihood of success on the merits of his RFRA claim because the U.S. Navy has a compelling interest—the safe operation of a U.S. Navy warship—and has imposed the least restrictive means to further its compelling interest ..... 12

      2.   Shoyeb fails to demonstrate a likelihood of success on the merits of his constitutional claims because the U.S. Navy's treatment of his request has been neutral, and the U.S. Navy has demonstrated a compelling interest and imposed the least restrictive means to impose its compelling interest ................................................................................................. 21

   B.   Plaintiff cannot establish a likelihood of immediate irreparable harm ......................... 23

   C.   The balance of harms and the public interest weigh against preliminary relief............ 25

CONCLUSION.......................................................................................................................... 28

# TABLE OF AUTHORITIES

## Cases

*Abdullah v. Bush*, 945 F. Supp. 2d 64 (D.D.C. 2013)..................................................... 11

*Antonuk v. United States*, 445 F.2d 592 (6th Cir. 1971).............................................. 27

*Banner v. United States*, 428 F.3d 303 (D.C. Cir. 2005) ............................................. 21

*Bitterman v. Sec'y of Def.*, 553 F. Supp. 719 (D.D.C. 1982)........................................ 27

*Bolling v. Sharpe*, 347 U.S 497 (1954) ........................................................................ 21

*Burwell v. Hobby Lobby*, 573 U.S. 682 (2014).............................................................. 13

*Capitol Hill Baptist Church v. Bowser*, 496 F. Supp. 3d 284 (D.D.C. 2020).............. 24

*Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290 (D.C. Cir. 2006)....... 23

*Chappell v. Wallace*, 462 U.S. 296 (1983) ................................................................... 26

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993)........ 21

*ConverDyn v. Moniz*, 68 F. Supp. 3d 34 (D.D.C. 2014)................................................ 11

*Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288 (D.C. Cir. 2009) ...................... 11

*E.B. v. Dep't of State*, 422 F. Supp. 3d 81 (D.D.C. 2019) ............................................ 23

*Fraternal Order of Police v. City of Newark*, 170 F.3d 359 (3d Cir. 1999) ................. 20

*Gilligan v. Morgan*, 413 U.S. 1 (1973)........................................................................ 26

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006) ........... 12, 13

*Greater New Orleans Fair Hous. Action Ctr. v. HUD*, 639 F.3d 1078 (D.C. Cir. 2011)............. 11

*Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 920 F.3d 1 (D.C. Cir. 2019)... 11

*Guerra v. Scruggs*, 942 F.2d 270 (4th Cir. 1991) ....................................................... 26

*Gulf Oil Corp. v. Dep't of Energy*, 514 F. Supp. 1019 (D.D.C. 1981) .......................... 23

*Guttenberg v. Emery*, 26 F. Supp. 3d 88 (D.D.C. 2014)............................................... 24

*Holmes v. FEC*, 71 F. Supp. 3d 178 (D.D.C. 2014) ..................................................... 11

*Holt v. Hobbs*, 574 U.S. 352 (2015) ............................................................................. 12

*Irby v. United States*, 245 F. Supp. 2d 792 (E.D. Va. 2003)................................... 26, 27

*Kaemmerling v. Lappin*, 553 F.3d 669 (2008).............................................................. 21

*Maldonado v. District of Columbia*, Civ. A. No. 10-1511 (RJL), 2019 WL 6877913 (D.D.C. Dec. 16, 2019)............................................................................................. 24

*Mazurek v. Armstrong*, 520 U.S. 968 (1997)................................................................ 11

*Mexichem Specialty Resins, Inc. v. EPA*, 787 F.3d 544 (D.C. Cir. 2015) .................... 23

*Mills v. District of Columbia*, 571 F.3d 1304 (D.C. Cir. 2009).................................... 24

*Minard run Oil Co. v. U.S. Forest Serv.*, 670 F.3d 235 (3d Cir. 2011) ........................ 25

*Munaf v. Geren*, 553 U.S. 674 (2008) ................................................................. 10

*Newdow v. Bush*, 355 F. Supp. 2d 265 (D.D.C. 2005) ...................................... 24

*Nken v. Holder*, 556 U.S. 418 (2009) ................................................................ 25

*Nordlinger v. Hahn*, 505 U.S. 1 (1992) ............................................................. 21

*Orloff v. Willoughby*, 345 U.S. 83 (1953) .......................................................... 25

*Philips v. Perry*, 106 F.3d 1420 (9th Cir. 1997) ............................................... 27

*Pub. Citizen Health Rsch. Grp. v. Acosta*, 363 F. Supp. 3d 1 (D.D.C. 2018) ............ 24

*Qualls v. Rumsfeld*, 357 F. Supp. 2d 274 (D.D.C. 2005) .................................... 26

*Roman Cath. Archbishop of Wash. v. Bowser*, Civ. A. No. 20-03625 (TNM), 2021 WL 1146399 (D.D.C. Mar. 25, 2021) ................................................................................... 23

*Settles v. United States Parole Comm'n*, 429 F.3d 1098 (D.C. Cir. 2005) ............. 21

*Sherley v. Sebelius*, 644 F.3d 388 (D.C. Cir. 2011) ........................................... 11

*Sierra Club v. Johnson*, 374 F. Supp. 2d 30 (D.D.C. 2005) ............................... 11

*Singh v. Carter*, 185 F. Supp. 3d 11 (D.D.C. 2016) .......................................... 23

*Singh v. McHugh*, 109 F. Supp. 3d 72 (D.D.C. 2015) ....................................... 19

*Thomasson v. Perry*, 80 F.3d 915 (4th Cir. 1996) ............................................. 25

*Weinberger v. Romero-Barcelo*, 456 U.S. 305 (1982) ....................................... 23

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008) ........................... 10, 23

**Statutes**

10 U.S.C. § 8062(a) ...................................................................................... 4, 19

42 U.S.C. § 2000bb-1(a) .................................................................................. 12

42 U.S.C. § 2000bb-1(b) .................................................................................. 12

## INTRODUCTION

Defendants Lloyd James Austin III, Secretary of Defense, U.S. Department of Defense, Thomas Harker, Acting Secretary of the Navy, Vice Admiral John B. Nowell, Jr., Deputy Chief of Naval Operations for Manpower, Personnel, Training, and Education, and the U.S. Department of the Navy, hereby respond to Plaintiff OS2 Mohammed Shoyeb's application for preliminary injunction.

Shoyeb, an active-duty Sailor, serves onboard USS CHANCELLORSVILLE (CG 62), which is forward deployed to Yokosuka, Japan. After an administrative appeal, on December 14, 2020, the U.S. Navy denied Shoyeb's request for a religious accommodation to grow a beard of an unspecified length because to permit him to do so would jeopardize the safety of CHANCELLORSVILLE. Shoyeb alleges that the U.S. Navy's denial impermissibly infringes on his rights under the Religious Freedom Restoration Act ("RFRA") and the Free Exercise Clause and the Due Process Clause of the Constitution. Shoyeb now asks that this Court grant him mandatory injunctive relief and order the U.S. Navy to permit him to grow a fist length beard, allowing Shoyeb to live and serve in a manner consistent with his religious beliefs. The Court should deny his request.

