Exhibit C



**DEPARTMENT OF THE NAVY**
CHIEF OF NAVAL PERSONNEL
701 SOUTH COURTHOUSE ROAD
ARLINGTON VA 22204-2472

BUPERSINST 1000.22C
N13
8 Oct 2019

BUPERS INSTRUCTION 1000.22C

From:  Chief of Naval Personnel

Subj:  MANAGEMENT OF NAVY UNIFORMED PERSONNEL DIAGNOSED WITH
       PSEUDOFOLLICULITIS BARBAE

Ref:   (a) NAVPERS 15665I
       (b) OPNAVINST 5100.19E
       (c) OPNAVINST 5100.23G
       (d) COMNAVSAFECEN NORFOLK VA 261941Z Nov 18 (ALSAFE 18/008)
       (e) DoD Instruction 6130.03 of 6 May 2018
       (f) NAVPERS 15560D

Encl:  (1) Pseudofolliculitis Barbae (PFB) Treatment Protocol
       (2) Verbiage for Use in NAVPERS 1070/613

1.  <u>Purpose</u>.  This instruction provides policy and guidance to ensure the personal safety and mission readiness of Service Members diagnosed with Pseudofolliculitis Barbae (PFB), and to standardize the management of treatment for this skin condition.  In line with reference (d), facial hair of any length impairs the effectiveness of safety equipment and increases the risk to personnel safety which leads to increased risk to mission and overall force.  Additionally, this instruction enables Service Members to sufficiently control the symptoms of their PFB to permit daily shaving.  Major revisions to this instruction include the updated allowable exceptions for male grooming standards, the updated Pseudofolliculitis Barbae (PFB) Shaving Waiver/Evaluation/Disposition Form (NAVPERS 1000/1), the removal of the limitations placed on evaluations, treatment and care and guidance for tracking the progress of PFB treatment.  This instruction is a complete revision and should be reviewed in its entirety.

2.  <u>Cancellation</u>.  BUPERSINST 1000.22B.

3.  <u>Scope and Applicability</u>.  This instruction applies to all Navy uniformed personnel diagnosed with PFB.

4.  <u>Background</u>.  Reference (a) permits the wearing of mustaches and authorizes the temporary wearing of facial hair (beards) for certain medical conditions such as, but not limited to, PFB (shaving bumps) and severe facial scarring.  Facial hair, or the non-smooth skin condition resulting from PFB, prevents establishing a proper seal for breathing protection devices that may be required in operational, maintenance and training environments, as noted in references (a) through (d).  It is the responsibility of every Sailor in every naval environment to maintain

BUPERSINST 1000.22C
8 Oct 2019

personal readiness and safety. Navy grooming standards and requirements are aligned in support of achieving and maintaining personal readiness and safety regardless of assignment and duties.

5. <u>Discussion</u>. PFB is a treatable condition and active treatment will contribute to an increase to a Sailor's personal safety as well as the safety of others who rely upon their personal readiness. Not participating in an active treatment regimen reduces a Sailor's readiness to safely perform their duties and contributes to an increased risk to mission and ultimately a risk to the force. Actively seeking and participating in prescribed medical treatments represents an individual's professional commitment to themselves, command readiness and the Navy. Anyone with thick, curly facial hair may be susceptible to PFB. PFB occurs when, after shaving, the tips of shaved hairs curve back toward the surface of the skin resulting in irritation and, in some cases, re-penetration of the skin. This may cause red papules, pustules, darkened skin and scarring. PFB is most common on the face and neck, but can occur wherever thick, curled hair is removed by shaving, waxing, plucking, or similar means. Most cases can be controlled with modification of shaving techniques and prescribed medical treatments. Some other conditions, such as nodulocystic acne and severe facial scarring, may also make shaving too traumatic to tolerate. Sailors intolerant of shaving should be referred for medical evaluation and treatment.

