# Exhibit E

25 MAR 21

From: EMN3 Edmund D. DiLiscia, USN
To:   Chief of Naval Operations
Via:  Commanding Officer

Subj: APPEAL OF DCNO'S DENIAL OF RELIGIOUS ACCOMMODATION REQUEST BY EMN3 Edmund D. DiLiscia, USN

Ref:  (a) DCNO denial ltr of 21 DEC 20
      (b) Religious Freedom Restoration Act of 1993, 42 U.S.C. 2000bb, *et seq*.
      (c) DoD INSTRUCTION 1300.17, Effective 1 SEP 20
      (d) BUPERSINST 1730.11A, Effective 16 MAR 20

Encl: (1) My original religious accommodation request dated 8 SEP 20

## SUMMARY

1. My name is Edmund D. DiLiscia and I am an EMN3 stationed aboard the USS Theodore Roosevelt (CVN 71). Pursuant to the DoD and Navy guidelines in references (c) and (d) respecting religious accommodation, I write to respectfully appeal the denial of my request for an exception to the Navy's grooming policy to accommodate a quarter-inch beard in accordance with my sincerely held religious beliefs as an Orthodox Jewish man in service to my country.

Like many other Orthodox Jews in the United States, I sincerely believe that growing a beard is an important expression of my faith. I previously was given a no-shave chit while assigned to shore command. The chit transferred over to sea duty per BUPERSINST 1730.11. Although this chit remains in effect, it provides insufficient protection because it's not permanent and is vulnerable to revocation. My ship currently has a ship-wide no-shave chit in place. However, this ship-wide chit is insufficient to protect my religious exercise because Sailors must shave every fourteen days.

On about 8 SEP 20, I therefore sought a religious accommodation allowing me to maintain my beard and to fully reconcile my religious identity with my Navy service. On 21 DEC 20, the DCNO denied my request on the stated ground of safety concerns and possible interference with the effective performance of my duties—particularly in the event I might have to wear a sealed gas mask or similar equipment.

While sensitive to the safety concerns raised in reference (a), I am confident that, given my particular duties and the treatment of similar situations by the Navy and other branches of the military, my request can be granted consistent with my service obligations. And if circumstances were to change, such that the Navy deemed it unavoidable for me to be clean-shaven due to imminent risk to health and safety, I would be willing to shave my beard temporarily. But that is an unlikely

1

situation insufficient to justify a complete denial of my request for accommodation. Finally, I am aware that many Sailors have been allowed beards for morale-related reasons (such as the current no-shave chit in place for my ship), for medical reasons, and also for religious reasons—all without adverse impact to performing duties.

I thus submit this appeal requesting a similar accommodation from the Navy's grooming policy so that I may wear a beard consistent with my faith. I further ask that this waiver follow me throughout my career and be entered into my NSIPS profile under the religious-accommodation section.

## BACKGROUND

2. I am a devout Chassidic Jew and have practiced my religion both before and during my enlistment in the Navy.

Within this form of Orthodox Judaism, it is a religious requirement and an expression of obedience and fidelity to G-d for men not to cut the side and edges of their hair. Leviticus 19:27. The growth of facial hair also promotes physical and spiritual modesty and is a sign of spiritual maturity in my faith community. This practice is ancient, going back thousands of years. I sincerely believe that I am required by my faith to observe this practice.

I currently serve in the Navy as an Electrician's Mate Nuclear (EMN3). Specifically, I assist with maintaining electrical equipment within the reactor plant. I also stand watch on control stations and take intakes and logs. Like every EMN, I am trained to fight fires within the plants. While wearing a quarter-inch beard, I have undergone and passed routine gas-mask-seal-integrity tests. But in my entire service as an EMN3, I have never had to don a gas mask as part of my usual duties.

3. On 16 MAR 20, reference (d) was updated to provide for religious accommodations for facial hair. It was my understanding that the new instruction would permit accommodation of a religious beard for me. I thus submitted a request for waiver of policy on 8 SEP 20, seeking a religious accommodation "of growing a beard of a quarter inch in length or less." On 21 DEC 20, I received a response from the DCNO denying my request for a full religious accommodation. The DCNO stated that he denied my request due to "the Navy's compelling interest in mission accomplishment, including military readiness and safety." Specifically, the DCNO stated in paragraph 5(a) of his denial decision that "a beard reduces safe and effective wear and operation of protective equipment, to include gas masks, self-contained breathing apparatus face masks and respirators."

