Exhibit F



# DEPARTMENT OF THE NAVY
USS GEORGE WASHINGTON (CVN 73)
FPO AE 09550

1730
Ser LEG/146
25 Mar 21

FIRST ENDORSEMENT on MC3 Leandros Katsareas, USN, ltr of 11 Mar 21

From:  Commanding Officer, USS GEORGE WASHINGTON (CVN 73)
To:      Deputy Chief of Naval Operations (Manpower, Personnel, Training and Education) (N1)

Subj:  COMMENT ON PROPOSED RECISSION OF RELIGIOUS ACCOMMODATION

Encl:   (3) USS GEORGE WASHINGTON (CVN 73) ltr of 26 Feb 21

1.  Forwarded for action in accordance with reference (h).

2.  MC3 Katsareas was notified of the proposal to rescind his religious accommodation by letter
dated 26 February 2021, and provided input within the requisite timeframe.

3.  My point of contact is LCDR Denise L. Romeo, Command Judge Advocate, at
denise.romeo@cvn73.navy.mil or 757-534-0293.

K. A. STRONG

Copy to:
MC3 Katsareas

6

11 MAR 21

From: MC3 Leandros Katsareas, USN
To:     Deputy Chief of Naval Operations (Manpower, Personnel, Training and Education (N1))
Via:   Commanding Officer, USS George Washington (CVN 73)

Subj: COMMENT ON PROPOSED RECISSION OF RELIGIOUS ACCOMMODATION

Ref:   (a) 9 Oct 18 ltr granting partial accommodation
        (b) 06 Dec 19 request for full accommodation
        (c) 04 Apr 20 ltr denying full accommodation
        (d) 05 May 20 appeal from denial of full accommodation
        (e) DCNO ltr of 15 Jul 20 temporarily granting full accommodation
        (f) CO ltr of 26 Feb 21 proposing rescission of accommodation
        (g) Religious Freedom Restoration Act of 1993, 42 U.S.C. 2000bb, *et seq.*
        (h) DoDI 1300.17, 1 Sep 20
        (i) BUPERSINST 1730.11A

Encl: (1) My original religious accommodation request dated 6 DEC 19
        (2) My appeal of reference (a) dated 5 MAY 20


    1. My name is MC3 Leandros Katsareas. I am currently stationed aboard the USS George Washington where I am assigned to the Legal Department as a prospective Legalman conversion. I write to express my objection to the proposed recission of my existing religious accommodation.

    2. I am a practicing Muslim. One of Islam's ten basic *fitras* (cleanliness and grooming obligations) requires Muslim males who are genetically able to grow a substantial beard as a sign of their devotion to God. Since joining the Navy, I have sought a religious accommodation to maintain a beard in accordance with my Islamic faith.

    3. In 2018, I was granted a partial accommodation for an ungroomed, quarter-inch beard. (Reference (a).) This partial accommodation did not fulfill my religious obligations, leaving me in a constant state of sin, spiritual shame, and insecurity. Thus, on 6 Dec 19, I renewed my request for a full accommodation. (Reference (b).) That request was denied on 4 Apr 20, on the stated ground that "a beard reduces safe and effective wear and operation of protective equipment, to include gas masks, self-contained breathing apparatus face masks and respirators." (Reference (c).) I appealed the denial on 5 May 20. (Reference (d).) In the meantime, I transferred to serve in the Auxiliary Security Force (ASF). On 15 Jul 20, my appeal was granted on that ground: "the nature of [ASF] duties makes it highly unlikely that you will be required to don personal protective equipment." (Reference (e).)

    4. Pursuant to that accommodation, I am presently allowed to maintain a four-inch beard, although while I am in uniform, my beard must be groomed to a length of no more than two inches from the bottom of my chin. (Reference (e).)

Subj:  COMMENT ON PROPOSED RECISSION OF RELIGIOUS ACCOMMODATION
BY MC3 LEANDROS KATSAREAS, USN

5.  It is my understanding that my commanding officer is now requesting that the
accommodation be rescinded because, having transferred out of the ASF to the Legal Department,
I have been assigned a duty section which "*may* require [me] to don personal protective equipment
in the performance of those duties." (Reference (f).)

6.  A recission of my accommodation on this ground would be unlawful.

7.  An existing accommodation may be repealed only for a compelling governmental interest
that cannot be satisfied by any less restrictive means. (Reference (g); Reference (h) at 1.2(e) and
3.2(g).) Here, the Navy cannot show it has a compelling interest in rescinding my accommodation.
And even if it could, it cannot show that forcing me to shave is the least restrictive means of
meeting its alleged interests.

8.  *No compelling interest.* The compelling interest standard cannot be satisfied by citing a
"broadly formulated interest[]" that seems compelling at a high level of generality. *Gonzales v. O
Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 431 (2006). A "more focused"
inquiry is required: the Navy must show it has a compelling interest in the marginal benefit that
would be attained from applying 'the challenged law 'to the person'—the particular claimant
whose sincere exercise of religion is being substantially burdened." *Id.* at 430-31. In this instance,
that means the Navy must show it has a compelling interest in eliminating any "marginal" safety
risk that arises from using personal protective equipment with a beard. *Holt v. Hobbs*, 574 U.S.
352, 363 (2015). That standard cannot be met here for at least two reasons.

9.  First, a rule is not compelling if it "leaves appreciable damage to that supposedly vital
interest unprohibited." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520,
547 (1993). So it is here. At any given time, there are thousands of Sailors assigned to duty sections
who have beards for medical reasons. And commanders frequently award no-shave chits to boost
morale, especially during extended sea duty. I know of at least one ship where the entire crew is
currently required to shave only once every two weeks. Religious beards have no greater impact
on personal protective equipment than these beards, and the Navy cannot claim to have a
compelling interest in banning the former while permitting the latter. *Fraternal Order of Police
Newark Lodge No. 12 v. City of Newark*, 170 F.3d 359, 367 (3d Cir. 1999) (Alito, J.) ("We are at
a loss to understand why religious exemptions threaten important ... interests but medical
exemptions do not."); *Singh v. McHugh*, 185 F. Supp. 3d 201, 225 (D.D.C. 2016) ("[I]t is difficult
to see how accommodating plaintiff's religious exercise would do greater damage to the Army's
compelling interests ... than the tens of thousands of medical shaving profiles the Army has
already granted.").

10.  Second, the Navy cannot suddenly claim a *new* interest in entirely banning beards for safety
reasons without highly persuasive evidence. *Geller v. Sec'y of Def.*, 423 F. Supp. 16, 18 (D.D.C.
1976) (dismissing newly alleged governmental interest where Air Force chaplain had been
"permitted to wear a beard without criticism, adverse action or ill effects for seven years"). Medical
beards and commander discretion to issue no-shave chits have existed in the Navy for decades
with no appreciable injury to Sailor well-being. *Mitchell Cnty. v. Zimmerman*, 810 N.W.2d 1, 17
(Iowa 2012) ("[I]t is difficult to see that an outright ban on [a longstanding practice] is necessary
to serve a compelling state interest."). Indeed, the DCNO has already acknowledged—presumably
based on decades of experience—that "the probability of a negative consequence from an

2

Subj:  COMMENT ON PROPOSED RECISSION OF RELIGIOUS ACCOMMODATION
BY MC3 LEANDROS KATSAREAS, USN

ineffective seal is relatively low." (Reference (c).) And even if the severity of a negative consequence "may be high—to include injury," (Reference (c)), "the government does not have a compelling interest in each marginal percentage point by which its goals are advanced." *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 803 n.9 (2011). Sailors engage in countless activities that may in rare situations lead to "injury" yet are still permitted. The Navy cannot show that beards are so unique in this respect as to justify an outright ban. Decades of allowing beards with masks shows that the risk, if any, is negligible.

11. My personal experience confirms that the Navy lacks a compelling interest in requiring Sailors to be clean-shaven when using protective equipment. When I was deployed aboard the USS Nitze in 2016, I had a MWR no-shave chit that allowed me to grow a beard as long as I wanted. When we received incoming anti-ship missile fire from Houthi batteries, I was on the ship's fire-party in my repair locker, preparing to enter the depths of the ship if we were struck with a missile. I did not face any issues whatsoever in wearing a Scott SCBA mask, tank, and regulators with my beard.

12. Similarly, I did not face any issues during any other General Quarters drill evolution when using the Scott SCBA mask with my beard. In addition, we were not required to shave our beards after the initial combat action while we were still in the area where we were attacked, indicating that beards imposed no significant safety risks. Even when I attended advanced shipboard firefighting school on 21 Aug 20, where more advanced trainers with fire and smoke are used, I was not required to shave off the beard that I had that was approximately one inch long from the bottom of my chin, and I was able to utilize my SCBA mask during those evolutions without any problems.

13. The safe and effective use of the Scott SCBA mask, regardless of a perfect seal, is further evidenced by the fact that Sailors are not fit-tested for Scott SCBA masks or issued individual masks known to form a perfect seal with their faces. Instead, Sailors use whichever SCBA masks are in the repair locker and are available at that time. This is in part because an SCBA mask uses positive air pressure to provide a safe environment for its wearer. Positive air pressure forces any polluted air—including smoke—outside of the mask. This process significantly reduces, if not eliminates, any risk that the wearer would be exposed to polluted air, regardless of whether a perfect seal with the face is formed. Firefighters also use SCBA masks in life-threatening situations, including for more than a decade in the District of Columbia after the D.C. Circuit upheld evidence that—because of their positive pressure feature—"SCBAs can be worn safely by bearded firefighters in hazardous environments." *Potter v. District of Columbia*, 558 F.3d 542, 549 (D.C. Cir. 2009) (upholding Muslim firefighters' challenge to no-beard policy). Although that ruling turned, in part, on the fire department's failure to challenge the evidence of safety, the department has now for more than a decade conducted what one judge called "a semi-natural experiment, in which the District of Columbia [has fought] calamities with some of its firefighters bearded, while other firefighting entities" have adhered to a clean-shave requirement. *Id.* at 554 (Williams, J., concurring). In all those years, despite an open invitation, the department has never returned with evidence that "the experiment launched" by the court's order ended by "having falsified the plaintiffs' theory." *See id.*

14. *Not the least restrictive means.* Even if the Navy could show a compelling interest in reducing any marginal safety risk introduced by beards, forced shaving is not the least restrictive

3

Subj:  COMMENT ON PROPOSED RECISSION OF RELIGIOUS ACCOMMODATION
BY MC3 LEANDROS KATSAREAS, USN

means of resolving this concern. The "least-restrictive-means standard is exceptionally demanding,'" even in settings such as prisons or the military where government is traditionally given significant deference. *Holt*, 574 U.S. at 364. The government always bears the burden not just to "explain why it denied the exemption," but also to "prove that denying the exemption is the least restrictive means of furthering a compelling governmental interest." *Id.*

15. Here, less restrictive alternatives are available. Other branches of the U.S. military currently accommodate service members with religious beards. As of 2017, the U.S. Army now allows religious beards except when there is actual risk of CBRN exposure. *See* Army Directives 2017-03; 2016-34. Even when the Army had a ban on religious beards, it conceded that "'there [we]re some protective masks that [we]re capable of providing protection to individuals who wear beards,'" even though they were "'not standard Army issue.'" *McHugh*, 185 F. Supp. 3d at 231 n.23. In some instances, it "created special masks for individuals" and in others "it obtained special masks from the United Kingdom." *Id.* The Air Force updated its policy in February 2020 to reflect its allowance of religious beards, and it has recently approved accommodations for Muslim, Eastern Orthodox, and Sikh service members. Many fire and police departments around the U.S. also accommodate religious beards, further indicating that less restrictive means are available. *See, e.g.*, *Fraternal Order of Police*, 170 F.3d 359; *Potter*, 558 F.3d 542; *see also Holt*, 574 U.S. at 368-69 (existence of accommodations in similar contexts "suggests that the [government] could satisfy its ... concerns through a means less restrictive than denying petitioner the exemption he seeks"). This is true even if the government has to incur some cost to adopt the accommodations that are used elsewhere. *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 730 (2014) (standard "may in some circumstances require the Government to expend additional funds to accommodate citizens' religious beliefs"). Thus, because the Navy has "far more restrictive" regulations than its sister services, its regulations cannot "be regarded as 'narrowly tailored.'" *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020).