The U.S. Navy has a compelling interest—the safety and readiness of a U.S. Navy warship operating at sea—to deny the request. Damage control onboard a U.S. Navy warship is the duty of each and every crew member, and, thus, all crew members must be ready to participate in damage control actions at all times. And, because of nature of a warship's operating environment and, thus, the need for crew members to respond within moments, there are no least restrictive means available. Also, Shoyeb fails to demonstrate the U.S. Navy treats him differently than other service members. Accordingly, Shoyeb fails to demonstrate that he would be likely to succeed on

the merits of his RFRA and constitutional claims.  Moreover, because he fails to demonstrate a success on the merits and accounting for his delay in bringing this action, Shoyeb fails to demonstrate that he would suffer irreparable harm if the Court denied his application.  Lastly, the balance of the equities is in favor the U.S. Navy.  The U.S. Navy must be able to rely on the crew members of a warship to participate in damage control to safely operate, and, to direct otherwise, would adversely affect the U.S. Navy's ability to meet its mission.

Therefore, for the reasons discussed below, the Court should deny Shoyeb's request for mandatory injunctive relief.

## BACKGROUND

**A.     U.S. Navy grooming standards**

Effective January 1, 1985, the Chief of Naval Operations issued formal guidance prohibiting sailors from wearing beards, with the exception of neatly trimmed mustaches and those deemed medically necessary.  *See* NAVOP 152-84, *Pride and Professionalism* (Dec. 14, 1984) (attached hereto as Ex. A) ¶ 2 ("requir[ing] all Navy men to be clean shaven").  The Chief of Naval Operations explained the prohibition, in part,

> will provide increased personal safety for those who must, on short notice, [b]e prepared to wear OBAs, gas masks, oxygen masks, and, in general, work in stressing environments which are becoming more hazardous as technology, weapon sophistication, and hi tempo [sic] operations continue to complicate our everyday lives in the work place.

*Id*. ¶ 3.

This general prohibition on the wearing of beards remains in effect today.  The U.S. Navy's current uniform regulations provide:

> The face shall be clean shaven unless a shaving waiver is authorized by the Commanding Officer [for medical reasons] or a religious accommodation has been granted [].  Mustaches are authorized but shall be kept neatly and closely trimmed . . . .  Supervisors of individuals with medical shaving waivers shall actively monitor and ensure treatment regimen is followed.

U.S. Navy Uniform Reguls., NAVPERS 15665I (hereinafter, "Navy uniform regulations"), §
2201.2. The regulations "apply to all personnel who are authorized to wear the U.S. Navy
Uniform." *Id*. § 1101.1.a.

      1.    <u>Religious accommodations in the U.S. Navy</u>

      When the policies or procedures of the Navy conflict with a Sailor's religious practices,
the U.S. Navy works to support the service members' religious practices to the broadest extent
possible within the bounds of military readiness, unit cohesion, good order, discipline, health, and
safety. U.S. Navy Bureau of Pers. Instruction number 1730.11A, *Standards and Procedures
Governing the Accommodation of Religious Practices* (Mar. 16, 2020) (hereinafter "BUPERINST
1730.11A") (attached hereto as Ex. B), ¶ 3. A service member seeking an accommodation of a
religious practice that requires a waiver of a U.S. Navy policy must submit a request in writing to
through his or her chain of command. *Id*. ¶ 4.a. The approval authority varies by the requested
accommodation. *Id*. at Table 1 (Authorities and Religious Practices). Relevant here, when a
service member seeks the accommodation to wear a beard, which requires a waiver of the uniform
regulations, the approval authority is the Deputy Chief of Naval Operations (Manpower,
Personnel, Training and Education) (hereinafter, "Deputy Chief of Naval Operations (N1)") and
the appeal authority is the Chief of Naval Operations. *Id*. at Table 1, ¶¶ 5.d(4)(c), f(1).

      Each request for religious accommodation must be reviewed on a case-by-case basis, with
consideration due to the full range of facts and circumstances relevant to the specific request.
*Id*. ¶ 5.a(1). The U.S. Navy requires that commanders and commanding officers not deny or
recommend denial of a request for an accommodation unless the denial or partial denial furthers a
compelling governmental interest and is the least restrictive means of furthering that compelling

government interest, directing commanders and commanding officers to consider, but not limited to, the following factors on whether approval of the accommodation would:

> (a) pose a health or safety hazard (such as flammable materials or loose clothing that could become caught in a piece of equipment),
>
> (b) interfere with the wear or proper function of special or protective clothing or equipment (such as a respirator, protective helmet or communication gear) or
>
> (c) otherwise impair mission accomplishment, good order, discipline, morale or unit cohesion.

*Id*. ¶ 5.a(2).

### 2.    Medical accommodations in the U.S. Navy

When a service member suffers from facial irritation after shaving, a commander or commanding officer will refer the service member to a health care provider for evaluation, diagnosis, and treatment.  U.S. Navy Bureau of Pers. Instruction number 1000.22C, *Management of Navy Uniformed Personnel Diagnosed With Pseudofolliculitis Barbae* (Oct. 8, 2019) (hereinafter "BUPERINST 1000.22C") (attached hereto as Ex. C), ¶ 6.b.  After diagnosis, a health care provider will recommend a treatment regimen intended to return the service member to normal grooming standards.  *Id*.  A commander or commanding officer may disrupt a treatment regimen and direct a service member to shave daily if operational, maintenance, training requirements, or duties assigned that necessitate the removal of facial hair.  *Id*.  Permanent shaving waivers are not authorized.  *Id*. ¶ 6.d.

## B.    U.S. Navy operating environment

The U.S. Navy includes naval combat and service forces that "shall be organized, trained, and equipped primarily for prompt and sustained combat incident to operations *at sea*."  10 U.S.C. § 8062(a).  The U.S. Navy "is responsible for the preparation of naval forces necessary for the

effective prosecution of war and, in accordance with integrated joint mobilization plans, for the expansion of the peacetime components of the Navy to meet the needs of war." *Id.*

**C.    Plaintiffs**

      1.    <u>ABF3 Dominique K. Braggs</u>

While stationed onboard to USS GEORGE WASHINGTON (CVN 73), on July 22, 2020, Braggs submitted a request for religious accommodation to grow a 4-inch beard.  Braggs Religious Accommodation Req. History (attached hereto as Ex. D) at 17.  On November 12, 2020, his commanding officer recommended that the U.S. Navy grant his request.  *Id*. at 12–13.  On December 23, 2020, the Deputy Chief of Naval Operations (N1) denied the request.  *Id*. at 10–11.  On February 22, 2021, after transferring to the Naval Station Norfolk Base Operations Department, Braggs appealed to the Chief of Naval Operations.  *Id*. at 2–9.