6. <u>Policy</u>

    a. Reference (e) identifies PFB as a disqualifying, but waivable condition for initial appointment, enlistment or induction into the military services. Continued military service for Service Members diagnosed with PFB beyond their initial enlistment or appointment is dependent upon medical diagnoses, active treatment or condition resolution, full compliance of prescribed treatment regimens by the Service Member and recommendation for retention by health care providers and commanding officers (CO).

    b. Sailors suffering from facial irritation after shaving will be referred to a health care provider for evaluation, diagnosis and treatment. Health care providers will make a recommendation to the CO using enclosure (1) for a treatment regimen aimed at returning the member to normal grooming standards. The treatment regimen and prescribed temporary grooming modification period of no shaving will be documented with NAVPERS 1000/1 by the health care provider and the Sailor's CO or delegated representative. Prescribed waiver periods may be interrupted by operational, maintenance, training requirements or duties assigned that necessitate the removal of facial hair, as determined by the CO. In such cases, COs may direct daily shaving until the prescribed treatment regimen can be resumed. Verbiage provided in enclosure (2) must be used when completing Administrative Remarks Form (NAVPERS 1070/613) in order to document the command's counseling of the Sailor on the requirement to comply with treatment instructions and the potential impact to their eligibility for continued service for failure to comply.

    c. Sailors diagnosed with PFB who were medically evaluated and assigned a treatment regimen will be re-evaluated and prescribed a new treatment regimen if the previous regimen

BUPERSINST 1000.22C
8 Oct 2019

fails to adequately control the condition, or if the treatment regimen is interrupted for operational, training or maintenance requirements.  A CO directed re-evaluation is required if a treatment regimen is interrupted by the Sailor's permanent change of station transfer during treatment.  If either the health care provider or the Sailor's chain of command determines that the Sailor is not following or is refusing to comply with the prescribed treatment requirements, the CO will be notified so administrative action can be initiated in line with article 1900-120 of reference (f), if warranted.

    d.  Permanent shaving waivers are not authorized.  Sailors diagnosed with PFB who were previously issued a "permanent no-shaving waiver" must undergo re-evaluation by an authorized health care provider, be prescribed an approved PFB treatment regimen and obtain a temporary modified shaving routine from their CO by following the guidelines and procedures outlined in this instruction.  Re-evaluation must occur within 6 months of the date of this instruction unless the Sailor is deployed or assigned to a region where a medical evaluation and treatment is not available.  In such cases, the member will comply with the instructions to remove facial hair as directed by the unit CO.

    e.  PFB affected Sailors whose prescribed PFB treatment options have been determined by the health care provider and CO to be ineffective or prevented the Sailor from performing assigned duties, will be placed on a modified grooming routine re-evaluated annually to allow for skin texture change and determination of susceptibility for follow-on PFB treatment and return to normal grooming standards.  Facial hair growth while on a modified grooming routine will not exceed ¼ of an inch in length between shaving periods.  Sailors who willfully decline to participate in medically prescribed and CO endorsed treatment regimens or modified grooming routines may be subject to administrative actions in line with article 1900-120 of reference (f) if the medical condition persist.  The determination of administrative actions will be documented on the NAVPERS 1070/613 utilizing the verbiage provided in enclosure (2) and placed in the Sailor's service record.

7.  <u>Action</u>

    a.  Service Members suffering skin irritation from required shaving will

       (1)  Seek medical consultation and treatment in a timely manner.

       (2)  Sailors previously issued permanent shaving waivers will obtain a medical re-evaluation and treatment plan within 6 months of the date of this instruction unless deployed or assigned to a region where a medical evaluation and treatment is not available.  In such cases, the member will comply with the instructions to remove facial hair as directed by their CO.

       (3)  Comply with all treatment protocols for the prescribed length of time unless instructed otherwise by a health care provider or CO.  Ask for guidance when in doubt of treatment requirements or expected outcome.

BUPERSINST 1000.22C
8 Oct 2019

(4) Maintain professional appearance during periods of authorized waiver of facial hair standards by regularly trimming facial hair to ensure the hair stands off the skin no more than 1/4 of an inch. Facial hair is to be of uniform length and free of sculpted styling or edging.

(5) Retain on their person, a copy of NAVPERS 1000/1 during periods of treatment as evidence of the waiver of facial hair standards.