4. I am submitting this appeal of the DCNO's decision as I believe his decision is inconsistent with references (c) and (d); with reference (b), the Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb-1, *et seq.*; and with the First Amendment to the United States Constitution.

5. Given that my request is among the first to be decided under the terms of reference (d)'s updated policy and is subject to RFRA, I also respectfully ask that, in accordance with that reference, my appeal be handled with the advice of a judge

advocate and in consultation with the Department of Justice's Office of Legal Policy. *See* Federal Law Protections for Religious Liberty, 82 Fed. Reg. 49,668, 49,671 (Oct. 26, 2017) (instructing all agencies to consult "subject-matter experts who can answer questions about religious nondiscrimination rules" when considering religious accommodation, and that "any questions" about the guidance should be addressed to the Office of Legal Policy, particularly those concerning the application of RFRA).

## ANALYSIS

6. The Department of Defense recognizes the right of Service members to observe and practice their chosen faith, including by way of accommodation from standard procedures. Specifically, reference (c)—DoD's Instruction 1300.17 on Religious Liberty in the Military Services (updated 1 SEP 20) —provides that the military "will accommodate individual expressions of sincerely held [religious] beliefs . . . which do not have an adverse impact on military readiness, unit cohesion, good order and discipline, or health and safety." Reference (c), at 4. Moreover, in laying out such an accommodating approach, the instruction expressly incorporates norms of the Free Exercise Clause to the First Amendment and RFRA. *See Rigdon v. Perry*, 962 F. Supp. 150 (D.D.C. 1997) (observing that the requirements of the First Amendment and RFRA apply to military religious-accommodation decisions); *Singh v. McHugh*, 185 F. Supp. 3d 201 (D.D.C. 2016) (same). Accordingly, a Service member must be granted an accommodation from any military policy that would place a substantial burden on his or her religious exercise, unless the DoD Component can prove that (1) insisting on the policy without exception "is in furtherance of a compelling governmental interest" and (2) such insistence "is the least restrictive means of furthering that . . . interest." Reference (c) at 5.

The DCNO's refusal to allow my beard fails to satisfy the foregoing test for four reasons. First and most immediately, my duties are unlikely to require me to use the equipment the DCNO flagged as a safety concern, and in the event of an actual and unavoidable need to shave, I would do so. Second, even if I had to use such equipment, in most instances my beard would not prevent safe and effective use. In the extremely rare situation that it would, I would shave. Third, the Navy's ability to allow Sailors to grow beards for both morale and medical reasons not only undermines any across-the-board safety argument, it also implicates established law requiring that non-religious exceptions to a government rule be extended at least as far to faith-based requests. Finally, even if denying my request were otherwise warranted—and it is not—the Navy has not shown that alternatives are infeasible.

7. *First, my assignment makes it highly unlikely that I will need to use a face mask as protective equipment, and, were the threat level somehow to change to make mask usage an unavoidable necessity, I would comply.*

The update to the DoD Instructions clarifies that religious accommodations are to be issued "in accordance with RFRA." And under RFRA's compelling-interest

3

analysis, the government cannot prevail by showing such an interest in the abstract. Rather, it must show a compelling reason to apply "the challenged law 'to the person'—the particular claimant whose sincere exercise of religion is being substantially burdened." *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 419-20 (2006). As courts have thus observed, the military "cannot simply invoke general principles" to deny a Service member's religious accommodation. *Singh*, 185 F. Supp. 3d at 223. In other words, the Navy cannot deny my request generically; instead, it must evaluate that request in my particular assignment. Further, it also means the Navy must show it has a compelling interest in eliminating any "marginal" safety risk that arises from using personal protective equipment with a beard. *Holt v. Hobbs*, 574 U.S. 352, 363 (2015).