16. Militaries around the world also accommodate service members with religious beards, including in the United Kingdom, Canada, Australia, New Zealand, India, Israel, and United Nations. Canada's current Minister of Defence, Harjit Sajjan, is a fully observant Sikh who previously served alongside U.S. forces in Afghanistan with his full beard. Recently, the U.S. Army has consulted with the Indian army about other types of masks that could be used with beards even in situations where there is an actual risk of CBRN exposure. The Navy, of course, may avoid these alternatives simply by allowing Sailors with religious beards to continue as they have in the past with their beards in place.

17. Because the Navy cannot demonstrate that there is a significant danger in allowing beards with personal protective equipment—as it has for decades—and because it cannot show that forced shaves are the only way to address that danger, even if it existed, I respectfully request that the proposal to rescind my accommodation be withdrawn.

Katsareas, L.
MC3 USN

4

Subj:  COMMENT ON PROPOSED RECISSION OF RELIGIOUS ACCOMMODATION
       BY MC3 LEANDROS KATSAREAS, USN

Eric S. Baxter
Daniel H. Blomberg
Diana M. Verm
THE BECKET FUND FOR RELIGIOUS LIBERTY
1919 Pennsylvania Ave. NW, Ste. 400
Washington D.C. 20006
202-955-0095
*ebaxter@becketlaw.org*

5

06 Dec 19

From:  MC3 Leandros Katsareas, USN
To:    Chief of Naval Personnel
Via:   Commanding Officer, USS George Washington (CVN 73)

Subj:  REQUEST FOR RELIGIOUS ACCOMODATION BY MC3 LEANDROS
       KATSAREAS, USN

Ref:   (a) SECNAVINST 1730.8B
       (b) DoD INSTRUCTION 1300.17 Incorporating change 1 effective Jan 22, 2014
       (c) BUPERSINST 1730.11
       (d) Army Directive 2017-03 (Policy for Brigade-Level Approval of Certain Requests for
       Religious Accommodation)

Encl:  (1) DoD INSTRUCTION 1300.17 Incorporating change 1 effective Jan 22, 2014
       (2) BUPERSINST 1730.11
       (3) Army Directive 2017-03 (Policy for Brigade-Level Approval of Certain Requests for
       Religious Accommodation)
       (4) Theological Evidence of my sincerely held religious beliefs
       (5) Previous attempts to obtain this waiver
       (6) Potential objections to my request and responses
       (7) DD Form 368 Request for Conditional Release

1.  I consider myself both privileged and honored to have the opportunity to serve in the Navy. I
immigrated to this country after falling in love with the US Constitution and with the intention of
devoting my life to supporting and defending it.

2.  I respectfully request a religious accommodation by way of a waiver of Navy grooming
standards to grow a beard within the following guidelines for religious purposes as per my
sincerely held religious beliefs and in accordance with DOD Instruction 1300.17 (enclosure 1):

    a.  A beard fist length (four inches) in length from the bottom of the chin.

    b.  A beard with edges that are groomed so as to be neat and clean, per the requirements of
my sincerely held religious beliefs.

    c.  A mustache that is neat and blends well into the beard.

3.  I respectfully request that this be expeditiously processed to be approved at the CNP level
(due to the six improperly handled attempts I have made since 2015 to have this waiver properly
approved).

Subj:   REQUEST FOR RELIGIOUS ACCOMODATION BY MC3 LEANDROS
        KATSAREAS, USN

4. I respectfully request that the above apply to any operational, non-operational, or training environment command that I am stationed, except in situations when there is a probable threat of CBRN attack (MOPP Level 2). At these times, I will shorten my beard to be as short as necessary to obtain a seal on a gas mask.

5. I respectfully request to have the permanent approval of this waiver so that it follows me throughout my career as having to make this request over and over again at each new command I move to as doing so subjects me to a higher chance of discrimination by people who don't want an openly practicing Muslim in 'their Navy' and also is tantamount to discrimination by bureaucratic fiat as it requires me to go through an undue burden with the process of subjecting myself to an excessive amount of paperwork and takes several months to obtain approval and puts me in a situation of limbo. To elaborate on this further, I arrived at this command in April of 2019 and what you are reading is my first request to reach you since then. The formatting and other requirements make it very difficult for Sailors who have not been properly trained in Navy correspondence to obtain, especially with the work-loads that we have as Sailors.

6. I respectfully request a Common Access Card sized card with this waiver approval clearly stated on it so that I don't require to fold and carry a piece of paper that can easily get lost.

7. I respectfully request that this waiver is entered into my NSIPS profile under the religious accommodation section.

8. My request is based on my sincerely held religious belief that all Muslim males genetically able to do so are required to grow a substantial beard as a sign of their devotion to God and further theological evidence for this can be found in enclosure 4. As a Muslim man, my beard is a defining feature of my masculinity and to be without a beard is both humiliating and emasculating beyond description. Furthermore, removing one's beard is considered a sinful form of self-mutilation and unnatural.

9. I have made several attempts to obtain this waiver dating back to 2015 when I was going through the recruiting process. To show you how difficult it is for a Sailor to get this done I have included an explanation of all of my attempts in Enclosure 5.

10. I understand that there may be objections to my request. I have addressed these objections in Enclosure 6.

11. The request that I am making meets the minimum requirements of my sincerely held religious beliefs. I enlisted in the Navy in good faith, after DoD Instruction 1300.17 was released with the reasonable expectation that I would be able to both serve my country and fulfill the requirements of my sincerely held religious beliefs without being forced to choose one or the other. This is my seventh attempt since 2015 to obtain such a waiver and I believe that I have acted in good faith and with immense patience on this matter since then.

Subj:   REQUEST FOR RELIGIOUS ACCOMODATION BY MC3 LEANDROS
        KATSAREAS, USN

12. Should the CNP refuse to approve this request in its entirety, I respectfully request that the
Navy approves it temporarily and facilitates, at every level, my inter-service transfer to the
Army Reserves, where the requirements of my religious faith can be met in its entirety in
accordance with Army Directive 2017-03 (Policy for Brigade-Level Approval of Certain
Requests for Religious Accommodation) (enclosure 6) and where I can continue serving this
country honorably as an example to my future children, to my community, and to posterity
without having to forego my religious obligations and sincerely held religious beliefs.

In this case I respectfully request the included DD Form 368 (enclosure 7) be signed and
approved and be made valid for at least one year for the inter-service transfer process to be
completed.

This facilitation would also require the Navy to assist me in obtaining the necessary waivers to
ensure that any service-related injuries or medical conditions that I have accumulated during
my time in the Navy will not prevent me from being able to continue to serve in the Army and
that I am allowed to retain whatever paygrade I may have achieved at the time of my transfer,
even if I'm not being paid for it yet.

Katsareas, L.
MC3   USN

5 MAY 20

From:   MC3 Leandros Katsareas, USN
To:     Chief of Naval Operations
Via:    Commanding Officer, USS George Washington (CVN 73)

Subj:   APPEAL OF DCNO'S DENIAL OF RELIGIOUS ACCOMMODATION REQUEST
        BY MC3 LEANDROS KATSAREAS, USN

Ref:    (a) DCNO denial ltr of 4 APR 20
        (b) DoD INSTRUCTION 1300.17 Incorporating Change 1, Effective 22 JAN 2014
        (c) BUPERSINST 1730.11A

Encl:   (1) My original religious accommodation request dated 6 DEC 19


1. I converted to Islam in 2001 at the age of sixteen and have faithfully observed its tenets ever
since. Even though I was born and raised in Australia, after seeing the atrocities carried out on
9/11, I vowed to fight against terrorists and their ideology. In 2006 I was living in New Zealand
and was invited to attend an Officer Selection Board to commission as an officer in the New
Zealand Army. I did not proceed, as I could not bring myself to swear an inviolable oath to the
Queen of England. While studying a course of Arabic at Qatar University, classmates from the
U.S. who recognized my passion for liberty encouraged me to study the Declaration of
Independence, the Founding Fathers, and the Constitution. After thoroughly studying the
principles behind the founding of the United States, I vowed that one day I would immigrate,
become a U.S. citizen, and spend my life honorably serving the United States.

I arrived in the United States in 2012 and spent 2013 through 2016 working with the FBI to
assist in identifying terrorist threats against Americans and American interests both at home and
abroad. Within one day of obtaining my Permanent Residence in 2014, I filled out an application
to join the Navy and was honored to swear an oath to support and defend the Constitution of the
United States. Soon after becoming a naturalized citizen at RTC in 2016, I renounced my
Australian citizenship as I considered it dishonorable to keep the benefits that come with
citizenship when I was not willing to fight for that country's system of government.

My service in the Navy has included a 2016 deployment to 5th Fleet aboard USS Nitze (DDG
94) as a PACT Seaman, where I often volunteered my Arabic skills to stand watches on the
bridge, especially during our many transits through the straits of Bab el-Mandeb and Hormuz.
When Houthis in Yemen fired upon us with guided anti-ship missiles, I responded to the General
Quarters as a member of my repair locker's fire party. Later, in 2019, I graduated from the
Defense Information School's Basic Mass Communication Specialist Course, and I currently
serve aboard the USS George Washington (CVN 73).

Subj:  APPEAL OF DCNO'S DENIAL OF RELIGIOUS ACCOMMODATION REQUEST
BY MC3 LEANDROS KATSAREAS, USN

2. Since joining the Navy, I have sought a religious accommodation to maintain a beard in accordance by my Islamic faith, which requires—as one of the ten basic *fitras* (cleanliness and grooming obligations) for Muslims—that all Muslim males who are genetically able to grow a substantial beard do so as a sign of their devotion to God. Although I currently have a 2018 accommodation from the CNP for an ungroomed ¼ inch beard, I consider it sinful and spiritually degrading not to maintain a beard that complies with my religious obligations. Thus, on 06 DEC 2019, I submitted a request for a religious accommodation in accordance with reference (b) that would allow me to have a beard consistent with my sincerely held religious beliefs, meaning:

    a.  a fist length beard from the bottom of the chin, which can be rolled and tied to achieve a length of two inches per reference (c);

    b.  a beard with edges that are groomed so as to be neat and clean, per the requirements of my sincerely held religious beliefs; and

    c.  a mustache that is neat and blends well into the beard.