      2.    <u>EMN3 Edmund D. DiLiscia</u>

While a student at the Naval Nuclear Power Training Command, on December 5, 2018, the U.S. Navy granted Di Liscia a religious accommodation to wear a quarter-inch beard.  Di Liscia Religious Accommodation Req. History (attached hereto as Ex. E) at 17.[1]  After to reporting to USS THEODORE ROOSEVELT (CVN 71), DiLiscia submitted another request for religious accommodation to grow a quarter-inch beard.  *Id*. at 15.  On November 12, 2020, his commanding officer recommended that the U.S. Navy grant his request.  *Id*. at 9–10.  On November 20, 2020, the Deputy Chief of Naval Operations (N1) denied the request.  *Id*. at 9–10.  On April 13, 2020, DiLiscia appealed the denial.  *Id*. at 1–8.  On April 15, 2021, the U.S. Navy permitted Di Liscia to

---

[1]    The prior version of BUPERSINST 1730.11A permitted certain commanders and commanding officers at a rank of O-6 and above of shore commands to grant a religious accommodation to grow a quarter-inch beard.  *See* U.S. Navy Bureau of Pers. Instruction number 1730.11, *Standards and Procedures Governing the Accommodation of Religious Practices* (Nov. 13, 2018).

maintain the religious accommodation granted on December 5, 2018.  Status Report, ECF No. 8. On July 16, 2021, after arriving back from deployment, THEODORE ROOSEVELT departed San Diego, California for Bremerton, Washington to conduct a docking planned incremental availability at Puget Sound Naval Shipyard.  *See* U.S. Navy, *USS Theodore Roosevelt to Change Homeport for Planned Maintenance, Upgrades* (June 29, 2021).[2]

    3.    <u>MC3 Leandros Katsareas</u>

While assigned to Naval Station Norfolk, on July 6, 2018, Katsareas submitted a request for a religious accommodation to grow a 3 to 4 inch beard.  Katsareas Religious Accommodation Req. History (attached hereto as Ex. F) at 41–43.  On August 14, 2018, the commanding officer recommended that the U.S. Navy grant the request.  *Id*. at 36.  On October 9, 2018, the Deputy Chief of Naval Operations (N1) partial approved the request, permitting Katsareas to grow a quarter-inch beard during non-operational duties.  *Id*. at 34–35.

After transferring to USS GEORGE WASHINGTON (CVN 73), on December 6, 2019, Katsareas submitted another request for a religious accommodation to grow a four-inch beard.  *Id*. at 31–33.  On February 3, 2020, the commanding officer recommended that the U.S. Navy grant the request.  *Id*. at 27.  On April 4, 2020, the Deputy Chief of Naval Operations (N1) disapproved the request.  *Id*. at 25–26.  On May 5, 2020, Katsareas appealed to the Chief of Naval Operations. *Id*. at 19–24.  On July 15, 2020, upon reconsideration, the Deputy Chief of Naval Operations (N1) granted full approval of a religious accommodation to grow a four-inch beard, noting that the decision was based on Katsareas' "present duties as a member of the auxiliary security force[,]"

---

[2]    Available at https://www.navy.mil/Press-Office/News-Stories/Article/2676212/uss-theodore-roosevelt-to-change-homeport-for-planned-maintenance-upgrades/ (last visited Aug. 2, 2021).

which made "it highly unlikely [he would] be required to don personal protective equipment" and mooted Katsareas' appeal. *Id*. at 17.

On February 26, 2021, the commanding officer notified Katsareas of the commanding officer's intent to request the Deputy Chief of Naval Operations (N1) review Katsareas' approved request because in February 2021, Katsareas transferred from the auxiliary security force to the legal department. *Id*. at 16. On March 25, 2021, the commanding officer submitted a request for review of Katsareas' approved religious accommodation to the Deputy Chief of Naval Operations (N1). *Id*. at 1.

### 4.   OS2 Mohammed Shoyeb

While stationed onboard CHANCELLORSVILLE, on June 22, 2020, Shoyeb submitted a request for a religious accommodation to grow a beard of unspecified length. Shoyeb Religious Accommodation Req. History (hereinafter, "Shoyeb RA Req. History") (attached hereto as Ex. G) at 20. On June 29, 2020, the commanding officer recommended the U.S. Navy approve the request when the ship "is in port, pier side or in dry dock and [Shoyeb is not] standing a watch that might require the donning of respiratory equipment" or in a training environment requiring such equipment. *Id*. at 14–16. On July l3, 2020, the Deputy Chief of Naval Operations (N1) disapproved the request. *Id*. at 12–13. On September 17, 2020, Shoyeb appealed to the Chief of Naval Operations. *Id*. at 4–11. On September 21, 2020, the commanding officer recommended the U.S. Navy grant the request. *Id*. at 3. On December 14, 2020, Chief of Naval Operations affirmed the Deputy Chief of Naval Operations (N1)' denial. *Id*. at 1–2.

### D.   **Plaintiffs' Complaint**

On April 15, 2021, Plaintiffs filed their complaint. Compl., ECF No. 1. Plaintiffs claim that the U.S. Navy's uniform regulations, namely to require Plaintiffs to shave is a severe violation of their religious beliefs. *Id*. ¶ 11. Plaintiffs bring seven claims. *Id*. ¶¶ 153–212.

In Count I, Plaintiffs allege the U.S. Navy's regulations and treatment of its grooming and personal appearance regulations thus violate rights secured to Plaintiffs by the RFRA. *Id*. ¶¶ 153–163.

In Count II, Plaintiffs allege the Navy's discriminatory treatment and its enforcement of its grooming and personal appearance regulations thus violate Plaintiffs' rights as secured by the Free Exercise Clause of the First Amendment to the United States Constitution. *Id*. ¶¶ 164–178.

In Count III, Plaintiffs allege the Navy's threatening to enforce its regulations against Plaintiffs and refusal to grant Plaintiffs' accommodations to allow them to practice their religion despite accommodations being granted to other Sailors exhibits a hostility toward Plaintiffs' religion, thus violating their rights under the Free Exercise Clause of the First Amendment to the United States Constitution. *Id*. ¶¶ 179–189.

In Count IV, Plaintiffs allege the Navy's discriminatory treatment and its enforcement of its grooming and personal appearance regulations against Plaintiffs thus violate their rights under the Free Speech Clause of the First Amendment to the United States Constitution. *Id*. ¶¶ 190–197.

In Count V, Plaintiffs allege the Navy's discriminatory treatment and enforcement of its grooming and personal appearance regulations against Plaintiffs thus violate their rights under the Due Process Clause of the Fifth Amendment to the United States Constitution. *Id*. ¶¶ 198–203. In Count VI, Plaintiffs allege The Navy's discriminatory treatment and its enforcement of its grooming and personal appearance regulations against Plaintiffs thus violates their rights under the Fifth Amendment to the United States Constitution's guarantee of equal protection. *Id*. ¶¶ 204–208.

In Count VII, Plaintiffs allege enforcement of the Navy's regulations against EMN3 Di Liscia and MC3 Katsareas—disciplining them for wearing beards—would result in the loss of

their livelihoods as Sailors and violate their procedural due process rights by wrongfully impairing their property and liberty interests.  *Id*. ¶¶ 209–212.

**E.    Plaintiff Di Liscisa's application for temporary restraining order and preliminary injunction**

On April 15, 2021, Di Liscia filed a motion for temporary restraining order and premiliminary injunction.  Appl. for TRO & Prelimin. Inj., ECF No. 2.  Di Liscia sought an order to prevent Defendants from forcing him to shave his beard.  *Id*.  Di Liscia claimed that his commanding officer's order, directing him to shave his beard violated the RFRA, the Free Exercise Clause of the First Amendment, and the Due Process Clause of the Fifth Amendment.  Statement of P. & A. In Support of Plaintiff Edmund Di Liscia's Appl. For TRO & Prelim. Inj., at 1–3, ECF No. 2-2.  On the same day, the Court entered an administrative stay, enjoying Defendants from forcing Di Liscia to shave his beard.  Order (Apr. 15, 2021), at 1, ECF No. 7.