(6) Acknowledge requirement to comply with prescribed treatment regimen and potential impact to eligibility for continued service by signing NAVPERS 1070/613 with the verbiage in enclosure (2).

(7) Remove or shave facial hair as directed by the treatment plan or by the CO's instructions in cases when a treatment plan has not been provided or cannot be implemented.

(8) Follow-up with your health care provider and complete the NAVPERS 1000/1 "Post Treatment Regimen Evaluation."

(9) Obtain an annual PFB re-evaluation if it is determined you are non-responsive to both medical and laser treatments. Prescribed PFB treatments will re-commence when skin texture is determined to be susceptible for further conditioning and returning to a normal shaving status. Ensure the results of PFB evaluations and findings are documented in your medical record.

  b.  Military health care providers will

(1) Diagnose and treat the cause of facial irritation according to the guidelines in enclosure (1).

(2) Document the prescribed treatment regimen on NAVPERS 1000/1 and ensure it is added to the Service Member's medical record. Refer the Service Member to a dermatologist when deemed appropriate in line with enclosure (1).

(3) Educate Sailors and command leadership about the condition and treatment plan(s).

(4) Upon conclusion of the prescribed treatment period, complete the "Evaluation by Health Care Provider" section of NAVPERS 1000/1, indicate the result of findings and complete the recommendation by checking the appropriate block and forward a copy to the Sailor's CO. In cases of non-responsive treatment, treatment interruptions or treatment failures, provide a recommendation to the CO for re-evaluation and re-treatment, alternative shaving regimen, or administrative action using NAVPERS 1000/1.

(5) Conduct annual PFB re-evaluation for Sailors determined to be non-responsive to medical and laser treatment. Determine suitability for further treatment and potential for the

4

BUPERSINST 1000.22C
8 Oct 2019

Service Member to return to normal grooming standards.  Document annual findings and determinations in the Service Member's medical record until the member is returned to normal grooming standards.

   c.  COs will

     (1)  When operations, training or duty assignments permit, implement the recommendations of the health care provider as documented on NAVPERS 1000/1.  During periods of prescribed non-shaving, the Sailor will not be required to shave unless operational, training or maintenance requirements prohibit implementing PFB treatment regimens.  Accordingly, COs will also determine and modify an individual Sailors' duties and responsibilities in order to accommodate any CO-directed modifications to a prescribed shaving regimen while ensuring compliance with all safety policies and requirements.

     (2)  Direct the Service Member to remove facial hair when conditions require the wearing of face masks or emergency breathing equipment for operational, training or duty assignments based on safety and the threat environment.

     (3)  Counsel the Sailor on the requirement to comply with the prescribed treatment protocols and the potential administrative impacts to continued service eligibility if they fail to comply as directed.  Document the counseling on NAVPERS 1070/613 with the verbiage provided in enclosure (2).

     (4)  Enforce professional appearance and other uniform standards during periods of waiver of facial hair standards ensuring facial hair naturally stands off the skin no more than 1/4 of an inch.  Facial hair is to be of uniform length, free of sculpted styling or edging.

     (5)  Provide allowances for Service Members who show scant facial hair growth (5 o'clock shadow) due to their prescribed PFB control techniques such as avoiding too close of a shave.

     (6)  When a prescribed regimen fails to adequately control PFB, direct the Sailor to the health care provider for re-evaluation.  Contact the health care provider as necessary to review the cause of the treatment failure and recommended new treatment regimen.

       (a)  A CO's waiver authority will not extend beyond detachment of the CO or the detachment of the Sailor from the command.

       (b)  Unavailability of any prescribed treatment (such as laser treatment) or medication will not be grounds for administrative actions or ineligibility for continued service provided that the Service Member has demonstrated good faith in attempting to resolve their PFB condition.

BUPERSINST 1000.22C
8 Oct 2019

(7) Ensure annual PFB medical re-evaluation and determination of susceptibility for treatment occurs for Sailors determined non-responsive to medical and laser treatments. Establish a modified grooming routine until the Sailor returns to normal grooming standards. Direct facial hair growth not exceed ¼ inch between required shaving periods.