But the Navy cannot show such a particularized compelling interest when it comes to safety or mission accomplishment in my case because, in my duties as an EMN3, I do not perform work where it is common or likely that the use of face masks (including gas masks, self-contained breathing apparatus face masks and respirators) could be affected by a beard. In my entire service as an EMN3, I have never had to don a face mask as part of my usual duties, and during trainings where a face mask such as the EAB, EEBD, or SCBA mask was required, my quarter-inch beard did not interfere with a satisfactory seal.

I understand Sailors with duties similar to mine have in fact received religious-beard accommodations. On 15 JUL 20, for example, the Navy granted MC3 Leandros Katsareas, a practicing Muslim, a four-inch beard accommodation on sea duty while temporarily serving in the Auxiliary Security Force, because "the nature of [his] duties makes it highly unlikely that [he] will be required to don personal protective equipment."

To be sure, there may be times when a high probability of CBRN warfare could require all Sailors to be clean-shaven to wear a special Air Purifying Respirator (APR) mask with a fitted seal. But that would be exceedingly rare. And if DoD deemed the likelihood of my APR usage to be sufficiently high as to require all Sailors to be clean-shaven, I would comply and shave. After all, my faith further dictates that the preservation of life is of paramount importance in situations where there is a specific, concrete, or imminent threat to life or limb.

But I am on no such high-risk assignment at present. Rather, based on the Navy's classification of the threat level on my current assignment, the likelihood of CBRN warfare is low enough to permit waivers of the grooming policy in accordance with the law and DoD's pledge to "normally accommodate practices of a Service member based on sincerely held religious belief."

8. *Second, in the rare event that I may be required to use a mask, it is unlikely that a beard would interfere with my ability to wear such equipment, or I would shave.*

Even when it comes to masks, it is my understanding that the most common system for those in my station—the SCBA—in fact works with beards. Because the 3M/Scott SCBA mask and respirator system protects its wearer using positive air

4

pressure, it does not require an airtight seal around the face to be effective. The positive pressure, rather, forces any polluted air, such as smoke, outside of the mask. The oxygen tank continuously provides safe, clean air to the wearer, even without an airtight seal. I understand this very functionality is why the Navy does not assign fit-tested masks to individual Sailors but instead directs them to use whichever SCBA masks are available in the repair locker.

Indeed, I passed a gas-mask-seal-integrity test even while wearing a quarter-inch beard. And I did not undergo a full-chamber test because, as indicated by the first-class petty officer overseeing the seal-integrity test, the Damage Control department was not concerned about my ability to safely don a mask in the event of damage control.

And although the previously described APR system may be used in the event of CBRN warfare, that is insufficient reason to deny my request entirely, especially considering my present assignment and my willingness to shave should there be actual risk of CBRN warfare. *See, e.g.*, Army Directive 2018-19 ¶ 5(b)(1)-(2) (requiring accommodated soldiers to shave for actual "threat of exposure to toxic CBRN agents," but not for "training or tactical simulations designed to ensure that the Soldier is fully familiar with use of the protective mask"). And, as the current ship-wide no-shave chit permitted on my ship shows, it is possible to allow beards up until the point of an actual emergency that would require shaving.

Moreover, I have observed that Sailors who have been afforded morale and medical-beard exemptions have had no trouble using masks when training for firefighting or in other circumstances. This is powerful evidence that granting my accommodation would not pose a problem.

9. *Third, the Navy grants morale and medical exceptions to its grooming policy for beards, which demonstrates that it can safely accommodate a beard such as the one I request.*

Sailors have been granted waivers to wear quarter-inch beards for medical reasons while on sea duty. Commanders have even issued ship-wide no-shave chits to help improve morale at sea. My own ship has a ship-wide no-shave chit in effect until the end of deployment with clean shaves being enforced only every fourteen days. (I have not been required to comply with the clean-shave requirement because of my existing no-shave chit.) At a minimum, therefore, Sailors' abilities to perform tasks safely while wearing a beard confirms that an absolute beard prohibition is unjustified as a matter of safety or effectiveness, at least absent actual threat of CBRN warfare.