3. On 16 MAR 20, reference (c) was updated to provide for religious accommodations for facial hair. It was my understanding that the new instruction would allow for my requested accommodation. I was very grateful that the Navy was fully implementing the standards of reference (b) and that I would no longer be left to choose between my religious obligations and my patriotic duty to serve my country.

However, on 09 APR 20, contrary to my understanding of the updates to reference (c), I received the DCNO's letter denying my request for a full religious accommodation. I am submitting this appeal of the DCNO's decision as I believe his decision is inconsistent with references (b) and (c), with the Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb-1, *et seq.*, and with the First Amendment.

4. Given that I submitted my request prior to the 16 MAR 20 update to reference (c) and that the DCNO's decision was issued on 4 APR 20, I imagine that my request was among the first to be adjudicated under the terms of new policy in reference (c). I am therefore respectfully requesting confirmation that the review and adjudication of my request was conducted with the advice of a judge advocate in accordance with reference (c). Also, before a denial of this appeal, consultation should be undertaken with the Department of Justice's Office of Legal Policy. *See* Federal Law Protections for Religious Liberty, 82 Fed. Reg. 49,668, 49,671 (Oct. 26, 2017) (instructing all agencies to consult "subject-matter experts who can answer questions about religious nondiscrimination rules" when considering religious accommodation issues, and that "any questions" about the guidance should be addressed to the Office of Legal Policy).

5. The DCNO stated that he denied my request "due to the Navy's compelling Government interest in mission accomplishment at sea including safety." Specifically, the DCNO stated in paragraph 5(a) of his denial decision that "reference (c) reported that a beard reduces safe and effective wear and operation of protective equipment, to include gas masks, self-contained breathing apparatus face mask and respirators."

2

Subj:  APPEAL OF DCNO'S DENIAL OF RELIGIOUS ACCOMMODATION REQUEST
       BY MC3 LEANDROS KATSAREAS, USN

For the reasons stated below, I believe that the DCNO's decision is not the least restrictive means
of furthering the Navy's compelling government interest in mission accomplishment at sea
including safety.

6. <u>Use of Self-Contained Breathing Apparatus (SCBA) facemasks/respirators</u>:

The 3M/Scott SCBA mask and respirator used by the Navy does not require a perfect seal around
the face to be effective because it uses positive air pressure rather than a seal to provide a safe
environment for its wearer. Positive air pressure forces any polluted air—including smoke—
outside of the mask. This process ensures the wearer continues to breathe clean, tank-supplied
oxygen.

The safe and effective use of the Scott SCBA mask, regardless of a seal, is further evidenced by
the fact that Sailors are not fit-tested for Scott SCBA masks or issued individual masks known to
form a perfect seal with their faces. Instead, we use whichever SCBA masks are in the repair locker
and are available at that time.

When I was stationed aboard the USS Nitze upon its deployment in 2016, I had a MWR no-shave
chit that allowed me to grow a beard as long as I wanted, which was substantially longer than the
¼ inch of facial hair I am allowed now. When we received incoming anti-ship missile fire from
Houthi batteries, I was on the ship's fire-party in my repair locker, preparing to enter the depths of
the ship if we were struck with a missile. I did not face any issues whatsoever in wearing a Scott
SCBA mask, tank, and regulators with my beard.

Similarly, I did not face any issues during any other General Quarters drill evolution when using
the Scott SCBA mask with my beard. In addition, we were not required to shave our beards after
the initial combat action while we were still in the area where we were attacked, indicating that
beards imposed no significant safety risks. Even when I attended advanced shipboard firefighting
school, where more advanced trainers with fire and smoke are used, I was not required to shave
off the ¼ inch of facial hair that I had at the time. My experience on the USS Nitze is evidence
that the Navy lacks a compelling interest in requiring sailors to be clean-shaven in situations that
require the use of protective equipment.

At the very least, the factors I have listed demonstrate that the DCNO's decision is not the least
restrictive means of satisfying a compelling government interest, because the Navy's own practices
show that its asserted safety concerns do not require a categorical ban on religious beards and
because there are a variety of ways that my religious grooming requirements could be
accommodated without actual risk to safety.

7. <u>Use of gas masks or Air Purifying Respirators (APR)</u>:

I understand that there are unique situations where a high probability of CBRN warfare (MOPP
Level 2) requires all Sailors to be clean-shaven, including those with medical exemptions, in order
to wear an APR with a fitted seal. In the event I am in such a situation, I understand I may be

3

required to temporarily shave my beard, and I will comply with those orders. My religious beliefs dictate that the preservation of one's life is of paramount importance in situations where there is a specific, concrete, and/or imminent threat to life or limb and that religious observances may therefore be suspended temporarily to preserve safety pursuant to that specific, imminent threat. Such a threat, however, comes only in limited circumstances that trigger a specific MOPP level.

Again, for these reasons, denying my request to maintain a beard for religious purposes on the sole basis that I am generally assigned to a sea command is not the least restrictive means of furthering the Navy's compelling government interest in mission-accomplishment. This decision also ensures that no sailor assigned to a sea command is likely to receive a religious accommodation for a beard, despite the lack of high risk, specific, concrete and/or imminent threats to their life or limb. This would be a violation of references (b) and (c), RFRA, and the First Amendment.

Given the above, I respectfully request that my previous request for a religious accommodation be approved and apply to any operational, non-operational, or training environment command where I am stationed, with the possibility of a temporary exception for situations where there is a specific and concrete threat of exposure to toxic CBRN agents (MOPP Level 2). As mentioned above, I understand that I may have to shave my beard as required to meet the Navy's compelling interests under those specific and temporary circumstances.

8.  The DCNO stated in paragraph 5(a) of his denial decision: *"If assigned to a shore command, you may once again submit a request for religious accommodation."*

My understanding of this statement is that a religious accommodation for a beard would only be approved when a Sailor is on shore duty. My religious obligations, however, do not change depending on my assignment going from shore or sea duty. Almost all Sailors, by virtue of their rating's LaDR and sea/shore rotations, will start their careers at sea duty commands. Depriving these Sailors from being able to maintain their religious requirements for up to the first five years of their careers in the Navy places a substantial burden on Sailors' exercise of religion in a manner that does not comply with references (b) and (c), with RFRA, or with the First Amendment. Among other things, it would effectively ban virtually all religiously observant individuals with similar beliefs from service in the Navy.

The RFRA standard rejects such a "categorical approach." Rather, it requires the government "to demonstrate that the compelling interest test is satisfied through application of the challenged law 'to the person'—the particular claimant whose sincere exercise of religion is being substantially burdened." *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 420 (2006). Because—among other things—the Navy uses positive pressure masks that are not individually fit-tested and allows sailors on sea duty to wear beards for MWR purposes, the compelling interest standard is not met. *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 547 (1993) (strict scrutiny not met where policy "leaves appreciable damage" to vital interests "unprohibited").

4

Subj:  APPEAL OF DCNO'S DENIAL OF RELIGIOUS ACCOMMODATION REQUEST
BY MC3 LEANDROS KATSAREAS. USN

Moreover, RFRA's "least-restrictive-means standard is exceptionally demanding," even in settings such as prisons or the military where government is traditionally given significant deference. *Holt v. Hobbs*, 574 U.S. 352. 364 (2015). The government always bears the burden not just to "explain why it denied the exemption," but also to "prove that denying the exemption is the least restrictive means of furthering a compelling governmental interest." *Id*. This requires an evidence-based analysis that considers all available options. *See, e.g., Singh v. McHugh*, 185 F. Supp. 3d 201, 231 & n.23 (D.D.C. 2016) (identifying means of accommodating religious beards); *Singh v. Carter*, 168 F. Supp. 3d 216, 232 (D.D.C. 2016) (same). Because there are various ways my religious beard could be accommodated without compromising safety or other compelling interests, I request that my application for a waiver be granted.

9. I further request to have a permanent approval of this waiver so that it is enduring and it follows me throughout my career, subject to situations of imminent safety concerns necessitating a temporary suspension of the accommodation. As an observant Muslim, my religious beliefs reflect who I am and who I sincerely believe God requires me to be. Having to make an accommodation request over and over again at each new command unnecessarily and substantially burdens my faith, subjects me to a higher probability of discrimination, and deprives me of the stability and clarity other Sailors have regarding whether I will be accepted in a manner that allows me to proudly serve my country. The lack of a permanent accommodation requires me to go through the arduous process of having to re-apply routinely with duty changes, and it places me in a situation of limbo during the months it takes to obtain approval.

10. I respectfully request that this waiver is entered into my NSIPS profile under the religious accommodation section.

11. The DCNO's denial letter suggested that concerns about "good order and discipline" and unit cohesion may also have contributed to his decision. Again, however, government "cannot simply invoke general principles," but must show that granting "*this plaintiff* a religious accommodation" threatens good order, discipline, or unit cohesion. *McHugh*, 185 F. Supp. 3d at 223. The government has made no such showing here. *Accord id*. at 229 ("[T]he undisputed evidence in the record indicates that [other] men served—or are serving—with their articles of faith intact without any of the negative consequences that defendants predict would flow from granting a similar exception in this case.").

The DCNO's concern that "[w]e must create an environment where everyone is treated the same" is also impermissibly broad and violates clear and well-established law. RFRA—and the First Amendment's Religion Clauses—clearly contemplate that the government has a heightened duty to accommodate religious needs as such. *Holt*, 574 U.S. at 356, 357; *Corp. of Presiding Bishop of Church of Jesus Christ of Latter-day Saints v. Amos*, 483 U.S. 327, 338 (1987). Moreover, a policy treating all sailors the same with respect to their religious needs must acknowledge that different sailors will have different religious obligations. Treating them the same requires applying the same RFRA standard, not denying religious accommodations to minority religious beliefs. Moreover, equal respect for diverse religious beliefs reinforces, rather than undermines, "an environment that supports immediate and unquestioned response to command authority."

5

Subj:  APPEAL OF DCNO'S DENIAL OF RELIGIOUS ACCOMMODATION REQUEST
       BY MC3 LEANDROS KATSAREAS, USN

12. I am proud to serve in the United States Navy, and wish to serve with my whole religious identity intact. As a junior sailor, it is incredibly demoralizing continuously to have to fight to maintain my religious beliefs, as protected by RFRA, Navy regulations and policy, DOD instructions and directives, and the First Amendment. Additionally, I have made every effort to provide detailed information and to address stated or anticipated objections to my request.

The DoD Instruction in reference (b) was revised in 2014. I enlisted in the Navy after seeing this instruction, reasonably expecting that my sincerely held religious beliefs would be respected and accommodated. Despite numerous denials along the way, I am hopeful that your review of both my accommodation request and the Navy's recent policy update in MAR 2020 will lead to a religious accommodation for me to maintain my beard moving forward so that I can continue to serve our country without having to compromise my religious beliefs.