On April 16, 2021, Defendants indicated that the U.S. Navy would permit Di Liscia to maintain his beard for 14 days.  Status Report, ECF No. 8.  On April 22, 2021, Defendants agreed that prior to the execution of any adverse final decision on Di Liscia, Katsareas, or Bragg's religious accommodation requests, Defendants would notify counsel for Plaintiffs.  Joint Status Report, at 1, ECF No. 10.  In addition, the parties agreed that Di Liscia's application for preliminary injunction was moot.  *Id*.

**F.    Plaintiff Shoyeb's application for preliminary injunction**

On July 16, 2021, Shoyeb filed an application for preliminary injunction.  Appl. for Prelim. Inj., ECF No. 22.  Shoyeb asserts that the U.S. Navy has no compelling interest in requiring him to shave in violation of his faith because there is no risk to the safety of CHANCELLORSVILLE, especially considering the U.S. Navy grants similar accommodation requests to service members, permits medical waivers to allow service members to not shave, and allows for morale booster no-

shave chits.  Statement of P. & A. In Support of Pl Mohammed Shoyeb's Appl. for Prelim. Inj. (hereinafter, "Pl.'s Br."), at 2, ECF No. 22-1.  Moreover, the U.S. Navy has no compelling interest because Shoyeb vows to shave his beard if an exigent circumstance arose posing a specific, concrete, and imminent threat to health and safety.  *Id*. at 2–3.  Shoyeb further asserts that the aforementioned exemptions demonstrate the U.S. Navy's denial of his request is not the least restrictive means of furthering any compelling government interest.  *Id*. at 3.  In addition, he claims that the U.S. Navy policy, which suggest that a service member may be temporarily assigned another duty or that a commander or commanding officer may only suspect a religious accommodation if necessary due to an imminent threat to health and safety also demonstrate the U.S. Navy's denial is not the least restrictive means.  *Id*. at 3.  Accordingly, Shoyeb alleges that he has demonstrated that he is likely to succeed on the merits of his RFRA, Free Exercise and Equal Protection claims.  *Id*.  Lastly, Shoyeb alleges the remaining factors are in his favor because that he will continue to suffer irreparable harm due to the violation of his religious beliefs and the U.S. Navy's safety interests are not compromised by allowing Shoyeb to grow a beard.  *Id*. at 3–4.

## LEGAL STANDARD

A "preliminary injunction is an extraordinary and drastic remedy."  *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008).  An injunction should be entered only "upon a clear showing that the [movant] is entitled to such relief."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).  To obtain a preliminary injunction, the moving party must demonstrate (1) that it is likely to succeed on the merits of its claims; (2) that it is likely to suffer an irreparable injury in the absence of injunctive relief; (3) that the balance of equities tips in its favor; and (4) that the proposed injunction is in the public interest.  *Id.* at 20.  The last two factors merge when the

government is the opposing party. *Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 920 F.3d 1, 10 (D.C. Cir. 2019). Preliminary injunctive relief "should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). "[W]hen a plaintiff has not shown a likelihood of success on the merits, [courts] need not consider the other factors" required for a preliminary injunction. *Greater New Orleans Fair Hous. Action Ctr. v. HUD*, 639 F.3d 1078, 1088 (D.C. Cir. 2011). Additionally, a mandatory injunction that "would change the *status quo*" is disfavored as "an even more extraordinary remedy," *Abdullah v. Bush*, 945 F. Supp. 2d 64, 67 (D.D.C. 2013), "especially when directed at the United States Government," *Sierra Club v. Johnson*, 374 F. Supp. 2d 30, 33 (D.D.C. 2005).

In this Circuit, the four factors have typically been evaluated on a sliding scale such that if "the movant makes an unusually strong showing on one of the factors, then it does not necessarily have to make as strong a showing on another factor." *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1291–92 (D.C. Cir. 2009). After *Winter*, "the D.C. Circuit has suggested that a positive showing on all four preliminary injunction factors may be required." *Holmes v. FEC*, 71 F. Supp. 3d 178, 184 n.4 (D.D.C. 2014); *see also Sherley v. Sebelius*, 644 F.3d 388, 393 (D.C. Cir. 2011) (reading *Winter* "at least to suggest if not to hold that a likelihood of success is an independent, free-standing requirement for a preliminary injunction") (quotation marks omitted). The D.C. Circuit has not encountered a post-*Winter* case where a preliminary injunction motion survived the sliding-scale analysis. *See ConverDyn v. Moniz*, 68 F. Supp. 3d 34, 46 n.2 (D.D.C. 2014).

## ARGUMENT

**A.      Plaintiff fails to establish that he is likely to succeed on the merits of his claims**

1.       Shoyeb fails to demonstrate a likelihood of success on the merits of his RFRA claim because the U.S. Navy has a compelling interest—the safe operation of a U.S. Navy warship—and has imposed the least restrictive means to further its compelling <u>interest</u>

RFRA provides that the "[g]overnment shall not substantially burden a person's exercise of religion" unless it "demonstrates that application of the burden to the person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."   42 U.S.C. § 2000bb-1(a), (b).   At the preliminary injunction stage, the burdens of proof on a RFRA claim "track the burdens at trial." *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429 (2006).  As such, it is the plaintiff's burden to show "more likely than not" that his sincere religious exercise has been substantially burdened.  *Gonzales*, 546 U.S. at 428; *see also Holt v. Hobbs*, 574 U.S. 352, 360 (2015) ("[P]etitioner bore the initial burden of proving that the Department's grooming policy implicates his religious exercise.").  The burden then shifts to the government to show that it has a compelling interest in overriding the religious exercise that cannot be satisfied through less restrictive means.  *O Centro*, 546 U.S. at 429.  Here, assuming that Shoyeb's religious beliefs are sincere and have been substantially burdened,[3] he will still not prevail because the government has a compelling interest in restricting the Plaintiff's religious exercise that cannot be satisfied through less restrictive means.

---

[3]      Defendants assume, without waiving any later objections, that Shoyeb has sincerely held religious beliefs, and, thus, the U.S. Navy's denial of his request to grow a beard of unspecified length is a burden on the exercise of his faith.

Here, the U.S. Navy has conducted an individual analysis of Shoyeb's request for a religious accommodation to grow a beard of an unspecified length while stationed onboard CHANCELLORSVILLE. *See* Shoyeb RA Req. History; *Burwell v. Hobby Lobby*, 573 U.S. 682, 726 (2014) (concluding RFRA demands a "'more focused' inquiry: It 'requires the Government to demonstrate that the compelling interest test is satisfied through application of the challenged law 'to the person'—the particular claimant whose sincere exercise of religion is being substantially burdened.'") (quoting *O Centro*, 546 U.S. at 430–31).   After reviewing the circumstances of his onboard duties and the role of crew members onboard a warship, the U.S. Navy determined it had a compelling interest—the safe operation of a U.S. Navy warship—and that it imposed the least restrictive means to further that interest when it denied Shoyeb's request.

> a.    *The U.S. Navy has a compelling interest in the safe operation of U.S. Navy warships at sea*

The U.S. Navy has a compelling interest in the safety of a U.S. Navy warship at sea.  An integral component of the safe operation of a warship is the ability for *all* crew members to participate in damage control actions on a moment's notice.  *See* Decl. of CDR Diane Cua (Aug. 2, 2021) (attached hereto as Ex. H) ¶¶ 5, 7; Shoyeb RA Req. History at 1 ("your accommodation cannot be supported when it is foreseeable that you may be required to don a breathing apparatus at a moment's notice, which includes when underway or as a member of an in-port duty section"). Relevant here is the need for service members to be clean shaven to achieve a necessary seal on a facepiece for shipboard self-contained breathing apparatus ("SCBA").  Cua Decl. ¶ 5 (citing a U.S. Naval Safety Center letter).