8. Records Management

a. Records created as a result of this instruction, regardless of format or media, must be maintained and dispositioned for the standard subject identification codes 1000 through 13000 series per the records disposition schedules located on the Department of the Navy/Assistant for Administration (DON/AA), Directives and Records Management Division (DRMD) portal page at https://portal.secnav.navy.mil/orgs/DUSNM/DONAA/DRM/Records-and-Information-Management/Approved%20Record%20Schedules/Forms/AllItems.aspx.

b. For questions concerning the management of records related to this instruction or the records disposition schedules, please contact the local records manager or the DON/AA DRMD program office.

9. Review and Effective Date. Under Navy Directives Management Program, OPNAVINST 5215.17A, Director, Military Personnel Plans and Policy (OPNAV N13) will review this instruction annually on the anniversary of its issuance date to ensure applicability, currency, and consistency with Federal, Department of Defense, Secretary of the Navy, and Navy policy and statutory authority using Review of Instruction, OPNAV 5215/40. This instruction will be in effect for 10 years, unless revised or canceled in the interim, and will be reissued by the 10-year anniversary date if it is still required, unless it meets one of the exceptions in OPNAVINST 5215.17A, paragraph 9. Otherwise, if the instruction is no longer required, it will be processed for cancellation as soon as the need for cancellation is known following the guidance in OPNAV Manual 5215.1 of May 2016.

10. Forms

a. NAVPERS 1000/1 Pseudofolliculitis Barbae (PFB) Shaving Waiver/Evaluation/Disposition is available online at https://www.public.navy.mil/bupers-npc/reference/forms/NAVPERS/Pages/default.aspx.

b. NAVPERS 1070/613 Administrative Remarks is available online at https://www.public.navy.mil/bupers-npc/reference/forms/NAVPERS/Pages/default.aspx.

JOHN B. NOWELL, JR

BUPERSINST 1000.22C
8 Oct 2019

Releasability and distribution:
This instruction is cleared for public release and is available electronically only via
BUPERS/NAVPERSCOM Web site, https://www.public.navy.mil/bupers-
npc/reference/Pages/default.aspx.

BUPERSINST 1000.22C
8 Oct 2019

<u>Pseudofolliculitis Barbae (PFB) Treatment Protocol</u>

1.  <u>Confirm Diagnosis</u>:  Proper treatment must be focused on an accurate diagnosis of the cause of shave irritation.  When tightly curved hairs are observed to re-enter the skin and create irritated papules, the diagnosis of Pseudofolliculitis Barbae (PFB) can be made.  Irritation related to shaving without hair re-entry can be treated according to this protocol as well.  Other conditions that inhibit shaving, such as nodulocystic acne, may warrant a temporary discontinuation of daily shaving while proper medical treatment is pursued.

2.  <u>Determine and prescribe the best treatment approach</u>:  Many different treatments exist for PFB.  Over-the-counter (OTC) treatments may be useful and can be used by Service Members without medical supervision.  Prescription regimens in subparagraphs 2a through 2b may be more effective in some cases and can be used without previous trial of OTC treatment.  In addition, a Service Member, with informed consent and a health care provider's approval, can select laser hair reduction as the preferred treatment which most likely will result in permanent hair removal and resolution of symptoms.

    a.  Treatment Approach 1 - Medical Treatment with Grooming Modifications (for Mild to Moderate PFB)

        (1) This treatment approach consists of the combined use of:  application of medicated creams to make hairs more shaveable, shaving with gentle equipment and shaving techniques to minimize the risk of irritation and hair re-entry into the skin.

        (2) Service Members using this approach should be given a prescription of either a topical retinoid or eflornithine 13.9% (if available) and a temporary waiver of facial hair standards for up to 60 days.  The medications should be used for the full 60 days before shaving is attempted, and should be used continuously after successful shaving is resumed.  Topical retinoids work by softening the hair and reducing the skin's tendency to overgrow penetrating hairs.  They include tretinoin 0.05% cream (NSN 6505-01-044-9389), tretinoin 0.1% cream (NSN 6505-01-044-9388) and adapalene 0.1% cream (NSN 6505-01-564-8033).  They are applied in a thin film to the beard area once each night.  During the first weeks of use, they cause mild irritation which usually resolves with continued use.  Excessive irritation may require using a weaker retinoid or decreasing use to every other night.  As an alternative to topical retinoids, eflornithine 13.9% could be prescribed if available.  This cream would be applied to the beard area twice daily.  It acts as an inhibitor of hair growth and results in thinner, weaker hairs, less likely to cause papules.