Furthermore, the Navy's accommodation of beards for medical or morale reasons creates a strong legal presumption that religious accommodations are workable and should be permitted. *See Fraternal Order of Police Newark Lodge No. 12 v. City of Newark*, 170 F.3d 359, 366 (3d Cir. 1999) (Alito, J.) ("We are at a loss to understand why religious exemptions threaten important … interests but medical exemptions do not."); *Singh*, 185 F. Supp. 3d at 225 ("[I]t is difficult to see how accommodating

5

plaintiff's religious exercise would do greater damage to the Army's compelling interests in uniformity, discipline, credibility, unit cohesion, and training than the tens of thousands of medical shaving profiles the Army has already granted."). The Navy has made no showing that its asymmetrical treatment of secular and religious requests on my ship is justified—and certainly no showing that could survive the strict scrutiny imposed under RFRA and DoD policy, which is the highest form of scrutiny in constitutional law. A rule cannot pass such scrutiny if it "leaves appreciable damage to that supposedly vital interest unprohibited." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 547 (1993).

Indeed, the Navy cannot claim a *new* interest in entirely banning beards for safety reasons without highly persuasive evidence. *Geller v. Sec'y of Def.*, 423 F. Supp. 16, 18 (D.D.C. 1976) (dismissing newly alleged governmental interest where Air Force chaplain had been "permitted to wear a beard without criticism, adverse action or ill effects for seven years"). Medical beards and commander discretion to issue no-shave chits have existed in the Navy for decades with no appreciable injury to Sailor well-being. *Mitchell Cty. v. Zimmerman*, 810 N.W.2d 1, 17 (Iowa 2012) ("[I]t is difficult to see that an outright ban on [a longstanding practice] is necessary to serve a compelling state interest."). Indeed, the DCNO's denial letter has already acknowledged that "the probability of a negative consequence from an ineffective seal is relatively low." The Navy permits, and sometimes requires, Sailors to engage in countless activities that may in rare situations lead to a "negative consequence." But the Navy cannot show that beards are so unique in this respect as to justify an outright ban. This is particularly true since decades of allowing beards with masks shows that the risk, if any, is negligible.

10. *Finally, the Navy has not explored workable alternatives to my request.*

The DoD's incorporation of RFRA, as expressed in references (c) and (d), requires that, even when a compelling interest might exist as a general matter, the outright denial of a given request for religious accommodation must include an evaluation that there are no feasible alternatives to such a denial. This "least-restrictive-means standard is exceptionally demanding" in that it requires the government to show "it lacks other means of achieving its desired goal." *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 728 (2014). This requires an evidence-based analysis that considers all available options. *See, e.g.*, *Singh*, 185 F. Supp. 3d at 231 n.23 (finding that the military failed to pursue good alternatives when it denied a Sikh the religious accommodation of a beard); *Singh v. Carter*, 168 F. Supp. 3d 216, 232 (D.D.C. 2016) (finding similarly).

My religious beard request could be accommodated in many ways without compromising safety or mission accomplishment. For example, as previously discussed, one alternative is to grant my accommodation subject only to actual, imminent threat of CBRN exposure.

Other branches of the U.S. military currently accommodate service members with religious beards. As of 2017, the U.S. Army now allows religious beards except when

6

there is actual risk of CBRN exposure. *See* Army Directives 2017-03; 2016-34. Even when the Army had a ban on religious beards, it conceded that "'there [we]re some protective masks that [we]re capable of providing protection to individuals who wear beards,'" even though they were "'not standard Army issue.'" *McHugh*, 185 F. Supp. 3d at 231 n.23. In some instances, it "created special masks for individuals" and in others "it obtained special masks from the United Kingdom." *Id*. The Air Force updated its policy in February 2020 to reflect its allowance of religious beards, and it has recently approved accommodations for Muslim, Eastern Orthodox, and Sikh service members. Many fire and police departments around the U.S. also accommodate religious beards, further indicating that less restrictive means are available. *See, e.g.*, *Potter v. District of Columbia*, 558 F.3d 542 (D.C. Cir. 2009) (upholding Muslim firefighters' challenge to no-beard policy); *Fraternal Order of Police*, 170 F.3d 359; *see also Holt*, 574 U.S. at 368-69 (existence of accommodations in similar contexts "suggests that the [government] could satisfy its … concerns through a means less restrictive than denying petitioner the exemption he seeks"). This is true even if the government has to incur some cost to adopt the accommodations used elsewhere. *See Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 730 (2014) (standard "may in some circumstances require the Government to expend additional funds to accommodate citizens' religious beliefs"). Thus, because the Navy has "far more restrictive" regulations than its sister services, its regulations cannot "be regarded as 'narrowly tailored.'" *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020).