*L. Katsareas*

Katsareas, L.
MC3 USN

*Eric S. Baxter*

Eric S. Baxter
Daniel H. Blomberg
Diana M. Verm
THE BECKET FUND FOR RELIGIOUS LIBERTY
1200 New Hampshire Ave., NW
Washington D.C. 20036
202-955-0095
ebaxter@becketlaw.org

6



# DEPARTMENT OF THE NAVY
USS GEORGE WASHINGTON (CVN 73)
FPO AE 09550

1730
Ser LEG/099
26 Feb 21

From: Commanding Officer, USS GEORGE WASHINGTON (CVN 73)
To:   MC3 Leandros Katsareas, USN

Subj: APPEAL OF RELIGIOUS ACCOMMODATION FOR WEAR OF A BEARD ICO
MC3 LEANDROS KATSAREAS, USN

Ref:  (a) Deputy Chief of Naval Operations (Manpower, Personnel, Training and Education)
(N1) ltr of 15 Jul 20
(b) DoD Instruction 1300.17
(c) SECNAVINST 1730.8B
(d) ASN (M&RA) memo of 6 Jun 13
(e) BUPERSINST 1730.11A

1. In accordance with reference (b), this letter shall serve as notice of my intent to request review of reference (a), your previously granted religious accommodation. Per references (b) through (e), the Deputy Chief of Naval Operations (Manpower, Personnel, Training and Education) (N1), is the approval authority for requests for religious accommodations, as well as proposals to review and rescind previously approved accommodations. Reference (a) requires review of religious accommodations upon a determination that the circumstances under which the grant of accommodation was approved have changed.

2. You recently completed your assigned duties with the USS GEORGE WASHINGTON's Auxiliary Security Forces and transferred to the Legal Department to pursue a career as a Legalman. Your reassignment resulted in a material change in circumstances. Specifically, you have been placed in a duty section, which *may* require you to don personal protective equipment in the performance of those duties. As such, a review of your previously approved accommodation is required, per reference (a).

3. You have ten (10) days from the date of this letter to review and comment on the proposed rescission of your previously approved accommodation. Your input, if any, will be forwarded to the approval authority for consideration upon the expiration of the ten-day period.

4. My point of contact for this matter is my Command Judge Advocate, LCDR Denise Romeo, JAGC, USN. She can be reached at 757-534-0293 or denise.romeo@cvn73.navy.mil.

K. A. STRONG



**DEPARTMENT OF THE NAVY**
OFFICE OF THE CHIEF OF NAVAL OPERATIONS
2000 NAVY PENTAGON
WASHINGTON DC 20350-2000

1730
Ser N1/ 114104
15 Jul 20

From: Deputy Chief of Naval Operations (Manpower, Personnel, Training and Education) (N1)
To:   MC3 Leandros Katsareas, USN
Via:  Commanding Officer, USS GEORGE WASHINGTON (CVN 73)

Subj: APPEAL OF RELIGIOUS ACCOMMODATION FOR WEAR OF A BEARD ICO
      MC3 LEANDROS KATSAREAS, USN

Ref:  (a) Your ltr of 5 May 20
      (b) DoD Instruction 1300.17
      (c) SECNAVINST 1730.8B
      (d) ASN (M&RA) memo of 6 Jun 13
      (e) BUPERSINST 1730.11A

1. Upon reconsideration of reference (a), your request for a religious accommodation is approved. This decision is based on additional information provided by your chain of command, including your present duties as a member of the Auxiliary Security Force (ASF) and the fact that the nature of such duties makes it highly unlikely that you will be required to don personal protective equipment. As permitted by references (b) through (e), you may wear a four-inch beard. In line with reference (e), while you are in uniform, your beard must be groomed to achieve a length not to exceed two inches when measured from the bottom of your chin.

2. Per references (b) through (e), I am designated as the approval authority for requests for religious accommodation.

3. Further, per reference (e), this determination is subject to review, suspension or revocation, in whole or in part, at any time based upon change in circumstances. Upon a change in mission, duty, or work environment, and in furtherance of a compelling government interest, you may be required to shave your beard in order to don personal protective equipment in line with reference (e).

4. The Navy welcomes people of all faiths and no faith to join our ranks in patriotic service. You have my sincere best wishes for your continued success in your Navy career.

JOHN B. NOWELL, JR

Copy to:
CNO
OPNAV (N131, N0975)



# DEPARTMENT OF THE NAVY
USS GEORGE WASHINGTON (CVN 73)
FPO AE 09550

1730
Ser 00/202
4 Jun 20

FIRST ENDORSEMENT on MC3 Leandros Katsareas, USN, ltr of 05 May 20

From:  Commanding Officer, USS GEORGE WASHINGTON (CVN 73)
To:    Chief of Naval Personnel

Subj:  APPEAL OF DCNO'S DENIAL OF RELIGIOUS ACCOMODATION REQUEST BY
       MC3 LEANDROS KATSAREAS, USN

1. Forwarded.

2. My point of contact for any further information is CDR Abuhena Saifulislam, who can be
reached at (757) 534-1050 or via e-mail at abuhena.saifulislam@cvn73.navy.mil

K. ARMSTRONG

Copy to:
MC3 Katsareas

4

**Page 18 of 43**

5 MAY 20

From: MC3 Leandros Katsareas, USN
To:    Chief of Naval Operations
Via:   Commanding Officer, USS George Washington (CVN 73)

Subj:  APPEAL OF DCNO'S DENIAL OF RELIGIOUS ACCOMMODATION REQUEST
       BY MC3 LEANDROS KATSAREAS, USN

Ref:   (a) DCNO denial ltr of 4 APR 20
       (b) DoD INSTRUCTION 1300.17 Incorporating Change 1, Effective 22 JAN 2014
       (c) BUPERSINST 1730.11A

Encl:  (1) My original religious accommodation request dated 6 DEC 19


1. I converted to Islam in 2001 at the age of sixteen and have faithfully observed its tenets ever since. Even though I was born and raised in Australia, after seeing the atrocities carried out on 9/11, I vowed to fight against terrorists and their ideology. In 2006 I was living in New Zealand and was invited to attend an Officer Selection Board to commission as an officer in the New Zealand Army. I did not proceed, as I could not bring myself to swear an inviolable oath to the Queen of England. While studying a course of Arabic at Qatar University, classmates from the U.S. who recognized my passion for liberty encouraged me to study the Declaration of Independence, the Founding Fathers, and the Constitution. After thoroughly studying the principles behind the founding of the United States, I vowed that one day I would immigrate, become a U.S. citizen, and spend my life honorably serving the United States.

I arrived in the United States in 2012 and spent 2013 through 2016 working with the FBI to assist in identifying terrorist threats against Americans and American interests both at home and abroad. Within one day of obtaining my Permanent Residence in 2014, I filled out an application to join the Navy and was honored to swear an oath to support and defend the Constitution of the United States. Soon after becoming a naturalized citizen at RTC in 2016, I renounced my Australian citizenship as I considered it dishonorable to keep the benefits that come with citizenship when I was not willing to fight for that country's system of government.

My service in the Navy has included a 2016 deployment to 5th Fleet aboard USS Nitze (DDG 94) as a PACT Seaman, where I often volunteered my Arabic skills to stand watches on the bridge, especially during our many transits through the straits of Bab el-Mandeb and Hormuz. When Houthis in Yemen fired upon us with guided anti-ship missiles, I responded to the General Quarters as a member of my repair locker's fire party. Later, in 2019, I graduated from the Defense Information School's Basic Mass Communication Specialist Course, and I currently serve aboard the USS George Washington (CVN 73).

6

Subj:  APPEAL OF DCNO'S DENIAL OF RELIGIOUS ACCOMMODATION REQUEST
       BY MC3 LEANDROS KATSAREAS, USN

2.  Since joining the Navy, I have sought a religious accommodation to maintain a beard in accordance with my Islamic faith, which requires—as one of the ten basic *fitras* (cleanliness and grooming obligations) for Muslims—that all Muslim males who are genetically able to grow a substantial beard do so as a sign of their devotion to God. Although I currently have a 2018 accommodation from the CNP for an ungroomed ¼ inch beard, I consider it sinful and spiritually degrading not to maintain a beard that complies with my religious obligations. Thus, on 06 DEC 2019, I submitted a request for a religious accommodation in accordance with reference (b) that would allow me to have a beard consistent with my sincerely held religious beliefs, meaning:

    a.  a fist length beard from the bottom of the chin, which can be rolled and tied to achieve a length of two inches per reference (c);

    b.  a beard with edges that are groomed so as to be neat and clean, per the requirements of my sincerely held religious beliefs; and

c.  a mustache that is neat and blends well into the beard.

3.  On 16 MAR 20, reference (c) was updated to provide for religious accommodations for facial hair. It was my understanding that the new instruction would allow for my requested accommodation. I was very grateful that the Navy was fully implementing the standards of reference (b) and that I would no longer be left to choose between my religious obligations and my patriotic duty to serve my country.

However, on 4 APR 20, contrary to my understanding of the updates to reference (c), I received reference (a), the DCNO's letter denying my request for a full religious accommodation (attached as enclosure (2)). I am submitting this appeal of the DCNO's decision as I believe his decision is inconsistent with references (b) and (c); the Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb-1, *et seq*.; and the First Amendment.

4.  Given that I submitted my request prior to the 16 MAR 20 update to reference (c) and that the DCNO's decision was issued on 4 APR 20, I imagine that my request was among the first to be adjudicated under the terms of new policy in reference (c). I am therefore respectfully requesting confirmation that the review and adjudication of my request was conducted with the advice of a judge advocate in accordance with reference (c). Also, before a denial of this appeal, consultation should be undertaken with the Department of Justice's Office of Legal Policy. *See* Federal Law Protections for Religious Liberty, 82 Fed. Reg. 49,668, 49,671 (Oct. 26, 2017) (instructing all agencies to consult "subject-matter experts who can answer questions about religious nondiscrimination rules" when considering religious accommodation issues, and that "any questions" about the guidance should be addressed to the Office of Legal Policy).

5.  The DCNO stated that he denied my request "due to the Navy's compelling Government interest in mission accomplishment at sea including safety." Specifically, the DCNO stated in paragraph 5(a) of his denial decision that "reference (c) reported that a beard reduces safe and effective wear and operation of protective equipment, to include gas masks, self-contained breathing apparatus face mask and respirators."

Subj:  APPEAL OF DCNO'S DENIAL OF RELIGIOUS ACCOMMODATION REQUEST
BY MC3 LEANDROS KATSAREAS, USN

For the reasons stated below, I believe that the DCNO's decision is not the least restrictive means of furthering the Navy's compelling government interest in mission accomplishment at sea including safety.

6. Use of Self-Contained Breathing Apparatus (SCBA) facemasks/respirators:

The 3M/Scott SCBA mask and respirator used by the Navy does not require a perfect seal around the face to be effective because it uses positive air pressure rather than a seal to provide a safe environment for its wearer. Positive air pressure forces any polluted air—including smoke—outside of the mask. This process ensures the wearer continues to breathe clean, tank-supplied oxygen.

The safe and effective use of the Scott SCBA mask, regardless of a seal, is further evidenced by the fact that Sailors are not fit-tested for Scott SCBA masks or issued individual masks known to form a perfect seal with their faces. Instead, we use whichever SCBA masks are in the repair locker and are available at that time.

When I was stationed aboard the USS Nitze on its deployment in 2016, I had a MWR no-shave chit that allowed me to grow a beard as long as I wanted, which was substantially longer than the ¼ inch of facial hair I am allowed now. When we received incoming anti-ship missile fire from Houthi batteries, I was on the ship's fire-party in my repair locker, preparing to enter the depths of the ship if we were struck with a missile. I did not face any issues whatsoever in wearing a Scott SCBA mask, tank, and regulators with my beard.