At the request of the Deputy Chief of Naval Operations (N1), in October 2018, the U.S. Naval Safety Center (hereinafter, "Safety Center") confirmed that "deviations from the current prescribed facial hair grooming standards represent significant increased risk to the individual

[, and] [s]ubsequent risk is also incurred by other crew members that may have to assist or rely

upon these individuals." Cua Decl., Ex 1. The Safety Center's conclusions were based on two

reviews conducted in 2016 and again in 2018. *See* U.S. Naval Safety Ctr., ALSAFE 18/008, *Face*

*Seal Guidance Update* (Nov. 26, 2018) (attached hereto as Ex. I).

In March 2016, after conducting a comprehensive review of the laws and studies impacting

current naval and federal respiratory protection regulations, the Safety Center concluded,

> Based on the available research and long-established negative effects of facial hair
> on face seal efficiency of all current Navy breathing apparatuses, the Naval Safety
> Center concludes that deviations from the current prescribed facial hair grooming
> standards represent significant increased risk to the individual. Subsequent risk is
> also incurred by other crew members that may have to assist or rely upon these
> individuals.

U.S. Naval Safety Ctr. Letter, *Face Seal Guidance* (Mar. 8, 2016) (attached hereto as Ex. J). Citing

to the Occupational Safety and Health Administration ("OSHA") publication of its final rule on

face piece seal, the Safety Center noted that the rule

> requires employers to establish and implement procedures for the proper use of
> respirators. 29 CFR 1910.134 Respiratory Protection. These requirements include
> prohibiting conditions that may result in face piece seal leakage, taking actions to
> ensure continued effective respirator operation throughout the work shift, and
> establishing procedures for the use of respirators in Immediately Dangerous to Life
> or Health (IDLH) atmospheres or in interior structural firefighting situations.
> Specifically, employers shall not permit respirators with tight-fitting face pieces to
> be worn by employees who have facial hair that comes between the sealing surface
> of the face piece and the face, that interferes with valve function, or any condition
> that interferes with the face-to-face piece seal or valve function. . . Although
> several of the studies contained within the Federal Register are greater than 40 years
> old, their results are currently cited to this day and are considered the industry
> standard. During the period of 1995 to 1997, OSHA revisited federal laws
> regarding respiratory protection. The outcome of this reinvestigation is contained
> in Federal Register of Final Rule. The reinvestigation contained 200 exhibits, more
> than 3,000 individual items, and approximately 2,300 transcript pages and was
> certified by the presiding administrative law judge on June 30, 1997. The final (and
> current) revisions to 29 CFR 1910.134 are based on consideration of the entire
> record of this proceeding, including materials discussed or relied upon in the
> proposal, the record of the informal hearing, and all written comments and exhibits
> received.

*Id*. at Encl. 1 ¶ 1–2.  The Safety Center also noted OSHA based its requirements on studies that conclusively proved beard growth had a profound, negative effect on the efficiency of the respirators:

> individuals with excessive facial hair, including stubble and wide sideburns, that interferes with the seal cannot expect to obtain as high a degree of respirator performance as clean shaven individuals; the degree of interference depends on many factors (*e.g.*, the length, texture, and density of facial hair) and the extent to which those factors interfere with the respirator's sealing surface.  Short of testing a bearded worker daily, the only prudent approaches are to require that facial hair not interfere with the respirator seal surface (*e.g.*, shave where the seal touches the face) or to prohibit the employee from working in areas requiring respiratory protection.

*Id*. at Encl. 1 ¶ 2.c.  Further, the Safety Center noted that the National Institute for Occupational Safety and Health ("NIOSH"), the respirator accrediting agency, reaffirmed the facial hair prohibition stating, "Facial hair that lies along the sealing area of a respirator, such as beards, sideburns, or mustaches will interfere with respirators that rely on a tight face piece fit to achieve maximum protection.  The areas of the skin, which contact the face or neck seal and nose cup seal, must be free of any hair."  *Id*. at Encl. 1 ¶ 2.e.

> In October 2018, the Safety Center:

> conducted an exhaustive review of the original research, references, and conclusions found in its 2016 study.  In addition, supplementary research was conducted and inquiries made with regulatory agencies, manufacturers of respirators, and other military services to ensure the ultimate conclusions were accurate . . . The results indicate the original research and conclusions are still valid. The Naval Safety Center stands by the original conclusion that deviations from the current prescribed facial hair grooming standards represent significant increased risk to the individual.  Subsequent risk is also incurred by other crew members that may have to assist or rely upon these individuals.

Cua Decl., Ex. 1 ¶ 1–2.

Shoyeb asserts that the U.S. Navy cannot demonstrate a compelling interest because the U.S. Navy has granted similar requests for the other Plaintiffs and allowed service members medical waivers and morale no-shave chits, Shoyeb has agreed to shave when operationally

15

necessary, and the U.S. Navy can transfer Shoyeb from his current duty assignment. His arguments are unpersuasive.

First, Shoyeb contends that the U.S. Navy cannot demonstrate a compelling interest because the U.S. Navy granted a religious accommodation to the other Plaintiffs in this litigation. Pl.'s Br. at 2. Shoyeb overlooks that the U.S. Navy granted Di Liscia and Katsareas based on their individual circumstances, namely, the U.S. Navy granted Di Liscia his accommodation while assigned to a shore command and granted Katsareas his accommodation while assigned to the auxiliary security force. *See supra* Background § C.2, 3. Moreover, both Di Liscia and Katsareas are assigned to an aircraft carrier, which is markedly different from an aegis cruiser, namely in the size of the crew, and are assigned to a warship that is in prolonged shore side maintenance availability. *See id.*

Second, Shoyeb contends that the U.S. Navy cannot demonstrate a compelling interest because the U.S. Navy permits medical waivers. *See* Pl.'s Br. at 17. While the U.S. Navy does permit medical waivers for certain sailors who suffer from *pseudofolliculitis barbae*, similar to the U.S. Navy's compelling interest here—the safety of a U.S. Navy warship—the U.S. Navy directs commanders and commanding officers to disrupt any treatment regime and require the service member to shave if the treatment regime interferes with operational, maintenance, training requirements, or duties assigned that necessitate the removal of facial hair. BUPERINST 1000.22C ¶ 6.b. Moreover, the U.S. Navy imposes the similar disciplinary consequences for non-compliance or refusal to participate in a treatment regime. *Id.* ¶ 6.e.

Third, Shoyeb contends that the U.S. Navy cannot demonstrate a compelling interest because commanders and commanding officers permit service members to purchase a chit that allows the service member to not shave for a determined period of time. *See* Pl.'s Br. at 17–18.