        (3) After 60 days using these products, shaving can be attempted with a PFB razor with foil guard, a multi-blade razor with lubricating strips or with an electric razor.

        (4) Before shaving, water soften the beard first with a hot wet washcloth applied for 5 minutes.  This makes hairs easier to cut and more blunt-tipped after cutting.  Apply a lubricating

Enclosure (1)

BUPERSINST 1000.22C
8 Oct 2019

shaving gel for an additional 5 minutes.  Shave with the grain of the beard.  Do not stretch the skin or press firmly against the skin.  Use only one stroke over each area of the beard.  Always use a sharp razor, replacing often.

(5) If using an electric razor, set hair length to avoid too close a shave.  Soften the beard with electric razor pre-shave products.  Shave with the grain of the beard.  Do not stretch the skin or press firmly against the skin.  Avoid multiple strokes in the same area.  Do not press razor head hard against the skin.

(6) A soothing aftershave cream should be applied whether a PFB razor or an electric razor is used.  Health care providers may also consider prescribing hydrocortisone cream for use after shaving if needed.

b.  Treatment Approach 2 - Laser Hair Reduction with Grooming Modifications (for Moderate to Severe PFB)

(1) Where available, laser hair reduction is the most reliable approach allowing a return to grooming standards.  This is an appropriate treatment for moderate to severe cases of PFB or any case desiring permanent hair reduction.  In this procedure, light energy is absorbed by the hairs within the skin and is transformed into heat.  Heat injury to the follicles reduces the number, size and strength of hairs.  A series of at least three treatments is usually needed, with 30-45 days between treatments.  This procedure is usually available at military medical treatment facilities with a dermatology department.

(2) Service Members choosing this approach will be referred to a military dermatologist.  Grooming modifications of facial hair standards should be granted as recommended by the dermatologist.  Service Members should be aware that hair reduction in treated areas may be permanent.  They will still need to shave after treatment is complete.  White, red and blonde hair may not be effectively treated with this approach.

3.  Continued Care

a.  Once the prescribed technique is in use, the Service Member will follow up with the health care provider to evaluate effectiveness.  Follow up should occur within 2-3 weeks after shaving is resumed.

b.  Complete relief of symptoms is rare, and treatment can be counted successful when symptoms are improved enough to allow comfortable shaving.  Service Members who have achieved control of their PFB or other shave related skin irritation may have occasional future flares of the condition.  Laser treated patients sometimes have recurrent papules years after treatment is complete.  Service Members with recurrent symptoms may need to repeat their previous treatment approach or try another.

BUPERSINST 1000.22C
8 Oct 2019

<u>Verbiage for Use in NAVPERS 1070/613</u>

1.   You are hereby being counseled regarding your medical condition.  You were diagnosed with Pseudofolliculitis Barbae (PFB), a condition if left untreated will degrade your personal readiness and safety.  This degradation is a risk to the mission, your personal safety and the safety of others that depend upon you.  Your present medical condition is not considered a physical disability; however, it may be a disqualifying factor in determining your suitability for further Naval service if your condition is found to be uncontrollable.  You may also be found unsuitable for further Naval service if you willingly fail to comply with prescribed medical treatment or disregard orders by your commanding officer (CO) to shave when operational, maintenance and training conditions dictate for your safety.

2.   You are being afforded any and all medical assistance as required by your medical condition.  You will adhere to any and all of the recommendations of your attending physician and/or CO.

3.   Further assistance is available through:  Leading Petty Officer, Department Head, Command Senior Enlisted Leader, Chaplain, Executive Officer, CO, and Officers of the Medical Corps.

4.   This counseling is made to afford you an opportunity to undertake the recommended corrective action.  Any failure to adhere to the guidelines cited above will make you eligible for administrative separation.

Enclosure (2)