Militaries around the world also accommodate service members with religious beards, including in the United Kingdom, Canada, Australia, New Zealand, India, Israel, and United Nations. Canada's current Minister of Defence, Harjit Sajjan, is a fully observant Sikh who previously served alongside U.S. forces in Afghanistan with his full beard. It is my understanding that, recently, the U.S. Army has consulted with the Indian army about other types of masks that could be used with beards even in situations where there is an actual risk of CBRN exposure. The Navy, of course, may avoid these alternatives simply by allowing Sailors with religious beards to continue as they have in the past with their beards in place.

The DCNO's denial of my request without consideration of these and other options violates RFRA and DoD guidelines.

## CONCLUSION

11. I request a religious accommodation that allows me to wear a quarter-inch beard in accordance with my sincere practice of Orthodox Judaism.

12. I further request a permanent approval of this accommodation that follows me throughout my career, subject to situations of imminent safety concerns that demand a temporary suspension. Having to needlessly repeat my request at new commands would substantially burden my faith, subject me to a higher probability of discrimination, and deprive me of the stability and clarity afforded to other

7

Sailors—in addition to creating repetitive work for the CNO and other Naval offices. A permanent accommodation would avoid these problems.

13. Finally, I request that this accommodation be entered into my NSIPS profile under the religious-accommodation section.

14. I am proud to serve in the United States Navy, and I wish to do so with my religious identity intact—in accordance with both the letter and spirit of the Navy's regulations and policies, DoD instructions and directives, the Religious Freedom Restoration Act, and the First Amendment.

I am hopeful that your review of both my request and the DoD's policy update in SEP 20, reference (c), will lead to a religious accommodation for me to maintain my beard moving forward, so that I can continue to serve my country without having to compromise my religious beliefs.

Thank you for your consideration.

                        DiLiscia, E.
                        EMN3 USN

                        Eric S. Baxter
                        Daniel H. Blomberg
                        Diana M. Verm
                        William Seidleck
                        THE BECKET FUND FOR
                        RELIGIOUS LIBERTY
                        1919 Pennsylvania Ave., NW
                        Washington, D.C. 20006
                        202-955-0095
                        *ebaxter@becketlaw.org*



**DEPARTMENT OF THE NAVY**
OFFICE OF THE CHIEF OF NAVAL OPERATIONS
2000 NAVY PENTAGON
WASHINGTON DC 20350-2000

1730
Ser N1/114239
21 Dec 20

From: Deputy Chief of Naval Operations (Manpower, Personnel, Training and Education) (N1)
To:   EMN3 Edmund D. DiLiscia, USN
Via:  Commanding Officer, USS THEODORE ROOSEVELT (CVN 71)

Subj: REQUEST FOR RELIGIOUS ACCOMMODATION THROUGH WAIVER OF GROOMING STANDARDS FOR FACIAL HAIR

Ref: (a) NAVPERS 15565I
     (b) DoD Instruction 1300.17 of 1 Sep 20
     (c) SECNAVINST 1730.8B
     (d) ASN (M&RA) memo of 6 Jun 13
     (e) BUPERSINST 1730.11A
     (f) 42 U.S.C. §2000bb-1
     (g) United States Attorney General memo of 6 Oct 17
     (h) Your ltr of 8 Sep 20
     (i) COMNAVSAFECEN NORFOLK VA 261941Z Nov 18 (ALSAFE 18/008)

1. In line with references (a) through (i), your request to waive the requirements in article 2201.2 of reference (a) for a beard is disapproved. I am disapproving your wear of a beard due to the Navy's compelling Government interest in mission accomplishment including safety.

2. In line with references (b) through (e), I am designated as the approval authority for requests for religious accommodation.