Similarly, I did not face any issues during any other General Quarters drill evolution when using the Scott SCBA mask with my beard. In addition, we were not required to shave our beards after initial combat action while we were still in the area where we were attacked, indicating that beards imposed no significant safety risks. Even when I attended advanced shipboard firefighting school, where more advanced trainers with fire and smoke are used, I was not required to shave off the ¼ inch of facial hair that I had at the time. My experience on the USS Nitze is evidence that the Navy lacks a compelling interest in requiring Sailors to be clean-shaven in situations that require the use of protective equipment.

At the very least, the factors I have listed demonstrate that the DCNO's decision is not the least restrictive means of satisfying a compelling government interest, because the Navy's own practices show that its asserted safety concerns do not require a categorical ban on religious beards and because there are a variety of ways that my religious grooming requirements could be accommodated without actual risk to safety.

7. Use of gas masks or Air Purifying Respirators (APR):

I understand that there are unique situations where a high probability of CBRN warfare (MOPP Level 2) requires all Sailors to be clean-shaven, including those with medical exemptions, in order to wear an APR with a fitted seal. In the event I am in such a situation, I understand I may be

3

Subj:    APPEAL OF DCNO'S DENIAL OF RELIGIOUS ACCOMMODATION REQUEST
        BY MC3 LEANDROS KATSAREAS, USN

required to temporarily shave my beard, and I will comply with those orders. My religious beliefs dictate that the preservation of one's life is of paramount importance in situations where there is a specific, concrete, and/or imminent threat to life or limb and that religious observances may therefore be suspended temporarily to preserve safety pursuant to that specific, imminent threat. Such a threat, however, comes only in limited circumstances that trigger a specific MOPP level.

Again, for these reasons, denying my request to maintain a beard for religious purposes on the sole basis that I am generally assigned to a sea command is not the least restrictive means of furthering the Navy's compelling government interest in mission-accomplishment. The DCNO's decision suggests that *no* Sailor assigned to a sea command is likely to receive a religious accommodation for a beard, despite the lack of high risk, specific, concrete and/or imminent threats to their life or limb. Such a blanket denial would be a violation of references (b) and (c), RFRA, and the First Amendment.

Given the above, I respectfully request that my previous request for a religious accommodation be approved and apply to any operational, non-operational, or training environment command where I am stationed, with the possibility of a temporary exception for situations where there is a specific and concrete threat of exposure to toxic CBRN agents (MOPP Level 2). As mentioned above, I understand that I may have to shave my beard as required to meet the Navy's compelling interests under those specific and temporary circumstances.

8.    The DCNO stated in paragraph 5(a) of his denial decision that "[i]f assigned to a shore command, you may once again submit a request for religious accommodation."

My understanding of this statement is that a religious accommodation for a beard would only be approved when a Sailor is on shore duty. My religious obligations, however, do not change depending on my assignment going from shore or sea duty. Almost all Sailors, by virtue of their rating's LaDR and sea/shore rotations, will start their careers at sea duty commands. Depriving these Sailors of being able to maintain their religious requirements for up to the first five years of their careers in the Navy places a substantial burden on Sailors' exercise of religion in a manner that does not comply with references (b) and (c), RFRA, or the First Amendment. Among other things, it would effectively ban virtually all religiously observant individuals with similar beliefs from service in the Navy.

The RFRA standard rejects such a "categorical approach." Rather, it requires the government "to demonstrate that the compelling interest test is satisfied through application of the challenged law 'to the person'—the particular claimant whose sincere exercise of religion is being substantially burdened." *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 420 (2006). Because—among other things—the Navy uses positive pressure masks that are not individually fit-tested and allows Sailors on sea duty to wear beards for MWR purposes, the compelling interest standard is not met. *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 547 (1993) (strict scrutiny not met where policy "leaves appreciable damage" to vital interests "unprohibited").

4

Subj:   APPEAL OF DCNO'S DENIAL OF RELIGIOUS ACCOMMODATION REQUEST
        BY MC3 LEANDROS KATSAREAS, USN

Moreover, RFRA's "least-restrictive-means standard is exceptionally demanding," even in settings such as prisons or the military where government is traditionally given significant deference. *Holt v. Hobbs*, 574 U.S. 352, 364 (2015). The government always bears the burden not just to "explain why it denied the exemption," but also to "prove that denying the exemption is the least restrictive means of furthering a compelling governmental interest." *Id.* This requires an evidence-based analysis that considers all available options. *See, e.g., Singh v. McHugh*, 185 F. Supp. 3d 201, 231 & n.23 (D.D.C. 2016) (identifying means of accommodating religious beards); *Singh v. Carter*, 168 F. Supp. 3d 216, 232 (D.D.C. 2016) (same). Because there are various ways my religious beard could be accommodated without compromising safety or other compelling interests, I request that my application for a waiver be granted.

9.  I further request to have a permanent approval of this waiver so that it is enduring and follows me throughout my career, subject to situations of imminent safety concerns necessitating a temporary suspension of the accommodation. As an observant Muslim, my religious beliefs reflect who I am and who I sincerely believe God requires me to be. Having to make an accommodation request over and over again at each new command unnecessarily and substantially burdens my faith, subjects me to a higher probability of discrimination, and deprives me of the stability and clarity other Sailors have regarding whether I will be accepted in a manner that allows me to proudly serve my country. The lack of a permanent accommodation requires me to go through the arduous process of having to re-apply routinely with duty changes, and it places me in a limbo during the months it takes to obtain approval.

10.  I respectfully request that this waiver is entered into my NSIPS profile under the religious accommodation section.

11.  The DCNO's denial letter suggested that concerns about "good order and discipline" and unit cohesion may also have contributed to his decision. Again, however, the government "cannot simply invoke general principles," but must show that granting "*this plaintiff* a religious accommodation" threatens good order, discipline, or unit cohesion. *McHugh*, 185 F. Supp. 3d at 223. The government has made no such showing here. *Accord id.* at 229 ("[T]he undisputed evidence in the record indicates that [other] men served—or are serving—with their articles of faith intact without any of the negative consequences that defendants predict would flow from granting a similar exception in this case.").

The DCNO's concern that "[w]e must create an environment where everyone is treated the same" is also impermissibly broad and violates clear and well-established law. RFRA—and the First Amendment's Religion Clauses—clearly contemplate that the government has a heightened duty to accommodate religious needs. *Holt*, 574 U.S. at 356, 357; *Corp. of Presiding Bishop of Church of Jesus Christ of Latter-day Saints v. Amos*, 483 U.S. 327, 338 (1987). Moreover, a policy treating all Sailors the same with respect to their religious needs must acknowledge that different Sailors will have different religious obligations. Treating them the same requires applying the same RFRA standard, not denying religious accommodations to minority religious beliefs. Moreover, equal respect for diverse religious beliefs reinforces, rather than undermines, "an environment that supports immediate and unquestioned response to command authority."

5

Subj:  APPEAL OF DCNO'S DENIAL OF RELIGIOUS ACCOMMODATION REQUEST
       BY MC3 LEANDROS KATSAREAS, USN

12.  I am proud to serve in the United States Navy, and wish to serve with my whole religious
identity intact. As a junior Sailor, it is incredibly demoralizing continuously to have to fight to
maintain my religious beliefs, as protected by RFRA, Navy regulations and policy, DOD
instructions and directives, and the First Amendment. Additionally, I have made every effort to
provide detailed information and to address stated or anticipated objections to my request.

The DoD Instruction in reference (b) was revised in 2014. I enlisted in the Navy after seeing this
instruction, reasonably expecting that my sincerely held religious beliefs would be respected and
accommodated. Despite numerous denials along the way, I am hopeful that your review of both
my accommodation request and the Navy's recent policy update in MAR 2020 will lead to a
religious accommodation for me to maintain my beard moving forward so that I can continue to
serve our country without having to compromise my religious beliefs.


Katsareas, L.
MC3 USN


Eric S. Baxter
Daniel H. Blomberg
Diana M. Verm
THE BECKET FUND FOR RELIGIOUS LIBERTY
1200 New Hampshire Ave., NW
Washington D.C. 20036
202-955-0095
*ebaxter@becketlaw.org*

6



**DEPARTMENT OF THE NAVY**
OFFICE OF THE CHIEF OF NAVAL OPERATIONS
2000 NAVY PENTAGON
WASHINGTON DC 20350-2000

1730
Ser N1/114044
4 Apr 20

From:  Deputy Chief of Naval Operations (Manpower, Personnel, Training and Education) (N1)
To:    MC3 Leandros Katsareas, USN
Via:   Commanding Officer, USS GEORGE WASHINGTON (CVN 73)

Subj:  REQUEST FOR RELIGIOUS ACCOMMODATION THROUGH WAIVER OF
       GROOMING STANDARDS FOR FACIAL HAIR

Ref:   (a) NAVPERS 15565I
       (b) Your ltr of 6 Dec 19
       (c) COMNAVSAFECEN NORFOLK VA 261941Z Nov 18 (ALSAFE 18/008)
       (d) SECNAVINST 1730.8B
       (e) DoD Instruction 1300.17 of 10 February 2009
       (f) ASN (M&RA) memo of 6 Jun 13
       (g) BUPERSINST 1730.11A
       (h) 42 U.S.C. §2000bb-1
       (i) United States Attorney General memo of 6 Oct 17

1.  In line with references (a) through (h), your request to waive the requirements in Article 2201.2 of reference (a) for a beard, is disapproved.  I am disapproving your wear of a beard due to the Navy's compelling Government interest in mission accomplishment at sea including safety.

2.  In line with references (d) through (g), I am designated as the approval authority for requests for religious accommodation.

3.  Reference (h), the Religious Freedom Restoration Act (RFRA), states that the Government may substantially burden an individual's exercise of religion only if it demonstrates that application of the burden to the person is:  (1) in furtherance of a compelling governmental interest, and (2) is the least restrictive means of furthering that interest.  Reference (e) incorporates RFRA and notes that the Government has a compelling interest in mission accomplishment, to include military readiness, unit cohesion, good order and discipline and health and safety, on both individual and unit levels.  Additionally, unless it will have an adverse impact on mission accomplishment, including military readiness, unit cohesion and good order and discipline, the Navy will accommodate individual expressions of sincerely held beliefs of Sailors.  Reference (i) emphasizes that only those interests of the highest order can overbalance legitimate claims to the free exercise of religion.