The U.S. Navy uniform regulations clearly prohibit this practice.  *See* Uniform Regulations § 2201.2 ("The face shall be clean shaven unless a shaving waiver is authorized by the Commanding Officer per BUPERSINST 1000.22 or a religious accommodation has been granted per BUPERSINST 1730.11.").  Indeed, in April 2021, the Chief of Naval Operations reiterated that allowing sailors to grow beards at sea "is contrary to Navy policy and is NOT within the commanding officer's authority." NAVADMIN 080-21, *Personal for Commanders, Commanding Officers and Executive Officers Unauthorized Beards* (Apr. 16, 2021) (attached hereto as Ex. K) (emphasis in original); *see also* NAVOP 011-87, *Personal Appearance and Physical Readiness* (Feb. 12, 1987) (attached hereto as Ex. L) (reminding the U.S. Navy of the requirements to adhere to the U.S. Navy uniform regulations).

Fourth, Shoyeb contends that the U.S. Navy cannot demonstrate a compelling interest because he will shave when faced with a life threatening situation would impede the safety of his crew members.  *See* Pl.'s Br. at 18.  Shoyeb ignores that a situation requiring an emergency response demands the crew members be ready to respond at all times.  *See* Cua Decl. ¶ 8 (discussing the fire onboard USS BOMHOMME RICHARD (LHD 6) and USS MIAMI (SSN 755)).  Indeed, damage control events occur without warning and require an immediate response. *See* U.S. Navy Report of Investigation, *Command Investigation Into the Fire That Occurred on USS WHIDBEY ISLAND (LSD 41) On 5 October 2010* (attached hereto as Ex. M), at 5–6 (noting the onset of an out of control class alpha fire within minutes and the first notice of the fire at 3:40 a.m.).

Lastly, Shoyeb contends that the U.S. Navy cannot demonstrate a compelling interest because the U.S. Navy can transfer him.  *See* Pl.'s Br. at 18.  Shoyeb ignores that the U.S. Navy has a compelling interest in maintaining U.S. Navy ships ready for war at sea.  *See* 10 U.S.C.

§ 8062(a). To do so, requires each crew member, like Shoyeb, to fulfill his or her individual roles onboard a U.S. Navy warship. *See* Cua Decl. ¶¶ 6, 10 (discussing Shoyeb duties onboard CHANCELLORSVILLE and the role of operations specialists). Moreover, Shoyeb claims that CHANCELLORSVILLE is currently dry-docked in Japan. Pl.'s Br. at 2. However, as of May 2021, the warship has moved out of dry-docks and is in the basic phase of training. Cua Decl. ¶ 9. Indeed, the goal of this phase is to provide a continuous and uninterrupted block of time to focus on development of core unit mission required operational capabilities. Commander, U.S. Fleet Forces Command instruction number 3000.15B (Oct. 20, 2020) (attached hereto as Ex. N) at § 401.2. During basic phase, units enhance skills and validate readiness through completion of basic-level training, inspections, certifications, assessments, and visits. *Id*.

Therefore, the U.S. Navy has demonstrated it had a compelling interest when it denied Shoyeb's request for a religious accommodation to grow a beard of unspecified length while stationed onboard CHANCELLORSVILLE.

        b.    *The U.S. Navy has imposed the least restrictive mean in furtherance of its compelling interest in the safe operation of U.S. Navy warships at sea*

For the same reasons discussed above—the need for a crew member to be clean shaven in order to participate in damage control—the U.S. Navy has imposed the least restrictive mean. As a crew member aboard a forward-deployed U.S. Navy warship, Shoyeb must be able to help protect the ship and his shipmates during an emergency. Cua Decl. ¶¶ 6–11. And Shoyeb must be able to participate in an instant. Cua Decl. ¶ 7.

Shoyeb asserts that the U.S. Navy cannot demonstrate it imposed the least restrictive means for the same reasons it cannot demonstrate a compelling interest: because the U.S. Navy has granted similar requests for the other Plaintiffs and allowed service members medical waivers and morale no-shave chits and the U.S. Navy can transfer Shoyeb from his current duty assignment.

Pl.'s Br. at 19–21.  For the reasons discussed above, his arguments are unpersuasive.  *See supra* § 1.a.

Moreover, Shoyeb asserts that the Navy uses positive-pressure masks that are not dependent on having a perfect seal and do not even fit test sailors.  Pl.'s Br. at 21.  Shoyeb is wrong.  The Safety Center reviews conducted in 2016 and 2018 noted an individual must be clean shaven to receive a proper seal.  *See* U.S. Naval Safety Ctr. Letter, *Face Seal Guidance* (Mar. 8, 2016) at 5 ("[Facepieces] rely on the "clean-shaven" standard to ensure maximum protection and that facial hair is explicitly prohibited for use with their products."); Cua Decl., Ex. 1, Encl. 1 ¶ 5 ("The major manufacturers of respirators in the United States were contacted including MSA, 3M, and Scott.  Technical representatives were contacted and user manuals reviewed.  All manufacturers contacted stated they have not changed their policy on respirator usage in that all positive/negative pressure respirators require clean, smooth faces in order to have a seal.").  And, as the Naval Safety Center noted, "deviations from the current prescribed facial hair grooming standards represent significant increased risk to the individual[, and] [s]ubsequent risk is also incurred by other crew members that may have to assist or rely upon these individuals."  Cua Decl., Ex 1.  In other words, an imperfect seal jeopardizes the safety of all onboard a warship.

Further, Shoyeb's reliance on *Singh v. McHugh*, 109 F. Supp. 3d 72 (D.D.C. 2015) is unavailing.  The *Singh* case is factually different.  In *Singh*, plaintiff requested a religious accommodation during an officer training program prior to joining the U.S. Army.  The U.S. Army denied the request stating that the requested accommodation would "adversely impact individual and unit readiness, unit cohesion, morale, good order, discipline, health and safety within the Army ROTC program."  *Id*. at 93.  The safety aspect was the need to wear a protective face masks in a response to a chemical, biological, radiological, or nuclear attack.  However, the court explicitly

stated that a soldier would only need to wear a face mask in certain circumstances like maneuvers and other tactical situations, and other times could be clean-shaven. *Id.* at 96. The court concluded, "[f]or the same reason, the concern about plaintiff's health and safety is misplaced, at least for the duration of his participation in ROTC." *Id.*

In the present case, the U.S. Navy's compelling interest is the safe operation of a U.S. Navy warship, and, thus, crew members must always be ready to participate in damage control. *See supra* § 1.a. Indeed, a fire onboard a warship requires an immediate response, and, even with such a response, leads to a loss of life and significant damage to U.S. Navy operational assets. *See* Cua Decl. ¶ 8 (discussing the complete loss of BONHOMME RICHARD and MIAMI); U.S. Navy, Naval Sea Systems Command, DC Museum, *USS CONYNGHAM* (noting a class bravo main space fire during readiness training resulting in one service member killed and 18 injured and the decommissioning of the ship).[4] And, it is without question that the U.S. Navy operating environment is different from that of the U.S. Army. Shoyeb also points to the U.S. Air Force's policies to argue the U.S. Navy has not imposed the least restrictive means. Pl.'s Br. at 22–23. The same comments above apply equally to any U.S. Air Force policy.

Shoyeb's reliance on *Fraternal Order of Police v. City of Newark*, 170 F.3d 359 (3d Cir. 1999) is similarly unavailing. The Third Circuit noted that "the medical exemption raises concern because it indicates that the Department has made a value judgment that secular (*i.e.*, medical) motivations for wearing a beard are important enough to overcome its general interest in uniformity but that religious motivations are not." *Id.* at 366. But the U.S. Navy's compelling interest is not uniformity—it is the need to operate a U.S. Navy warship safely. *See supra* § 1.a.