3. Reference (f), the Religious Freedom Restoration Act (RFRA), states that the Government may substantially burden an individual's exercise of religion only if it demonstrates that application of the burden to the person is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that interest. Reference (b) incorporates the RFRA and notes that the Government has a compelling interest in mission accomplishment, to include military readiness, unit cohesion, good order and discipline, health and safety, on both individual and unit levels. Additionally, unless it will have an adverse impact on mission accomplishment, including military readiness, unit cohesion or good order and discipline, the Navy will accommodate individual expressions of sincerely held beliefs of Sailors. Reference (g) emphasizes that only those interests of the highest order can overbalance legitimate claims to the free exercise of religion.

4. All requests for accommodation of religious practices are assessed on a case-by-case basis. In line with references (b) and (c), determination of a request for religious accommodation requires consideration of the following factors:

Subj:   REQUEST FOR RELIGIOUS ACCOMMODATION THROUGH WAIVER OF GROOMING STANDARDS FOR FACIAL HAIR

    a. Impact on military readiness, unit cohesion, good order and discipline, health and safety

    b. Religious importance of the request

    c. Cumulative impact of repeatedly granting similar requests

    d. Whether there is alternative means available to meet the requested accommodation

    e. How other such requests have been treated

5. In making this decision, I reviewed reference (h), including the endorsements from your chain of command and the local chaplain, and the guidance of Commander, Naval Safety Center in reference (i).

    a. With regard to your request to wear a beard onboard a naval vessel in port and underway, reference (i) reported that a beard reduces safe and effective wear and operation of protective equipment, to include gas masks, self-contained breathing apparatus face masks and respirators. Damage control (DC), both in port and underway, is the responsibility of each crew member. Your participation in shipboard DC efforts is routine and foreseeable regardless of whether the ship is in port or at sea. Beards present a hazard to these efforts, as outlined above, and this hazard can extend to other personnel should they be required to come to your aid if you are injured during DC activities. Though the probability of a negative consequence from an ineffective seal is relatively low, the severity of that consequence may be high – to include injury. From an operational risk management perspective, this risk is untenable.

    b. I find that granting your request would present an unacceptable risk to the Navy's compelling interest in mission accomplishment, including military readiness and safety on both the individual and unit levels. I further find that there are no less restrictive means available to accommodate your request.

6. The Navy is a specialized community governed by a discipline separate from that of the rest of society. While every Sailor is welcome to express a religion of choice or none at all, our greater mission sometimes requires reasonable restrictions. Deviations from Navy standards must be considered against how those deviations impact the Navy mission as a whole. If you subsequently experience a change in physical, operational or geographical environment you may again request for religious accommodation.

JOHN B. NOWELL, JR

Copy to:
OPNAV (N131, N0975)

2



**DEPARTMENT OF THE NAVY**
USS THEODORE ROOSEVELT (CVN 71)
UNIT 100250 BOX 1
FPO AP 96632

1730
Ser CO/435
12 Nov 20

From: Commanding Officer, USS THEODORE ROOSEVLET (CVN 71)
To:   Chief of Naval Operations (N1)

Subj: APPROVAL RECOMMENDATION ICO EMN3 EDMUND DILISCIA RELIGIOUS ACCOMMODATION

Ref: (a) DoD Instruction 1300.17
     (b) SECNAVINST 1730.8B CH1
     (c) BUPERSINST 1730.11A

Encl: (1) Sailor request of 8 SEP 20
      (2) Chaplain Memorandum and Interview Checklist

1. Per references (a) through (c), I am forwarding this request recommending approval in full during the following environments: Arduous Sea Duty.

2. My point of contact (POC) for this matter is CDR Roland O'Dell, who can be reached at Ronald.Odell@cvn71.navy.mil, (619) 545-2378 (inport), or (619) 545-0241 (at-sea).

E. J. ANDUZE

Copy to:
OPNAV N131
EMN3 DiLiscia

1730
25 Sep 20

From:    LT Mark C. Bristol, CHC, USN
To:       Commanding Officer, USS THEODORE ROOSEVELT (CVN 71)

Subj:    REQUEST FOR AN EXCEPTION TO POLICY TO ACCOMMODATE A PRACTICE BASED ON RELIGIOUS BELIEF ICO ENM3 DI LISCIA, EDMUND D.