4.  All requests for accommodation of religious practices are assessed on a case-by-case basis. In line with references (d) and (e), determination of a request for religious accommodation requires consideration of the following factors:

Subj:    REQUEST FOR RELIGIOUS ACCOMMODATION THROUGH WAIVER OF
GROOMING STANDARDS FOR FACIAL HAIR

   a.  Impact on military readiness, unit cohesion, good order and discipline, and health and safety

   b.  Religious importance of the request

   c.  Cumulative impact of repeatedly granting similar requests

   d.  Whether there is alternative means available to meet the requested accommodation

   e.  How other such requests have been treated

5.  The Navy is a specialized community governed by a discipline separate from that of the rest of society.  While every Sailor is welcome to express a religion of choice or none at all, our greater mission sometimes requires reasonable restrictions.  Deviations from Navy standards must be considered against how those deviations impact the Navy mission as a whole.  In making this decision, I reviewed reference (b), including the endorsements by your chain of command, the local chaplain and the guidance of the Commander, Naval Safety Center in reference (c).

   a.  With regard to your request to wear a beard, reference (c) reported that a beard reduces safe and effective wear and operation of protective equipment, to include gas masks, self-contained breathing apparatus face masks and respirators.  Damage control (DC), both in port and underway, is the responsibility of each crew member.  Your participation in shipboard DC efforts are routine and foreseeable regardless of whether the ship is in port or at sea.  Beards present a hazard to these efforts, as outlined above, and this hazard can extend to other personnel should they be required to come to your aid if you are injured during DC activities.  Though the probability of a negative consequence from an ineffective seal is relatively low, the severity of that consequence may be high – to include injury.  From an operational risk management perspective, this risk is untenable.  If assigned to a shore command, you may once again submit a request for religious accommodation.

   b.  I find that granting your request would present an unacceptable risk to the Navy's compelling interest in mission accomplishment, including good order and discipline, military readiness and safety on both the individual and unit levels.  We must create an environment where everyone is treated the same and an environment that supports immediate and unquestioned response to command authority.  I further find that there are no less restrictive means available to accommodate your request.

6.  If you subsequently experience a change in physical, operational or geographical environment you may again request for religious accommodation.

JOHN B. NOWELL, JR

Copy to:
OPNAV (N131, N0975)



**DEPARTMENT OF THE NAVY**
USS GEORGE WASHINGTON (CVN 73)
FPO AE 09550

1730
Ser 00/040
3 Feb 20

FIRST ENDORSEMENT on MC3 Leandros Katsareas, USN, ltr of 06 Dec 19

From:  Commanding Officer, USS GEORGE WASHINGTON (CVN 73)
To:    Chief of Naval Personnel

Subj:  REQUEST FOR RELIGIOUS ACCOMMODATION BY MC3 LEANDROS
       KATSAREAS, USN

1. Forwarded, recommending approval.

2. My point of contact for any further information is CDR Abuhena Saifulislam, who can be
reached at (757) 534-1050 or via e-mail at abuhena.saifulislam@cvn73.navy.mil

K. A. STRONG

Copy to:
MC3 Katsareas

4

20 DEC 19

From:   CDR Saifulislam, Abuhena M, CHC, USN
To:     Commanding Officer, USS George Washington (CVN 73)    03 FEB 2020

Subj:   REQUEST FOR AN EXCEPTION TO POLICY TO ACCOMMODATE A PRACTICE
        BASED ON RELIGIOUS BELIEF ICO MC3 LEANDROS KATSAREAS

Ref:    (a) SECNAVINST 1730.8
        (b) SECNAVINST 1730.9

1. MC3 Leandros Katsareas has submitted a request for accommodation of a religious
practice per reference (a). Per BUPERSINST 1730.11, I interviewed the requestor on December
20, 2019. I explained that this interview would not be a confidential communication as defined
by reference (b) and informed the requestor that referral for confidential chaplain support was
available.

2. Nature of the request. MC3 Katsareas is requesting a waiver of grooming standards including
a mustache and beard that follows the following requirements:

     a.   A beard that is at least fist length (four inches in length) from the bottom of the chin.

     b.   A beard with edges that are groomed so as to be neat, clean, and professional.

     c.   A mustache that blends well into the beard.

MC3 Katsareas has submitted six previous requests to obtain this waiver, all of which have been
consistent in what he was requesting. MC3 Katsareas reports that the first five requests were not
properly handled by his previous chains of command and the sixth went to CNP, but the partial
waiver he received allowing to have ¼" of facial hair that could not be groomed like that of
someone who suffers from pseudofolliculitis barbae did not meet the requirements of his
sincerely held religious beliefs.

3. Basis. MC3 Katsareas has been a Muslim for almost 19 years after converting to Islam at the
age of 16. Katsareas' beliefs stem from sources found in Islamic jurisprudence and are
consistently recognized in all Islamic schools of jurisprudence. My professional and objective
opinion is that the approval of this request is of paramount religious importance to MC3
Katsareas.

4. Alternate Means. There are no alternate means that would satisfy MC3 Katsareas' sincerely
held religious beliefs and convictions. If this accommodation cannot be granted fully, MC3
Katsareas requests that the U.S. Navy facilitates an inter-service transfer to the U.S. Army
Reserves where this type of religious accommodation has previously been granted.

Subj:    REQUEST FOR AN EXCEPTION TO POLICY TO ACCOMMODATE A PRACTICE
         BASED ON RELIGIOUS BELIEF ICO MC3 LEANDROS KATSAREAS


5. Sincerity. Given the six previous requests that MC3 Katsareas has submitted, dating back to before he even shipped off to RTC, his persistence in trying to obtain this waiver, the fact that for his entire adult life prior to shipping out to RTC at the age of 31 that he maintained a beard identical to that which he is requesting, the consistency of what he has requested, and his in-depth level of knowledge of Islam, I assess his request as being sincere.

6. My contact information is 757-534-1050 and abuhena.saifulislam@cvn73.navy.mil.


                                        Abuhena Saifulislam



Copy to:
(MC3 Leandros Katsareas)

BUPERSINST 1730.11
13 Nov 2018

## CHAPLAIN INTERVIEW CHECKLIST TEMPLATE

| Requestor: | | | | Interview Date: DECEMBER 20, 2019 |
|---|---|---|---|---|
| Name: LEANDROS KATSAREAS, MC3 | | | | Chaplain Interviewer: Abuhena Saifulislam |
| Phone: 757 610 5557 | | | | Phone: 757-534-1050 |
| Email: leo.katsareas@gmail.com | | | | E-mail: abuhena.saifulislam@cvn73.navy.mil |
| Command: USS GEORGE WASHINGTON | | | | Chaplain's Command: USS GEORGE WASHINGTON |

| | | | Interview Preliminaries |
|---|---|---|---|
| Yes | No | N/A | |
| ✓ | | | Chaplain reviewed policy and doctrine on religious accommodation and the policy for which the requestor is seeking accommodation. |
| ✓ | | | Applicant was notified that the interview is not confidential and will be used to advise the command. |
| ✓ | | | Chaplain explained to the applicant that confidential support can be received from another chaplain. |
| ✓ | | | Applicant has been granted a religious accommodation for this practice previously. |
| ✓ | | | Applicant's Page 2 (NAVPERS 1070/602) reflects the belief cited in the application. |

| | | | Type of Waiver Requested |
|---|---|---|---|
| Yes | No | N/A | |
| | ✓ | | Uniform standards |
| ✓ | | | Grooming standards |
| | | ✓ | Immunization requirements |
| | | ✓ | DNA sampling |
| | ✓ | | Other (Please describe): |

| | | | Interview |
|---|---|---|---|
| Yes | No | N/A | |
| | | | Requestor's religious beliefs seemed honestly and sincerely held using one or more of the following factors: |
| ✓ | | |    1.  Requestor was credible (consistently keeps tenets, practices, etc.). |
| ✓ | | |    2.  Requestor's demeanor and pattern of conduct are consistent with the request. |
| ✓ | | |    3.  Requestor participates in activities associated with the belief(s). |
| ✓ | | |    4.  Other persons supporting the claim are credible. |
| | | ✓ |    5.  Request is supported by letter(s) of verification or endorsement from an organization espousing the beliefs which are the basis for the claim. |
| ✓ | | | Alternate means of accommodating the practice were explored in the interview. |

| | | | Process Checklist |
|---|---|---|---|
| Yes | No | N/A | |
| ✓ | | | Chaplain has prepared a memorandum documenting the interview. |
| ✓ | | | Chaplain reviewed memorandum with applicant and provided a copy. |
| ✓ | | | Chaplain submitted the memorandum and this document to the commanding officer via chain of command. |
| ✓ | | | Chaplain referred applicant to command to process request. |

Enclosure (2)

**Page 30 of 43**

06 Dec 19

From:  MC3 Leandros Katsareas, USN
To:    Chief of Naval Personnel
Via:   Commanding Officer, USS George Washington (CVN 73)

Subj:  REQUEST FOR RELIGIOUS ACCOMODATION BY MC3 LEANDROS
       KATSAREAS, USN

Ref:   (a) SECNAVINST 1730.8B
       (b) DoD INSTRUCTION 1300.17 Incorporating change 1 effective Jan 22, 2014
       (c) BUPERSINST 1730.11
       (d) Army Directive 2017-03 (Policy for Brigade-Level Approval of Certain Requests for
       Religious Accommodation)

Encl:  (1) DoD INSTRUCTION 1300.17 Incorporating change 1 effective Jan 22, 2014
       (2) BUPERSINST 1730.11
       (3) Army Directive 2017-03 (Policy for Brigade-Level Approval of Certain Requests for
       Religious Accommodation)
       (4) Theological Evidence of my sincerely held religious beliefs
       (5) Previous attempts to obtain this waiver
       (6) Potential objections to my request and responses
       (7) DD Form 368 Request for Conditional Release

1.  I consider myself both privileged and honored to have the opportunity to serve in the Navy. I
immigrated to this country after falling in love with the US Constitution and with the intention of
devoting my life to supporting and defending it.

2.  I respectfully request a religious accommodation by way of a waiver of Navy grooming
standards to grow a beard within the following guidelines for religious purposes as per my
sincerely held religious beliefs and in accordance with DOD Instruction 1300.17 (enclosure 1):

    a.  A beard fist length (four inches) in length from the bottom of the chin.

    b.  A beard with edges that are groomed so as to be neat and clean, per the requirements of
my sincerely held religious beliefs.

    c.  A mustache that is neat and blends well into the beard.

3.  I respectfully request that this be expeditiously processed to be approved at the CNP level
(due to the six improperly handled attempts I have made since 2015 to have this waiver properly
approved).

Subj:  REQUEST FOR RELIGIOUS ACCOMODATION BY MC3 LEANDROS
       KATSAREAS, USN

4.  I respectfully request that the above apply to any operational, non-operational, or training environment command that I am stationed, except in situations when there is a probable threat of CBRN attack (MOPP Level 2). At these times, I will shorten my beard to be as short as necessary to obtain a seal on a gas mask.

5.  I respectfully request to have the permanent approval of this waiver so that it follows me throughout my career as having to make this request over and over again at each new command I move to as doing so subjects me to a higher chance of discrimination by people who don't want an openly practicing Muslim in 'their Navy' and also is tantamount to discrimination by bureaucratic fiat as it requires me to go through an undue burden with the process of subjecting myself to an excessive amount of paperwork and takes several months to obtain approval and puts me in a situation of limbo. To elaborate on this further, I arrived at this command in April of 2019 and what you are reading is my first request to reach you since then. The formatting and other requirements make it very difficult for Sailors who have not been properly trained in Navy correspondence to obtain, especially with the work-loads that we have as Sailors.

6.  I respectfully request a Common Access Card sized card with this waiver approval clearly stated on it so that I don't require to fold and carry a piece of paper that can easily get lost.

7.  I respectfully request that this waiver is entered into my NSIPS profile under the religious accommodation section.

8.  My request is based on my sincerely held religious belief that all Muslim males genetically able to do so are required to grow a substantial beard as a sign of their devotion to God and further theological evidence for this can be found in enclosure 4. As a Muslim man, my beard is a defining feature of my masculinity and to be without a beard is both humiliating and emasculating beyond description. Furthermore, removing one's beard is considered a sinful form of self-mutilation and unnatural.