---

[4]     Available at https://web.archive.org/web/20100116120939/http://www.dcfp.navy.mil /mc/museum/Conyngham/Conyngham1.htm (last visited Aug. 2, 2021).

Therefore, the U.S. Navy has demonstrated it imposed the least restrictive means when it denied Shoyeb's request for a religious accommodation to grow a beard of unspecified length while stationed onboard CHANCELLORSVILLE.

2.    Shoyeb fails to demonstrate a likelihood of success on the merits of his constitutional claims because the U.S. Navy's treatment of his request has been neutral, and the U.S. Navy has demonstrated a compelling interest and imposed the least restrictive means to impose its compelling interest

Under the First Amendment's protection of the free exercise of religion, "a law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993) (citation omitted); see also *Kaemmerling v. Lappin*, 553 F.3d 669, 677 (2008). If a law is not neutral or generally applicable, it is subject to strict scrutiny. *Lukumi*, 508 U.S. at 531–32 ("A law failing to satisfy these requirements must be justified by a compelling governmental interest and must be narrowly tailored to advance that interest.").

The Equal Protection Clause applies to the federal government through the Due Process Clause of the Fifth Amendment. *See Bolling v. Sharpe*, 347 U.S 497 (1954). To succeed on an equal protection claim, a plaintiff must "demonstrate that he was treated differently than similarly situated individuals and that [the government's] explanation does not satisfy the relevant level of scrutiny." *Settles v. United States Parole Comm'n*, 429 F.3d 1098, 1103 (D.C. Cir. 2005). "Strict scrutiny . . . is warranted if the restriction 'jeopardizes exercise of a fundamental right or categorizes on the basis of an inherently suspect characteristic.'" *Banner v. United States*, 428 F.3d 303, 307 (D.C. Cir. 2005) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992))

a.    *The U.S. Navy had demonstrated that it treats requests to grow beards whether for medical or religious reasons the same*

As discussed above, the U.S. Navy imposes the same standards for a medical waiver or a religious accommodation the same.  *See supra* § 1.a.  The U.S. Navy requires a service member requesting to grow a beard as a medical waiver or religious accommodation to go through a rigorous review process.  *Compare* BUPERINST 1000.22C ¶ 6 *with* BUPERINST 1730.11A. ¶ 5. Both types of requests are subject to denial, in the case of a religious accommodation request, or to suspension, in the case of a medical waiver, for operational needs.  *Compare* BUPERINST 1000.22C ¶ 7.c(1), (2) *with* BUPERINST 1730.11A ¶ 6.  And refusal to comply with both policies subjects a service member to discipline.  *Compare* BUPERINST 1000.22C ¶ 6.e *with* U.S. Navy Uniform Regulations § 1101.3.  Indeed, Shoyeb points to examples of service members onboard THEODORE ROOSEVELT (EMN3 Di Liscia's duty station) and GEORGE WASHINGTON (MC3 Katsareas' duty stations) being granted both medical waivers and religious accommodations to grow a beard.  Pl.'s Br. at 15–16.  Further, Shoyeb asserts that a service member is permitted to purchase a morale no-shave chit.  Pl.'s Br. at 17.  However, as discussed above, the U.S. Navy specifically prohibits such an action.  *See supra* § 1.a.

Thus, Shoyeb fails to demonstrate that the U.S. Navy is treating him differently that similarly situated service members, namely other service members stationed onboard a U.S. Navy warship at sea.

b.    *The U.S. Navy had demonstrated that it had a compelling interest—the safe operation of a U.S. Navy warship—and that it imposed the least restrictive means in furtherance of the compelling interest*

As discussed above, the U.S. Navy has demonstrated it had a compelling interest and it imposed the least restrictive means in furtherance of the compelling interest when it denied Shoyeb's request for a religious accommodation to grow a beard of unspecified length while

22

stationed onboard CHANCELLORSVILLE.  *See supra* § 1.  Therefore, even if Shoyeb is able to demonstrate that the U.S. Navy did not treat him neutrally, the U.S. Navy's denial of his request passed strict scrutiny.

**B.     Plaintiff cannot establish a likelihood of immediate irreparable harm**

Regardless of the merits of his or her claims, a plaintiff must show "that irreparable injury is likely in the absence of an injunction," *Singh v. Carter*, 185 F. Supp. 3d 11, 20 (D.D.C. 2016) (quoting *Winter*, 555 U.S. at 22).  To be considered "irreparable," a plaintiff must show that the injury in the absence of preliminary relief will be "'both certain and great,' 'actual and not theoretical,' 'beyond remediation,' and 'of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm.'"  *Mexichem Specialty Resins, Inc. v. EPA*, 787 F.3d 544, 555 (D.C. Cir. 2015) (quoting *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006)).  The significance of the alleged harm is also relevant to a court's determination of whether to grant injunctive relief.  *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313 (1982) ("[A] federal judge sitting as chancellor is not mechanically obligated to grant an injunction for every violation of law."); *E.B. v. Dep't of State*, 422 F. Supp. 3d 81, 88 (D.D.C. 2019) ("While 'there is some appeal to the proposition that any damage, however slight, which cannot be made whole at a later time, should justify injunctive relief,' the Court cannot ignore that 'some concept of magnitude of injury is implicit in the [preliminary injunction] standards.'") (quoting *Gulf Oil Corp. v. Dep't of Energy*, 514 F. Supp. 1019, 1026 (D.D.C. 1981)).

Here, Shoyeb fails to show any irreparable harm that entitles him to preliminary injunctive relief.  Defendants recognize that courts have determined when an individual established a likelihood of success on the merits of a RFRA and constitutional claim, the individual also establishes irreparable harm.  *See Roman Cath. Archbishop of Wash. v. Bowser*, Civ. A. No. 20-03625 (TNM), 2021 WL 1146399, at *18 (D.D.C. Mar. 25, 2021) ("Because the

Archdiocese has shown it is likely to succeed on the merits of its First Amendment and RFRA claims, it has shown that it will be irreparably injured absent injunctive relief."); *Capitol Hill Baptist Church v. Bowser*, 496 F. Supp. 3d 284, 301 (D.D.C. 2020) ("When plaintiffs establish a strong likelihood of success on the merits of their RFRA claim, they have also adequately demonstrated that they will suffer irreparable harm absent the issuance of a preliminary injunction."); *Mills v. District of Columbia*, 571 F.3d 1304, 1312 (D.C. Cir. 2009) ("It has long been established that the loss of constitutional freedoms, 'for even minimal periods of time, unquestionably constitutes irreparable injury.'").  However, as discussed above, Shoyeb fails to establish a likelihood of success on the merits of his claims.

Moreover, Shoyeb's "extensive delay in seeking a preliminary injunction weighs heavily against a finding of irreparable harm."  *Maldonado v. District of Columbia*, Civ. A. No. 10-1511 (RJL), 2019 WL 6877913, at *3 (D.D.C. Dec. 16, 2019) (citing *Fund for Animals v. Frizzell*, 530 F.2d 982, 987 (D.C. Cir. 1975) (concluding delay of 44 days in seeking an injunction was "inexcusable"); *Guttenberg v. Emery*, 26 F. Supp. 3d 88, 103 (D.D.C. 2014); *Newdow v. Bush*, 355 F. Supp. 2d 265, 292 (D.D.C. 2005); *Mylan Pharms. v. Shalala*, 81 F. Supp. 2d 30, 44 (D.D.C. 2000) (concluding delay of two months "militates against a finding of irreparable harm"); *Pub. Citizen Health Rsch. Grp. v. Acosta*, 363 F. Supp. 3d 1, 22 (D.D.C. 2018) (concluding no irreparable harm where plaintiffs waited over three months after learning that a government agency had taken the complained-of action).