Ref:     (a) SECNAVINST 1730.8B change 1
        (b) SECNAVINST 1730.9
        (c) NAVPERS 15665I

Encl:   (1) Letter of endorsement from Religious Leader
        (2) Religious Accommodation Interview Checklist
        (3) Previous Approval of Religious Accommodation in 2018

1. EMN3 Edmund D. DiLiscia has submitted a request for waiver of policy to accommodate a religious practice per reference (a). Per BUPERSINST 1730.11A, I interviewed the member on 24 SEP 2020. I explained that this interview would not be a confidential communication as defined by reference (b) and informed the member that referral for confidential chaplain support was available.

2. ENM3 DiLicsia is requesting a wavier to the policy in respect to the facial grooming standards according to reference (c). ENM3 DiLicsia was previously approved for a waiver to grow a beard per enclosure (3).

3. ENM3 DiLicsia religion is Judaism per his NAVPERS 1070/602 (Page 2). The practice of not cutting the side and edges of a man's hair is a form of obedience to G-d's Law in Judaism.

4. An alternative would be to use an electric razor vice a razor. This is not considered to be in full adherence to Jewish religious law, which presents a heavy burden on requestor's conscience.

5. I have no reason to doubt the sincerity of ENM3 DiLicsia's request. His beliefs are deeply held as stated in his endorsement letter in enclosure (1).

6. Please let me know if you have any questions or concerns. I can be reached at (619) 545-2378 (in port), (619) 545-0241 (at sea), or Mark.Bristol@cvn71.navy.mil.

M. C. BRISTOL

Copy to:
EMN3 Edmund D. Di Liscia

B"H



# CHABAD
## OF PASADENA

**Rabbi Chaim Hanoka**
DIRECTOR

**Nelson Silver**
PRESIDENT

**Chani Hanoka**
ASSOCIATE DIRECTOR

**Rabbi Yisroel Pinson**
ASSOCIATE RABBI

**Chanie Pinson**
YOUTH DIRECTOR

November 19, 2018

To whom it may concern,

This letter is to emphasize the importance for Religious/ Chassidic men to keep their beards.

Jewish mysticism explains how the beard is a conduit to G-ds mercies and blessings, including but not limited to, one's spiritual, emotional health and one's material wellbeing.

For thousands of years this mandate has been upheld, at times under very trying conditions.

Please seriously consider the above concerning Fireman Di-Liscia, whom I have the pleasure of knowing for a number of years.

He has displayed an unwavering and sincere commitment to Judaism, and observing its commandments and traditions to the best of his abilities.

With Blessings,

*[signature]*

Rabbi Chaim Hanoka
Executive Director

1090 E. WALNUT ST. PASADENA, CALIFORNIA 91106
PHONE 626.564.8820  FAX 626.564.1040  E-MAIL: INFO@CHABADPASADENA.COM

Enclosure (1)

## Religious Accommodation Interview Checklist

| Applicant: | DiLiscia, Edmund D. | Date of Interview(s): | 24 SEP 2020 |
|---|---|---|---|
| Rate/Rank: | E-4/EMN3 | Chaplain Interviewer: | LT BRISTOL, MARK |
| Phone: | 619-545-2114 | Phone: | 619-545-0241 |
| Email: | edmunddiliscia@gmail.com | Email: | MARK.BRISTOL@CVN71.NAVY.MIL |
| Command: | USS THEODORE ROOSEVELT (CVN-71) | Chaplain's Command: | USS THEODORE ROOSEVELT |

**Interview Preliminaries:**

| Yes | No | N/A | |
|---|---|---|---|
| ✓ | | | Review DoDI 1300.17 on religious accommodation. |
| ✓ | | | Notify Applicant that the interview is not confidential or privileged, and will be used in an official report to advise the command on the Applicant's request. |
| ✓ | | | Obtain Applicant's signed waiver (see attached). |
| ✓ | | | Explain to the Applicant that confidential support can be obtained through either 1) another chaplain or 2) a separate counseling session. |
| ✓ | | | Has the Applicant been granted a policy waiver for this practice previously? |
| ✓ | | | Does the Applicant's Page 2 (NAVPERS 1070/602) reflect the belief cited in the application? |