9.  I have made several attempts to obtain this waiver dating back to 2015 when I was going through the recruiting process. To show you how difficult it is for a Sailor to get this done I have included an explanation of all of my attempts in Enclosure 5.

10. I understand that there may be objections to my request. I have addressed these objections in Enclosure 6.

11.  The request that I am making meets the minimum requirements of my sincerely held religious beliefs. I enlisted in the Navy in good faith, after DoD Instruction 1300.17 was released with the reasonable expectation that I would be able to both serve my country and fulfill the requirements of my sincerely held religious beliefs without being forced to choose one or the other. This is my seventh attempt since 2015 to obtain such a waiver and I believe that I have acted in good faith and with immense patience on this matter since then.

Subj:   REQUEST FOR RELIGIOUS ACCOMODATION BY MC3 LEANDROS
        KATSAREAS, USN

12.  Should the CNP refuse to approve this request in its entirety, I respectfully request that the
Navy approves it temporarily and facilitates, at every level, my inter-service transfer to the
Army Reserves, where the requirements of my religious faith can be met in its entirety in
accordance with Army Directive 2017-03 (Policy for Brigade-Level Approval of Certain
Requests for Religious Accommodation) (enclosure 6) and where I can continue serving this
country honorably as an example to my future children, to my community, and to posterity
without having to forego my religious obligations and sincerely held religious beliefs.

In this case I respectfully request the included DD Form 368 (enclosure 7) be signed and
approved and be made valid for at least one year for the inter-service transfer process to be
completed.

This facilitation would also require the Navy to assist me in obtaining the necessary waivers to
ensure that any service-related injuries or medical conditions that I have accumulated during
my time in the Navy will not prevent me from being able to continue to serve in the Army and
that I am allowed to retain whatever paygrade I may have achieved at the time of my transfer,
even if I'm not being paid for it yet.

                                        L. Katsareas
                                        Katsareas, L.
                                        MC3   USN



**DEPARTMENT OF THE NAVY**
OFFICE OF THE CHIEF OF NAVAL OPERATIONS
2000 NAVY PENTAGON
WASHINGTON DC 20350-2000

1730
Ser N1/114106
9 Oct 18

From:  Deputy Chief of Naval Operations (Manpower, Personnel, Training and Education) (N1)
To:    SN Leandros Katsareas, USN
Via:   Commanding Officer, Naval Station Norfolk

Subj:  REQUEST FOR RELIGIOUS ACCOMMODATION THROUGH WAIVER OF
       GROOMING STANDARDS FOR FACIAL HAIR

Ref:   (a) NAVPERS 15565I
       (b) Your ltr of 6 Jul 18
       (c) COMNAVSAFECEN ltr 5100 Ser 00/0123 of 8 Mar 16
       (d) SECNAVINST 1730.8B
       (e) BUPERSINST 1000.22
       (f) DoD Instruction 1300.17 of 10 February 2009
       (g) ASN (M&RA) memo of 6 Jun 13

1.  Pursuant to references (a) through (g), your request to waive the requirements in Article
2201.2 of reference (a) for facial hair is partially approved.

2.  In making this decision, I reviewed the documents in reference (b), including the
endorsements by your chain of command and the guidance of the Commander, Naval Safety
Center in reference (c).

3.  In line with references (d) through (g), I am designated as the approval authority for requests
for religious accommodation.  As permitted by reference (d), I find that this accommodation is
the least restrictive means of accommodating your request while maintaining the Navy's
compelling interest in mission accomplishment.  You may wear a beard consistent with the
standards set forth in reference (e).  That is, you may maintain facial hair not to exceed 1/4 inch
in length.  The beard must not become unkempt in appearance and will not be manicured to any
style.  You will only maintain your beard while performing non-operational duties, including
non-operational training, while attached to Naval Station Norfolk.  Upon a change in mission,
duty or environment, and with a compelling government interest, your Commanding Officer may
request that you temporarily shave your beard.  At that time, you must revert to the standard set
forth in Article 2201.2 of reference (a).  Pursuant to references (d) and (f), you must again
request approval when you report to a new command.

4.  The Navy is a specialized community governed by a discipline separate from that of the rest
of society.  The importance of putting your ship and your shipmates ahead of yourself is of
particular significance in the Navy.  A waiver of Navy's Uniform Regulations would have a
detrimental effect on your military readiness, that of your unit and the safety of you and those
who serve beside you.  In line with reference (g), facial hair interferes with the proper seal of all
current Navy breathing apparatuses and can significantly increase risk to the individual.  The

Subj:   REQUEST FOR RELIGIOUS ACCOMMODATION THROUGH WAIVER OF
        GROOMING STANDARDS FOR FACIAL HAIR

Navy has a compelling interest in mission accomplishment, to include military readiness, unit
cohesion, good order, discipline, health and safety, on both the individual and unit levels.

5.   While every Sailor is welcome to express a religion of choice or none at all, our greater
mission sometimes requires reasonable restrictions.  Deviations from Navy standards must be
considered against how those deviations impact the Navy mission as a whole.

R. P. BURKE

Copy to:
CNRMA

2



**DEPARTMENT OF THE NAVY**
NAVAL STATION NORFOLK
1530 GILBERT STREET SUITE 2000
NORFOLK, VA 23511-2722

6320
Ser N00J/ 629
14 Aug 18

AMENDED FIRST ENDORSEMENT on SN Leandros Katsareas, USN ltr of 6 Jul 18

From:   Commanding Officer, Naval Station Norfolk
To:     Chief of Naval Personnel
Via:    Chief of Chaplains, N097

Subj:   REQUEST FOR RELIGIOUS ACCOMODATION BY SN LEANDROS
        KATSAREAS, USN

Ref:    (a) SN Katsareas' ltr of 6 Jul 18
        (b) DODINST 1300.17
        (c) SECNAVINST 1730.8B CH-1

Encl:   (1) Chaplain's Recommendation to Relax Grooming Standards in Regard to Religious
            Accommodation dtd 18 May 18
        (2) Special Request Chit
        (3) Original FIRST ENDORSEMENT ltr 6320 Ser N00J/564 of 16 Jul 18
        (4) Original SECOND ENDORSEMENT ltr 6320 Ser 00J/444 of 25 Jul 18

1. I have reviewed SN Katsareas' request to grow a beard in accordance with his religious beliefs. As demonstrated by enclosures (1) and (2), the Command continues to support SN Katsareas in his request to wear a beard in adherence to his sincerely held religious beliefs.

2. Allowing SN Katsareas to deviate from current Naval facial hair grooming standards does not give rise to any safety concerns while he is in his current position aboard Naval Station Norfolk; recommend approval.

3. After receiving guidance from NAVPERSCOM, this endorsement is re-routed via the Chief of Chaplains office with prior endorsements included as enclosures (3) and (4).

4. My point of contact for this matter is LT Caitlyn McCarthy, JAGC, USN, who can be reached at (757)322-3066 or via e-mail at Caitlyn.f.mccarthy@navy.mil.

R.C.M'Oan

R. C. McDANIEL

**FOR OFFICIAL USE ONLY - PRIVACY SENSITIVE**
Any misuse or unauthorized disclosure may result in both civil and criminal penalties

18 May 18

From:   Chapel Chaplain, Naval Station Norfolk
To:     Commanding Officer, Naval Station Norfolk

Subj:   RECOMMENDATION FOR PURSUANT TO RELAX GROOMING STANDARDS IN
REGARDS TO RELIGIOUS ACCOMODATION

Ref:   (a) SECNAVINST 1730.8B CH-1
       (b) DODINST 1300.17

1.   Seaman Leandros Katsareas is requesting to wear a beard based upon
his religious beliefs.  As a practicing member of the Muslim faith, he
contends that shaving is incompatible with his beliefs and infringes
on his free exercise of religion.

2.   I have extensively interviewed with Seaman Katsareas on the
tenants of his religious beliefs, as well as the importance of
grooming standards in the military.

3.   I find Seaman Katsareas, to be sincere in his beliefs.
Additionally, I find his understanding of the tenets of his faith to
be based upon long-established and practiced doctrine, and worship.

4.   Without consideration of any other command factors, I recommend
Seaman Leandros Katsareas receive a waiver from the grooming
standards, in accommodation of his faith traditions. If approved,
service member is to follow proper grooming standards in accordance
with CO guidance, and DOD instruction.

G. S. Woodard
G. S. Woodard
LT, CHC, USN

# SPECIAL REQUEST/AUTHORIZATION

SUPPORTING DIRECTIVE MILPERSMAN ARTICLES 1810-010 AND 1810-040

**PRIVACY ACT STATEMENT**
THE AUTHORITY TO REQUEST THIS INFORMATION IS CONTAINED IN 5 USC 301, AND FRIM E.O. 9397 DEPARTMENTAL REGULATIONS. THE PRINCIPLE PURPOSE OF THE INFORMATION IS TO ENABLE YOU TO MAKE KNOW YOUR DESIRE FOR ITEMS LISTED OR FOR SOME OTHER SPECIAL CONSIDERATION OR AUTHORIZATION. THE INFORMATION WILL BE USED TO ASSIST OFFICIALS AND EMPLOYEES OF THE DEPARTMENT OF THE NAVY IN DETERMINING YOUR ELIGIBILITY FOR AND APPROVING OR DISAPPROVING THE SPECIAL CONSIDERATION OR AUTHORIZATION BEING REQUESTED. COMPLETION OF THE FORM IS MANDATORY, FAILURE TO PROVIDE REQUIRED INFORMATION MAY RESULT IN DELAY IN RESPONSE TO OR DISAPPROVAL OF YOUR REQUEST.

**NAME:** KATSAREAS, LEANDROS

**RATE:** SN/E3

**SSN (LAST 4 DIGITS):** 8646

**SHIP OR STATION:** NAVAL STATION NORFOLK

**DATE OF REQUEST:** 06MAY2018

**DEPARTMENT/DIVISION:** UNACCOMPANIED HOUSING/R-61

**DUTY SECTION/GROUP:**

**NATURE OF REQUEST:** ☐ LEAVE ☐ SPECIAL LIBERTY ☐ SPECIAL PAY ☐ COMMUTED RATIONS ☒ OTHER (BELOW)

**NO. OF DAYS REQUESTED:**  **FROM (DATE AND TIME):**  **TO (DATE AND TIME):**

**DISTANCE (MILES):**  **MODE OF TRAVEL:** ☐ CAR ☐ AIR ☐ TRAIN ☐ BUS

**LEAVE ADDRESS:**

**TELEPHONE NUMBER:** 540-214-7540

**REASON FOR REQUEST:**
Respectfully request religious accommodation by way of a waiver of Navy grooming standards to grow a beard 3-4 inches from the bottom of the chin with a bulk of 2 inches when rolled and/or tied and a trimmed mustache for religious purposes as per my sincerely held religious beliefs and in accordance with DOD Instruction 1300.17. Please see attached supplementary information.

**SIGNATURE OF APPLICANT:** *L. Katsareas*

I AM ELIGIBLE AND OBLIGATE MYSELF TO PERFORM ALL DUTIES OF PERSON MAKING APPLIZATION.