Here, Shoyeb entered the Navy in November 2017.  Decl. of Mohammed Shoyeb (July 19, 2021) ¶ 4, ECF No. 22-3.  Despite maintaining facial hair prior to entering the naval service, Shoyeb shaved his facial hair upon entry.  *Id*. ¶¶ 7–8.  Moreover, the U.S. Navy denied Shoyeb's request in December 2020, and Shoyeb did not seek emergency at the same time as Di Liscia in

April 2021.  *See* Appl. for TRO & for Prelim. Inj.  Thus, under these circumstances, the Court should consider Shoyeb's prolonged delay to bring his request for emergency relief, and, thus, find he has not established that he would suffer irreparable harm.

**C.    The balance of harms and the public interest weigh against preliminary relief**

The final two factors that a court must consider when deciding to grant a preliminary injunction are balance of harms and the public's interest in issuing the injunction. These factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009) (applying standards for a stay); *see Minard run Oil Co. v. U.S. Forest Serv.*, 670 F.3d 235, 256 (3d Cir. 2011) ("[W]e consider together the[se] two elements of the preliminary injunction framework.").  In balancing the competing harms, the Court must "consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24.  Additionally, the "courts of equity [have] particular regard for the public consequences in employing the extraordinary remedy of injunction." *Id.* (internal quotations omitted).

Shoyeb fails to show that the balance of harms and the public interest weigh in favor of granting preliminary relief.  The intrusion of a mandatory injunction "would be a disruptive force as to affairs peculiarly within the jurisdiction of the military authorities." *Orloff v. Willoughby*, 345 U.S. 83, 95 (1953); *see Thomasson v. Perry*, 80 F.3d 915, 926 (4th Cir. 1996) ("Judicial interference with the subordinate decisions of military authorities frustrates the national security goals that the democratic branches have sought to achieve.").  Here, the Court's granting of a mandatory injunction would interfere with the safe operation of a U.S. Navy warship at sea.  *See* Cua Decl. ¶¶ 5, 7; Shoyeb RA Req. History at 1.  Although, Shoyeb contends that he suffers a violation of his core religious-exercise rights every day he is denied a religious accommodation, Pls.' Mem. at 27–8, he has failed to demonstrate that he will suffer irreparable harm if an injunction

is not granted, *see supra* §§ A, B.  Moreover, Shoyeb has served in the naval service for almost four years without a religious accommodation.

Conversely, the harm to the U.S. Navy in granting the injunction is significant.  To accommodate Shoyeb's request, the Court would need to intervene in the management and control of the military an area constitutionally reserved to the executive and legislative branches of government.  *See Gilligan v. Morgan*, 413 U.S. 1, 7 (1973); *Chappell v. Wallace*, 462 U.S. 296, 301 (1983).  An injunction that intrudes upon those military concerns would not be prudent, especially in light of the need for all members of a ship at sea to be available for damage control. See Cua Decl. ¶¶ 5, 7.  Accordingly, the potential harm to the U.S. Navy from judicial intrusion in military affairs should weigh heavily against Shoyeb's request for a mandatory injunction.

Further, in evaluating the harm to the U.S. Navy, the Court should not focus narrowly on this single case.  Rather, the court should consider the precedential effect that granting the injunction would have on the military as a whole.  *See Guerra v. Scruggs*, 942 F.2d 270, 275 (4th Cir. 1991); *Qualls v. Rumsfeld*, 357 F. Supp. 2d 274, 286–87 (D.D.C. 2005).  As the court noted in *Irby v. United States*:

> Without looking at the total effect of such cases, courts might consistently find that the harm tipped decidedly in favor of the plaintiffs.  As a result, there would be few occasions when a preliminary injunction would not issue. Any plaintiff could allege the weakest claims and temporarily forestall an order to active duty or other disagreeable military decision.

245 F. Supp. 2d 792, 798 (E.D. Va. 2003).  Thus, in this case, the balance of harms tips in favor of the U.S. Navy.

Shoyeb contends that because the U.S. Navy is purportedly engaging in religious discrimination, the public's interest is aligned with granting him mandatory injunctive relief.  Pl.'s Br. at 29.  Defendants agree, but the U.S. Navy is not engaging in religious discrimination.  *See supra* § A.  Further, Shoyeb contends that the U.S. Navy will not be harmed because the U.S. Navy

granted a similar religious accommodation to Katsareas and Di Liscia and a medical waiver to Braggs. Pl.'s Br. at 29. However, none of those Plaintiffs are currently serving aboard a warship *at sea*. *See supra* Background § C.

Courts have recognized that "the public has an interest, particularly in light of current events, in seeing that the [military's] discretionary decision making with respect to personnel decisions is effectuated with minimal judicial interference." *Irby*, 245 F. Supp. 2d at 798. The mandatory injunctive relief sought here would unduly interfere with the public's recognized interest in efficient and safe operation of the U.S. Navy. *See Antonuk v. United States*, 445 F.2d 592, 594 (6th Cir. 1971) ("The governmental interest in raising an army has, without exception, been considered by the courts to be paramount. Thus, the ordinary [injunction] balancing tests are rendered almost irrelevant by the transcendent importance of the war power."). It is axiomatic that the public has an interest in maintaining an effective military. *See Rich v. Sec'y of Army*, 735 F.2d 1220, 1228 (10th Cir. 1984) ("the government has a compelling interest in maintaining a strong military force."); *Philips v. Perry*, 106 F.3d 1420, 1425 (9th Cir. 1997) ("[w]e have concluded that maintaining effective armed forces is indisputably a compelling governmental purpose"); *Bitterman v. Sec'y of Def.*, 553 F. Supp. 719, 725 (D.D.C. 1982) (["t]here is no doubt that the effective functioning and maintenance of the Air Force is a substantial compelling governmental interest"). An injunction, in this case, could have far-reaching effects on the U.S. Navy's ability to safely operate at sea. Given these weighty considerations, the balance of the harms and the public's interest favors the U.S. Navy.

Therefore, the final two factors weigh in Defendants' favor, not Shoyeb. For these reasons, Shoyeb cannot clearly establish any of the preliminary injunction factors on this record, let alone all four of them. His motion must be denied.

**CONCLUSION**

For the reasons set forth above, the Court should deny Shoyeb's request for a mandatory

preliminary injunction.

Dated: August 2, 2021                    Respectfully Submitted,

                                         CHANNING D. PHILLIPS
                                         D.C. Bar No. 415793
                                         Acting United States Attorney

                                         BRIAN P. HUDAK
                                         Acting Chief, Civil Division

Of Counsel                               /s/ Joseph F. Carilli, Jr.
                                         JOSEPH F. CARILLI, JR.
CATHERINE T. MCMAHON                     N.H. Bar No. 15311
Lieutenant Commander, JAGC, USN          Assistant United States Attorney
Office of the Judge Advocate General     Civil Division
Department of the Navy                   555 4th St. N.W.
                                         Washington, D.C. 20530
                                         Telephone: (202) 252-2561
                                         E-mail: joseph.carilli@usdoj.gov

                                         *Counsel for Defendants*