**The application is for a waiver from the following:**

| Yes | No | N/A | |
|---|---|---|---|
| | ✓ | | Uniform standards |
| ✓ | | | Grooming standards |
| | ✓ | | Immunization requirements |
| | ✓ | | DNA sampling |
| | | | Other |

**Interview Results:**

| Yes | No | N/A | |
|---|---|---|---|
| ✓ | | | Applicant communicated his/her beliefs (conscience, moral principles, or religious beliefs) in an honest and sincere manner. |
| ✓ | | | Applicant was credible (consistently keeps tenets, practices, etc.). |
| ✓ | | | Applicant's demeanor and pattern of conduct are consistent with the request. |
| ✓ | | | Applicant participates in activities associated with the belief(s). |
| ✓ | | | Persons supporting the claim are credible. |
| ✓ | | | Applicant's request is supported by letter(s) of verification or endorsement from an organization espousing the beliefs which are the basis for the claim. |
| ✓ | | | Alternate means of accommodating the practice were explored in the interview. |

**Process Checklist:**

| Yes | No | N/A | |
|---|---|---|---|
| ✓ | | | Chaplain has prepared a memorandum memorializing the interview, following the guidance, specifically identifying the religious importance of the accommodation to the Applicant. |
| ✓ | | | Chaplain reviewed memorandum with Applicant and provided a copy. |
| ✓ | | | Chaplain submitted the memorandum and this document to the commanding officer via chain of command. |
| ✓ | | | Chaplain referred Applicant to command to process request. |

08 SEP 2020

From: EMN3 Edmund D. Di Liscia, USN
To:   Commanding Officer, USS THEODORE ROOSEVELT CVN-71

Subj: REQUEST FOR RELIGIOUS ACCOMMODATION

Ref:  (a) DoD Instruction 1300.17 of 10 February 2009
      (b) SECNAVINST 1730.8
      (c) BUPERSINST 1730.11
      (d) NAVPERS 15665I

Encl: (1) Photograph
      (2) Optional enclosures (e.g., religious leader endorsement or research in applicable area)

1. Pursuant to references (a) through (c), I hereby request religious accommodation from Navy policy reference (d) to not shave for the purpose of growing a beard of a quarter inch in length or less due to my religious belief that Judaism was commanded by G-d to not shave, and that facial hair is required for physical and spiritual modesty as well as maturity in a Jewish males religious practices.

2. My request is based on my religious belief in Orthodox Judaism that my faith group was commanded to not shave by our G-d, and the cultural and religious ritual within Jewish society that a man's face be covered in modesty by a beard for spiritual and physical reasons, and reference enclosure (1) or (2) as needed/desired.

3. I certify that I understand that any approved or partially approved waiver may not be appropriate for future duty to which I may be assigned, including operational, non-operational or training command(s), and may be suspended or withdrawn in accordance with reference (c).

*[signature]*

ENC (1)



August 2018 prior to arrival at RTC Great Lakes. With Rabbi Hanoka.



**DEPARTMENT OF THE NAVY**
NAVAL NUCLEAR POWER TRAINING COMMAND
101 NNPTC CIRCLE
GOOSE CREEK, SC 29445-6324

1730<br>
Ser NNPTC/666<br>
5 Dec 18

From: Commanding Officer, Naval Nuclear Power Training Command
To:   FN Edmund D. Di Liscia, USN

Subj: APPROVAL OF RELIGIOUS ACCOMMODATION ICO FN EDMUND D. DI LISCIA

Encl: (3) Sailor request of 20 Nov 18
      (4) Chaplain Memorandum and interview checklist
      (5) Warning advisement about statements made during a religious accommodation interview

1. Per references (a) through (d), I am approving your religious accommodation request.

2. Per reference (c), your beard must be kept ¼ inch or less and will not interfere/impair with any portion of your mission at NNPTC.

3. My point of contact is LT Jason Deets who can be reached at Jason.deets@navy.mil or (843) 794-8180.

A. G. PETERSON III

Copy to:
OPNAV N131

"For Official Use Only - Privacy Sensitive - Any misuse or unauthorized disclosure may result in both civil and/or criminal penalties."