**SIGNATURE OF STANDBY:**  **DUTY STATION:**

| RECOMMENDED APPROVAL | SIGNATURE AND RANK/RATE/TITLE/DATE |
|---|---|
| ☒ YES ☐ NO | CS(SW/SW) 8MAY18 |
| ☒ YES ☐ NO | NCC 8MAY18 |
| ☒ YES ☐ NO | UH DH 08MAY18 |
| ☒ YES ☐ NO | GSW..., LT, CHAPELRMTDIVO, 16May18 |
| ☒ YES ☐ NO | CMC 18JUN18 |
| ☒ YES ☐ NO | 19Jun208 |
| ☒ APPROVED ☐ DISAPPROVED | SIGNATURE: *G. C. McDaniel* 16 Jul 2018 |

**REASON FOR DISAPPROVAL:**

NAVPERS 1336/3 (REV. 08-05)   S/N: 0106-LF-130-0400

**FOR OFFICIAL USE ONLY**
**PRIVACY SENSITIVE**

※ IF APPROVED THE SVM UNDERSTANDS THE PROPER GROOMING OF BEARD FOR HIS RELIGIOUS PURPOSES.

ENCLOSURE (2)



**DEPARTMENT OF THE NAVY**
COMMANDER
NAVY REGION MID-ATLANTIC
1510 GILBERT ST.
NORFOLK, VA 23511-2737

IN REPLY REFER TO:
6320
Ser 00J/444
25 Jul 18

SECOND ENDORSEMENT on SN Leandros Katsareas, USN ltr of 6 Jul 18

From:  Commander, Navy Region Mid-Atlantic
To:      Chief of Naval Personnel

Subj:   REQUEST FOR RELIGIOUS ACCOMMODATION BY SN LEANDROS
          KATSAREAS, USN

1.  Forwarded, concurring with the recommendation of Commanding Officer, Naval Station Norfolk
that SN Katsareas be granted a waiver to grow a beard as articulated in reference (a).

2.  If you should need further assistance, please contact my Deputy Staff Judge Advocate, LT
Genevieve Loutinsky, who can be reached at (757) 322-2933 and genevieve.loutinsky@navy.mil.

C. W. ROCK

**DEPARTMENT OF THE NAVY**
NAVAL STATION NORFOLK
1530 GILBERT STREET SUITE 2000
NORFOLK, VA 23511-2722

6320
Ser N00J/ 564
16 Jul 18

FIRST ENDORSEMENT on SN Leandros Katsareas, USN ltr of 6 Jul 18

From:   Commanding Officer, Naval Station Norfolk
To:     Chief of Naval Personnel
Via:    Commander, Navy Region Mid Atlantic

Subj:   REQUEST FOR RELIGIOUS ACCOMODATION BY SN LEANDROS
        KATSAREAS, USN

Ref:    (a) SN Katsareas' ltr of 06 Jul 18
        (b) DODINST 1300.17
        (c) SECNAVINST 1730.8B CH-1

Encl:   (1) Chaplain's Recommendation to Relax Grooming Standards in Regards to Religious
            Accommodation did 18 May 18
        (2) Special Request Chit.

1. I have reviewed SN Katsareas' request to grow a beard in accordance with his religious beliefs. As demonstrated by enclosures (1) and (2), the Command continues to support SN Katsareas in his request to wear a beard in adherence to his sincerely held religious beliefs.

2. Recommend approval.

3. My point of contact for this matter is LT Caitlyn McCarthy, JAGC, USN, who can be reached at (757)322-3066 or via e-mail at Caitlyn.f.mccarthy@navy.mil.

B. N. ROSEN
Acting

FOR OFFICIAL USE ONLY - PRIVACY SENSITIVE
Any misuse or unauthorized disclosure may result in both civil and criminal
penalties

06 Jul 18

From: SN Leandros Katsareas, USN
To:   Commanding Officer, Naval Station Norfolk

SUBJ: REQUEST FOR RELIGIOUS ACCOMODATION BY SN LEANDROS KATSAREAS, USN

Ref:  (a) SECNAVINST 1730.8B
      (b) DoD INSTRUCTION 1300.17 Incorporating change 1 effective Jan 22, 2014
      (c) Army Directive 2017-03 (Policy for Brigade-Level Approval of Certain Requests for Religious
          Accommodation)

1. I consider myself both privileged and honored to have the opportunity to serve in the Navy. It is the
fulfillment of a dream of mine that I had for some years prior to enlisting.

I respectfully request a religious accommodation by way of a waiver of Navy grooming standards to grow
a beard between three to four inches from the bottom of the chin with a bulk of no greater than two inches
from the bottom of the chin when rolled and/or tied and a trimmed mustache for religious purposes as per
my sincerely held religious beliefs and in accordance with DOD Instruction 1300.17.

2. As the Navy does not have a standard policy with regard to this type of religious accommodation, I
respectfully request that I be allowed to follow the requirements of US Army Regulation 670-1, Wear and
Appearance of Army Uniforms and Insignia, Chapter 3 Appearance and Grooming Policies, 3-16
Religious Accommodations and B. Beard, which states that beards must either be no longer than two
inches in length from the bottom of the chin, or must be able to be rolled and/or tied to be no longer than
two inches in length from the bottom of the chin.

I am aware that sailors with Pseudo Folliculitis Barbae (PFB) are required to wear beards no longer than
¾" in length and are unable to groom the edges of these beards. However, this length would be too short
to be consistent with my religious obligations and would almost certainly give the impression to other
sailors that my beard is for the purpose of PFB, as opposed to being for my sincerely held religious
beliefs.

My religious obligation is to also keep a neat beard, and thus will require grooming the edges so that they
are neat. Were it only ¾" in length, it would most certainly result in my being stopped many times a day
by helpful and enthusiastic sailors who believe that my beard is for PFB purposes to tell me that it is out
of regulations by having the edges groomed neatly.

3. As an educated Muslim of more than seventeen years with several years of experience as a civilian
prison and hospital chaplain and lay religious leader or Imam in my community, I concur with the opinion
of the overwhelming majority of Muslim scholars who have ruled that having a beard is considered a
religious obligation for all males in Islam, providing that the male is physically able to grow one. I further
concur that to shave one's beard without circumstances requiring it as a necessity (ie safety or security) is
an act that is disobedience to God, an act of self-mutilation, and shameful.

4. There is a great deal of evidence in Islamic jurisprudence, scripture, literature to support the sincere belief that it is an obligation for men to have a beard and I have taken the time to include several in this request.

The first, according to Muslim scholars comes from when the first man, the Prophet Adam, peace be upon him, had just repented to God for his sins and the Angel Gabriel came to him and said to him "May God grant you a (long) life and bestow beauty upon you."

Adam then said "I understand what you mean by long life, however, I do not understand what you mean by beauty?"

And so, Adam prostrated in thanks to God and when he raised his head he made a supplication to God and said "Oh, God, increase in me the beauty [that you have promised me]", soon after he made that supplication, a beard appeared on his face.

When Gabriel saw what had happened, he touched the beard of Adam and said "This is in response to the supplication you made to your Lord, and it has been granted to you and your male offspring till the day of reckoning".

This narration is featured in Volume 16 of Allamah Majlisi's Bihar al-Anwar (Seas of Illuminations) on the authority of Ibn Masud.

Some more of the evidence used to justify this religious ruling is as follows:

The Prophet Muhammad, peace be upon him stated that there were Ten Acts of Fitra. Fitra in itself has no direct translation into English but can be explained as Primordial Human Nature. The Ten Acts of Fitra are acts that are obligatory on Muslim men, for the purposes of cleanliness and hygiene.

 Further scriptural evidence of the grooming requirements in Islam can be seen in the many prophetic narration collections seen below.

Narrated Ibn `Umar:  Allah's Messenger (ﷺ) said, "Cut the moustaches short and leave the beard (as it is) (Source: Sahih Al-Bukhari; MSA Reference: Vol. 7, Book 72, Hadith 781)

Ibn Umar said: The Apostle of Allah (ﷺ) ordered us to trim the moustache closely and spare the beard. (Source: Sahih Muslim MSA Reference: Book 2, Hadith 499)

Narrated by Aisha, Ummul Mu'minin: The Apostle of Allah (ﷺ) said: Ten are the acts according to fitrah (nature): clipping the moustache, letting the beard grow, using the tooth-stick, cutting the nails, washing the finger joints, plucking the hair under the arm-pits, shaving the pubes, and cleansing one's private parts (after easing or urinating) with water. The narrator said: I have forgotten the tenth, but it may have been rinsing the mouth. (Source: Sunan Abu Dawud; MSA Reference: Book 1, Hadith 0052)

Furthermore, using the evidence above, all of the major schools of jurisprudence in Islam, be they Hanafi, Shaafi, Hanbali, Maliki, Jafari, or Zaydi maintain that it is obligatory for males to have a beard.

The only real difference of opinion on the matter between the scholars has been the length of the beard required. Some Muslim jurists state that the beard should be no shorter than a fist length from the chin whilst others say that it can be shorter. Some even say that it should be longer than a fist.

My own belief and practice is that it is not required to be longer than a fist in length but should still be a substantial beard (not stubble) and to adhere to that, my own beard length has consistently been between 3-4 inches from the bottom of the chin since I was able to grow one (up until I shipped off to RTC).

5. I understand that there may be several potential objections to this request, I have attempted to address these below:

<u>Military Readiness and Safety:</u> I understand that a big concern about having facial hair, and in particular aboard a warship is safety.

It stands to reason that there are some circumstances that will require sailors to shave, such as being in a MOPP level where the threat of CBRN attacks is probable, that would also require even sailors with a medical no-shave chit for PFB to have a clean-shaven face.

Islam is very flexible in this sense as it allows for circumstances of safety to alter the requirement to have a beard and as such, scholars hold that there is no sin on a person not abiding by a religious obligation when matters of safety and self-preservation prevent them from doing so and as such, shaving the beard would be permissible, and according to my own personal beliefs, even obligatory in Islam in this case.

<u>Good Order and Discipline:</u> I understand a frequent objection to having a beard for religious purposes is that it can be perceived by some as being against good order and discipline. I don't fully understand how this could be the case when it was only in 1984 that beards were banned. Did those that came before us, including our Greatest Generation that fought the scourge of both the Nazis and the Imperial Japanese lack 'Good Order and Discipline'? I somehow doubt that anyone would seriously argue that.

Similarly, most modern Navies, including Australia and the United Kingdom, both modern and professional Navies allow their sailors to grow beards.

<u>Unit Cohesion:</u> I understand that another objection that has been raised about facial hair for religious purposes is unit cohesion. However, I do not see how my individual sincere religious beliefs of the requirement that I, as a Muslim maintain a beard can harm unit cohesion unless the belief within that unit is that Muslims should not be in the military in the first place and that we are at war with Islam (when we clearly are not) or that Muslims must hide our beliefs in shame of what some madmen have claimed to do in the name of Islam.

I am aware and share the criticism of the Muslim community for being underrepresented in our armed forces. I do believe though, that having overtly Muslim American sailors that are serving our nation would serve as a means to inspire the next generation of American Muslims to believe that despite the rhetoric of politicians, Muslims are welcome in the United States Navy and can carry out their patriotic duty to serve our great nation without feeling they have to shirk their religious obligations.

6. I am available to answer further questions and can be reached on my cellphone at (540) 214-7540 or via email at leandros.katsareas@navy.mil. Thank you for your consideration.

*L. Katsareas*
L. KATSAREAS
SN, USN