Exhibit M



**DEPARTMENT OF THE NAVY**
COMMANDER
NAVAL SURFACE FORCE ATLANTIC
1430 MITSCHER AVENUE
NORFOLK, VIRGINIA 23551-2494

5830
Ser N01L/O 35
18 MAR 2011

FINAL ENDORSEMENT or                    ltr of 5 Jan 11

From:  Commander, Naval Surface Force Atlantic
To:    File

Subj:  COMMAND INVESTIGATION INTO THE FIRE THAT OCCURRED ON USS
       WHIDBEY ISLAND (LSD 41) ON 5 OCTOBER 2010

1.  The findings of fact, opinions, and recommendations of the
Investigating Officer are approved with the following
exceptions:

     a.  Enclosures:

         (1) Enclosure 80 is corrected to read S9LSD-BH-SIB-
050/LSD-41.

         (2) Enclosure 88 is corrected to read CNSL Semi-Annual
PMS Inspection Announcement, message dated 072037Z Sep 10.

     b.  Recommendations:

         (1) Recommendations 1-3 are disapproved.  I will take
appropriate administrative action in addition to Recommendation
4.

         (2) Recommendations 5, 6, and 8-12 are assigned to
Commander, Amphibious Squadron SIX (CPR-6) as a matter under
their cognizance.

         (3) Recommendation 13 is modified to read "I recommend
             receive a letter of commendation for his superior
performance as nozzleman."

         (4) Recommendations 13, 24, and 25 are assigned to CPR-6
as a matter under their cognizance.

Subj:   COMMAND INVESTIGATION INTO THE FIRE THAT OCCURRED ON USS
        WHIDBEY ISLAND (LSD 41) ON 5 OCTOBER 2010

        (5) Recommendations 7, 14-17, and 19 are assigned to USS
WHIDBEY ISLAND (LSD 41).  Report the status 30-days from the
date of this endorsement.

        (6) Recommendations 20-22 are assigned to Afloat
Training Group Atlantic.  Report the status of the
implementation of these recommendations 60-days from the date of
this endorsement.

        (7) Recommendation 18 is modified to read "I recommend
that            be provided mentorship from a seasoned senior
IC-man to assist and support            as he re-establishes
OE06.  Recommendation 18 is assigned to the appropriate
Assistant Chief of Staff (ACOS) at Commander, Naval Surface
Force Atlantic.

        (8) Recommendation 23 is assigned to the appropriate
ACOS, Commander, Naval Surface Force Atlantic.

2.  The report of investigation will be retained at this command
in accordance with reference (a).  Any future correspondence
regarding this matter should be forwarded accordingly.




Copy to:
COMPHIBRON 6
LSD 41




21

5830
5 Jan 11

From:
To:     Commander, Naval Surface Force Atlantic

Subj:   COMMAND INVESTIGATION INTO THE FIRE THAT OCCURRED ON USS
        WHIDBEY ISLAND (LSD 41) ON 5 OCTOBER 2010

Ref:    (a)   JAGINST 5800.7E CH-2
        (b)   OPNAVINST 5100.19E
        (c)   NAVSEAINST 4790.8B

Encl:   (1)   Appointing letter
        (2)   USS WHIDBEY ISLAND Deck Log Sheet, 05 Oct 10
        (3)   USS WHIDBEY ISLAND Engineering Log, 05 Oct 10
        (4)   WHIDBEY ISLAND In-Port Duty Section, General Watch
              Bill, Engineering Watchbill and In-port Emergency
              Team (IET) Bill for 4-5 Oct 10
        (5)   Afloat Training Group, Norfolk, Training/Assessment
              Report for TSTA4, 24-28 May 10
        (6)   Afloat Training Group, Norfolk Damage Control
              Material Assessment Results of 11-15 Jan 10
        (7)   Muster and Ship Absences Report 4-6 Oct 10
        (8)   Engineering Department Eight O'clock Reports, 4 Oct
              10
        (9)   DCWS Engineering Mid-status Report, DC Closure Log
              and Inoperative Fitting Log, 1-5 Oct 10
        (10)  WHIDBEYISLANDINST 4791.1, Zone Inspection Bill and
              Zone Space Assignments
        (11)  Engineering Temporary Standing Order, 10-02, DC
              Console, Alarms in Cut-out, 5 Jan 10
        (12)  Photos taken by COMNAVSURFLANT Photographer and
              Assistant Investigating Officer on 7 Oct 10
        (13)  Photos taken by DCA on 5 Oct 10
        (14)  Photos of DC Central taken on 17 Dec 09
        (15)  Ship's Schedule Summary, 1 Mar 10 - 4 Oct 10
        (16)  NAVREG Mid-Atlantic, Final Investigation (Fire
              Inspector) Report, 7 Oct 10
        (17)  Summary of Interview of
        (18)  Summary of Interview of
        (19)  Summary of Interview of
        (20)  Summary of Interview of
        (21)  Summary of Interview of            Chief Engineer
        (22)  Summary of Interview of Navy Region Mid-Atlantic
              Fire and Emergency Services Response Team

Subj:  COMMAND INVESTIGATION INTO THE FIRE THAT OCCURRED ON USS
       WHIDBEY ISLAND (LSD 41) ON 5 OCTOBER 2010

(23) Summary of Interview of                        First
     Lieutenant and Command Duty Officer
(24) Summary of Interview o                     Duty
     Section Leader
(25) Summary of Interview of              , Sounding and
     Security
(26) Summary of Interview of            , Mid-Watch
     OOD until 0200
(27) Summary of Interview of                    . DCC
     Watch
(28) Summary of Interview of         , onboard Deck
     Seaman
(29) Summary of Interview of                  , Rapid
     Response Leader
(30) Summary of Interview of               , #2
     Investigator
(31) Summary of Interview of            ι, Rapid
     Response
(32) Summary of Interview of              , IET
(33) Summary of Interview of          #1 Nozzleman
(34) Summary of Interview of         ... ... ..., IET Team Leader
(35) Summary of Interview of              , Supply
     Officer
(36) Summary of Interview of            . DCA
(37) Summary of Interview of                 Repair
     Locker Officer
(38) Summary of Interview of                EDO
(39) Summary of Interview of              , Topside
     Rover
(40) Summary of Interview of          , Duty
     Section MOOW
(41) Summary of Interview of          , Duty
     Section
(42) Summary of Interview of            , IET
     Member and Deck Duty Section
(43) Summary of Interview of            , Duty Section
(44) Summary of Interview of            , IET
     Messenger and Duty Section
(45) Summary of Interview of                 , Duty
     Section and 1st Division Officer
(46) Summary of Interview of            OE06
     LPO/WCS
(47) Summary of Interview of             , OOD
(48) Summary of Interview of            , POOW
(49) Summary of Interview of           , BRF
(50) Summary of Interview of           Duty GM

2

Subj:  COMMAND INVESTIGATION INTO THE FIRE THAT OCCURRED ON USS
       WHIDBEY ISLAND (LSD 41) ON 5 OCTOBER 2010

(51) Summary of Interview of                        ,
     Operations Officer
(52) Summary of Second Interview of
(53) Summary of Interview of                  .. , POOW
(54) Summary of Interview of                             ,
     2nd Division LCPO
(55) Summary of Interview of                        , 1st
     Division LPO
(56) Summary of Interview of
           , 1st Division LCPO
(57) Summary of Second Interview of
(58) Summary of Interview of                    , 1st
     Division DCPO
(59) Summary of Interview of                    , Ship's
     Bos'n
(60) Summary of Second Interview of
(61) FLTMPS Grads of Selected Courses Listing
(62) USS WHIDBEY ISLAND, OPREP-3 Navy Blue, Initial and
     follow up messages
(63) TYCOM EDORM 3540.3A, Change 2, 16 Apr 09, listing
     required cold iron watches
(64) WHIDBEY ISLAND Command Indoctrination
     Schedule/Syllabus
(65) WHIDBEYISLANDINST 5100.6N, 27 Oct 00, Electrical
     Safety and Electrical Tool Issue Program.
(66) WHIDBEYISLANDINST 3120.1S, 7 Sep 10: CO's Standing
     Orders
(67) WHIDBEYISLANDNOTE 1300, 11 Jan 10: Assignment of
     Primary and Collateral Duties, Boards, and
     Committees
(68) DC Plate and drawn layout for Deck Office, 1-29-1-Q
(69) WHIDBEY ISLAND MOB-D Training Documentation.
(70) PQS Qualification Summary Sheets
(71) Investigator's Memorandums for Record dtd 12 Oct
     10, 9 Nov 10, 3 December 10
(72) DCA Request memorandum to CO regarding "Compartment
     Habitation Request," 24 Nov 09
(73) WHIDBEYISLANDINST 3540.22G, 21 Feb 08: Engineering
     Department Standing Orders
(74) Leadership Biographies
(75) Initial Test Results for the Self-Heating and
     Spontaneous Combustion of Linseed Oil, 01 Dec 10
(76) USS WHIDBEY ISLAND HAZMAT List and User List
(77) Safety Data and Material Safety Data Sheet (MSDS)
     for Linseed Oil
(78) WHIDBEY ISLAND Repair Cost Estimates as of 27 Oct
     10

3

Subj:  COMMAND INVESTIGATION INTO THE FIRE THAT OCCURRED ON USS
       WHIDBEY ISLAND (LSD 41) ON 5 OCTOBER 2010

(79) NSTM S9086-S3-STM-010, Ch 555
(80) S9LSD-BH-SIB-05f, Vol 3, part 2:  General
     Description of Electrical Equipment and Electrically
     Operated Auxiliaries
(81) S9LSD-BH-SIB-030/LSD-41, Vol. 2, part 2, Machinery
     Plant:  Auxiliary Machinery Piping Air Conditioning,
     Ventilation, and Heating Systems
(82) WHIDBEY ISLAND 3M Certification Assessments (3MCA)
     Report, 07
(83) WHIDBEY ISLAND 3MCA Report, 10 (including pre-
     look)
(84) Operations Department 21-25 June 10 3MCA Results
(85) Ship-wide PMS Performance Report through 5 Dec 10
(86) OE06 Maintenance Index Pages:
     - 4361/001-40.  Alarm, Safety, and Warning Systems
     - 4361/001-70.  Alarm, Safety, and Warning Systems
     - 4361/002-70.  Alarm, Safety, and Warning Systems
     - 4361/006-70.  Alarm, Safety, and Warning Systems
(87) MRC Card, SYSCOM: 49 8REF N, MIP: 4361, A-4d
(88) CNSL Semi-Annual PMS Inspection, message dtd
     072337Z SEP 10
(89) WHIDBEY ISLAND Semi-Annual PMS Inspection, 14 Oct
     10
(90) Recording of Interviews of 19 Oct 10
(91) Recording of Interviews of 09 Nov 10
(92) Recording of Interviews of 09 – 10 Nov 10
(93) Recording of Interviews of 12 Nov 10
(94) Recording of Interviews of 03 Dec 10

## Preliminary Statement

1.  Pursuant to enclosure (1) and in accordance with reference
(a), I conducted a command investigation into the facts and
circumstances surrounding the fire that occurred in USS WHIDBEY
ISLAND (LSD 41) on 5 October 2010.  This investigation was
initiated immediately after voice reports and unit situation
reports were received reporting the fire.  A request was made to
the Naval Criminal Investigative Service (NCIS) to investigate
the fire that same day.  After assuming the investigation, NCIS
requested that I delay all witness interviews until they
completed that portion of their investigation.  In the meantime,
I personally reviewed the Deck and Engineering logs as well as
the WHIDBEY ISLAND In-port Duty Section General Watch Bill,
Engineering Watch Bill, and In-port Emergency Team Bill for 5
October 2010.  I also toured the damaged spaces and was able to
interview the Commanding Officer, the Executive Officer (who was
also the prospective Commanding Officer at the time), the

4

Subj: COMMAND INVESTIGATION INTO THE FIRE THAT OCCURRED ON USS
      WHIDBEY ISLAND (LSD 41) ON 5 OCTOBER 2010

prospective Executive Officer, and the Command Master Chief. An
extension was granted in order to conduct interviews of first
responders and other personnel in WHIDBEY ISLAND once NCIS gave
clearance to proceed.  In addition, the extension was granted to
explore the feasibility that a spontaneous combustion of linseed
oil was the possible cause of the fire.  At no time did this
investigation proceed without permission from the lead NCIS
agent, Special Agent                    .  Similarly, there was no
interface between this investigation and the Safety Board
investigation.  To date, I have not viewed the NCIS report or a
sanitized version of the Safety Report.  :
                          Deputy Force Judge Advocate for
Commander, Naval Surface Force Atlantic, acted as legal
consultant to this investigation.

                        Findings of Fact

1.  At approximately 0340, smoke was reported to be emanating
from WHIDBEY ISLAND's forecastle.              notified the
Officer-of-the-Deck (OOD),            , of the smoke.  The OOD
notified Damage Control (DC) Central Watch,              .
[Encls (2), (16), (27), (47), (93)]

2.   .              contacted Sounding and Security (S&S),
       , via the ship's J-dial telephone.
not use the 1MC. [Encls (2), (25), (27), (91)]

3.              proceeded to the forecastle and saw heavy smoke
emanating from the starboard hatch.              then went to
the second deck, in the vicinity of Repair 2, and looked up the
ladder on the starboard side of the horse shoe.  He observed
that the Deck Department non-watertight door was on the deck and
the space was filled with smoke.  [Encls (2), (25), (91)]

4.              reported his observations to              .
The OOD was notified.  At approximately 0406, the OOD passed the
"white smoke" casualty over the 1MC.  The location of the fire
was not provided.  [Encls (2), (25), (27), (47), (91), (93)]

5.  At 0418, Navy Region Mid-Atlantic Fire & Emergency Services
(NRMAFES) was dispatched to the ship in response to a call from
Joint Expeditionary Base Little Creek (JEBLC) Port Operations.
[Encls (2), (16), (22), (90)]

6.  At ship's force request, NRMAFES personnel boarded the ship
and were escorted to the vicinity of the fire.  The actual

5

Subj:   COMMAND INVESTIGATION INTO THE FIRE THAT OCCURRED ON USS
        WHIDBEY ISLAND (LSD 41) ON 5 OCTOBER 2010

location of the fire was not yet confirmed.  [Encl. (2), (16),
(22), (90)]

7.  WHIDBEY ISLAND DC Central Watch Standers (DCWS) do not
believe they are authorized to use the installed 1MC to direct
S&S or Rapid Response.  [Encls (29), (31), (91)]

8.  The ship had significant smoke in spaces from the first deck
to the 02 level, and from paint issue aft to the forecastle.
[Encls (22), (24), (25), (27), (47), (91), (92), (93)]

9.  Zone ventilation was not secured by             .  After
he was relieved by the Engineering Duty Officer (EDO),
         ,                 did electrically isolate the Deck office
from the switch board located in Auxiliary Machinery Room 1.
[Encls (12), (13), (16), (27), (38), (91)]

10.  Rapid Response was led by            , with |           and
        .  Rapid Response was not provided a probable location of
the fire from S&S.  Instead, Rapid Response noticed fire when
they were investigating smoke emanating from the vestibule to
the forward AC&R room.  [Encls (29), (31), (33), (91), (92)]

11.        determined the location of fire when he observed
embers falling from the hatch access to the Deck office
passageway.  Rapid Response identified that they had an out-of-
control Class Alpha Fire.  [Encls (29), (31), (33), (91), (92)]

12.  Due to falling embers, the first rigged hose ruptured.  A
second hose was rigged, charged, and then used up a ladder to
the first deck passageway and Deck office.  This approach was
selected due to the location of Rapid Response when they
discovered the fire.  This approach was also below the heat
layer and effective in cooling the space.  [Encls (29), (31),
(33), (91), (92)]

13.  The nozzleman did eventually get to the top of the ladder,
using direct and indirect fire techniques to gain control of the
fire and reduce heat.  The hose team was able to extinguish
visible flames and cool the space.  [Encls (29), (31), (33),
(91), (92)]

14.  While initial responders were fighting the fire,
        and               joined the hose team.          and
his team effectively managed their rotations, including SCBA
management.          and other responders changed bottles
locally (in the vicinity of Repair 2) to support continued fire-

6

Subj:  COMMAND INVESTIGATION INTO THE FIRE THAT OCCURRED ON USS
       WHIDBEY ISLAND (LSD 41) ON 5 OCTOBER 2010

fighting efforts.  [Encls (29), (31), (32), (33), (42), (91), (92), (93)]

15.  After                    , and                  were relieved
from the primary attack hose, they went to the 01 level (the
deck directly above the deck office), aft paint issue, and
faked-out a 2 ½" hose (the closest available).  All three
entered the passageway and actively fought the fire, moving
forward towards the vent cleaning shop and fan room above the
deck office.  When the heat and smoke became too great and they
could no longer see flames, they backed out from the space.
[Encls (25), (31), (33), (91), (92)]

16.  The Supply Officer,            , along with            and
     , took the same 2 ½" hose and re-entered the 01 level
passageway, forward the athward ship breezeway.  While
progressing to the vent cleaning shop (01-29-7-Q),
opened the Training office (01-43-1-A) and storerooms (01-39-1-A
and 01-35-3-A) to verify that the fire was not spreading.
[Encls (31), (32), (35), (91), (92)]

17.  The fire spread to the R-Division Fan Room located directly
above the Deck Office.  Fire was observed in ventilation when
the fire department hose team was in the Deck Office.  The fire
in the R-Division fan room was extinguished by the base fire
department.  (Encls (12), (13), (22), (90), (91), (92)]

18.  WHIDBEY ISLAND's Damage Control Assistant (DCA) arrived at
approximately 0515 and assumed control of the fire at
approximately 0522.  After establishing positive control of the
fire, DCA restored lighting on the turntable and moved control
efforts to the turntable.  Prior to his arrival, there was no
effective centralized command and control of fire-fighting
efforts.  [Encls (2), (36), (92)]

19.  The Class Alpha fire was contained and extinguished at
approximately 0530.  Final extinguishment of the fire in the
Deck office (1-29-1-Q) was accomplished by NRMAFES.  NRMAFES
determined that no further support was needed at 0710.  [Encls
(2), (16), (22), (62), (90)]

20.  The hose team fire-fighting dress-out consisted of a helmet
(with no light), flash gear, gloves, working coveralls, and
boots.  Fire-fighting ensembles (FFEs) were not used by Rapid
Response, the hose team reliefs, or other personnel responding
to the fire.  The lack of FFE and the intense heat prevented the

Subj: COMMAND INVESTIGATION INTO THE FIRE THAT OCCURRED ON USS
      WHIDBEY ISLAND (LSD 41) ON 5 OCTOBER 2010

nozzleman and the #1 hoseman from fully accessing the Deck
office. [Encls (25), (31), (33), (36), (91), (92), (93)]

21.          , at          prompting, assumed duties of
Repair 4 Locker Officer, with          acting as the locker
leader. They did contribute to assisting in dressing-out fire
party reliefs; however, they did not put fire party members in
FFEs. [Encls (4), (37), (92)]

22. Donning FFEs is a scene leader's decision and no request
was received by          or          from the scene leader.
[Encls (37), (92)]

23. Neither          or          were on the watchbill as
in-port emergency team (IET) members.          was assigned
as the Anti-Terrorism Watch Officer. The ship's IET watchbill
does not assign a Repair Locker Officer. [Encls (4), (37),
(92)]

24. The current Executive Officer,          , had recently
reported as the prospective Executive Officer and was living in
WHIDBEY ISLAND. He did not respond to the scene despite seeing
smoke in the forecastle.          was retrieved from his
stateroom by the CHENG/DCO after 0500. [Encls (20), (21), (90)]

25. CHENG/DCO allowed himself to be removed from the DC problem
immediately after arriving on the ship. [Encl. (21), (90)]

26. The fire, originating in the Deck office (1-29-1-Q), spread
forward and aft along the first deck passageway and vertically
to the R-Division fan room (01-29-1-Q). As of 27 October 2010,
damage was estimated at $9 million. [Encls (2), (3), (9), (12),
(13), (78)]

27. The Final Investigation Report from NRMAFES established the
point of origin as the rear left side of the Deck office. Burn
patterns and metal damage indicated a long burn time. Nothing
distinguishable was located that could be linked to the cause of
the fire. [Encl (16)]

28. DC Central and the EDO did not order, plot, or manage
primary or secondary fire and smoke boundaries. Nor did they
establish a SCBA change-out area. The CDO also did not order
these actions. Prior to DCA's arrival, any efforts in these
areas were ad hoc, driven by          and other IET members.
[Encl (23), (35), (36), (37), (38)]

8

Subj:   COMMAND INVESTIGATION INTO THE FIRE THAT OCCURRED ON USS
        WHIDBEY ISLAND (LSD 41) ON 5 OCTOBER 2010

29.  DC Central, EDO, CDO, and the OOD failed to effectively use
the ship's 1MC to communicate the status of the fire, or to
direct the actions to be taken to set fire and smoke boundaries.
[Encls. (23), (36), (38), (47), (92)]

30.  WHIDBEY ISLAND's ventilation systems are designed on a
zonal concept, with the capability to secure all ventilation
located on DC Central Console.  [Encls (80), (81)]

31.  ATGN provided a Tailored Ship Training Availability (TSTA)
for IETs 1, 2, and 3; the Flying Squad (FS); and Repair Lockers
(R) 2, 4 and 5 in May 2010.  Fire and smoke boundary
establishment were assessed as not effective.  [Encl. (5)]

32.  The installed sound powered phone systems were not
effectively used by Rapid Response, DCWS, OOD, CDO, DCA, DCO,
which resulted in Rapid Responders serving as messengers.
Ship's force did not understand how to "jumper" SP phone
circuits, nor did they understand the capabilities of the ship's
installed X50J (AFFF) circuit.  [Encls (23), (35), (36), (37),
(38), (47), (80), (81)]

33.  WHIDBEYISLANDINST 3540.22G, Engineering Department Standing
Orders, Order Number 15, Damage Control Watch Supervisor
Routine, provides succinct guidance for effective functioning of
DC Central.  Standards and procedures described are not adhered
to.  [Encl. (73)]

34.  DC Console was not fully operational and was replete with
material issues such as:  cut-out, disabled, or non-operable
alarms; IC Alarm switchboards were set to audible mode only; and
the DC Console had inoperable lights.  There was no capability
to monitor the fire main, reliably secure ventilation, or
operate other control functions.  [Encls (14), (71)]

35.  The DC Watch Stander (DCWS) Engineering Mid-Status Report
of 04 October 2010 listed the following alarms in either stand-
by or cut-out:  eye wash (2-121-1-Q and 6-98-2-L); flooding (4-
6-0-W); HI-TEMP Alarms (6-98-1-Q, 04-52-3-Q, 04-35-2-Q, and 03-
41-1-A); and Compressor Fail (5-53-1-Q).  [Encl. (9)]

36.  Engineering Department Eight O'clock Reports for 04 October
2010 did not include a listing of any inoperative DC Central
alarms, controls, or monitoring systems.  The reports were not
signed or initialed by Engineer, EDO, or CDO.  There is no
indication that the reports were routinely passed to, or

Subj:  COMMAND INVESTIGATION INTO THE FIRE THAT OCCURRED ON USS
       WHIDBEY ISLAND (LSD 41) ON 5 OCTOBER 2010

reviewed by, the Commanding Officer or Executive Officer.
[Encl. (8)]

37.  WHIDBEY ISLAND Temporary Standing Order (TSO) 10-02, dated
05 January 2010, identifies the following HI-TEMP alarms as OOC:
02-59-2-L, 04-35-2-Q, 02-49-4-L, 02-51-2-L, and 01-35-2-L.
These alarms are listed as the "only" inoperative alarms.
[Encl. (11)]

38.  My inspection of the IC Alarm switchboard revealed that
approximately 51 alarms or sensors were not operating correctly.
DC Central console had 31 obvious discrepancies, including using
the light cover securing bar to permanently depress the alarm
acknowledgement button.  With the alarm permanently depressed,
this prevented watch standers from assessing new alarms.  [Encls
(11), (71)]

39.  The DCWS did not have a comprehensive listing of
discrepancies or a mitigation plan to support DC efforts.
[Encls (11), (71)]

40.  WHIDBEY ISLAND did issue casualty reports (CASREPs) on the
IC Alarm panels and switchboards; however, my DC Central
assessments on 09 November 2010 and 03 December 2010 indicated
that ship's force effort at correction was minimal. [Encl. (71)]

41.  Afloat Training Group-Norfolk (ATGN) provided a DC Material
Assessment (DCMA); however, DCMA does not assess or inspect DC
Central control and alarm systems. [Encl. (6)]

42.  A watchbill signed by the Commanding Officer could not be
produced.  The watchbill from the quarterdeck was provided; it
is unsigned.  The requirement for a signed watchbill is in
support of anti-terrorism force protection (ATFP) procedures.
[Encls (4), (18), (19), (21), (24)]

43.  The Senior Watch Officer is the Chief Engineer/Damage
Control Officer (CHENG/DCO).  The Section Leader writes
watchbills and approves changes to the watchbill.  [Encls (4),
(18), (21), (24)]

44.  No one in the duty section stated that they saw a signed
watchbill.  Not all personnel in duty section are assigned
duties.  Minimum watches and IET duties were sourced.  [Encls
(4), (18), (19), (21), (24)]

Subj:  COMMAND INVESTIGATION INTO THE FIRE THAT OCCURRED ON USS
       WHIDBEY ISLAND (LSD 41) ON 5 OCTOBER 2010

45.  Deck Department leadership is confused over who is
responsible for the Deck Office. The 1st Division Officer
adamantly believes it is a 2nd Division Space.  WHIDBEYISLAND
INST 4791.1 establishes it as a 1st Division responsibility.
[Encls (10), (60)]

46.  The ship's Zone Inspection Instruction and program is in
place.  Neither the Commanding Officer nor the Executive Officer
inspected the Deck Office from April to present.  [Encl. (10)]

47.  The ship's training schedule was adequate.  [Encl. (15)]

48.  Ship had adequate firefighting school graduates.  [Encl.
(61)]

49.  The ship did assign adequate engineering watches per
CNSFINST 3540.3A, CH-2, 16 Apr 1009, Engineering Department
Organization and Regulations Manual.  [Encls (4), (63)]

50.  WHIDBEY ISLAND Indoctrination Schedule includes lessons on
HAZMAT, NAVOSH, 3M, and Basic DC.  [Encl. (64)]

51.  WHIDBEY ISLAND did conduct routine IET Training.  [Encls
(17), (18), (19), (21), (23), (29), (31), (32), (36)]

52.  WHIDBEY ISLAND did adequately track PQS qualifications.
[Encl. (70)].

53.  DCA provided a memorandum requesting the Commanding
Officer's authorization of DC Storage in the Fan Room (01-29-1-
Q); however, the request did not include the Fan Room in the
listing.  [Encl. (72)]

54.  On 04 October 2010, one gallon of Linseed Oil, about one-
third full, was placed under the 2nd Division LCPO's desk between
1800 and 1830 by              .  Rags were placed on top of the
can.  This practice was common with storage items rotating
between the Deck office and Boatswain Locker.  First Lieutenant,
1st Division Officer, and            were aware of this practice.
The Leading Chief Petty Officer (LCPO) and Ship's Boatswain
claimed a lack of knowledge of this practice.  [Encls (23),
(44), (45), (52), (54), (56), (59)]

55.  Linseed Oil is susceptible to spontaneous combustion.  Per
reference (b), Linseed Oil is not authorized on surface ships.
[Encl. (76)]

11

Subj:   COMMAND INVESTIGATION INTO THE FIRE THAT OCCURRED ON USS
        WHIDBEY ISLAND (LSD 41) ON 5 OCTOBER 2010

56.  First Lieutenant procured Linseed Oil with his own money to
better support presentation during a port visit to Baltimore.
[Encl. (57)]

57.  The Navy Research Lab - Chesapeake Beach supported a short-
notice request to analyze and confirm the possibility of linseed
oil spontaneously combusting under conditions similar to those
present in Deck Office on the night and morning of the fire.
[Encl. (75)]

58.  Analysis established that significant heat was generated in
the rags and on the can during the experiment.  The experiment
did not produce flames.  [Encl. (75)]

59.                      understanding of the departmental 3M
responsibilities is that he is not included for accountability
purposes.  This is incorrect.  Reference (c) states that the
"Department LCPO shall be accountable to the Department Head for
the proper operation of the 3-M system in their department."
Similarly, "the Division LCPO shall be accountable to the
Division Officer for the proper operation of the 3-M system
within their division."  [Encl. (56)]

60.  ATGN conducted a 3M Certification Assessment (3MCA) of
WHIDBEY ISLAND from 18-22 June 2010 with satisfactory results;
however, ineffective Administration Effectiveness Review and
Equipment file Validation Verification programs were
specifically identified discrepancies. [Encls (46), (83), (84)]

61.  OE06 (the work center responsible for conducting PMS on DC
Central control and HI-TEMP alarms, among other equipment)
received a 23.6% in Recorded Accomplishment Rate (RAR) and
37.18% in Administrative Effectiveness Review (AER).  [Encls
(83), (84)]

62.  OE06 received zeros for current MIP pages, pen/ink changes,
incorrect line-outs, work-center deck of MRCs, EGL management,
EGLS filled out, situational requirement management, scheduling,
and IEM.  [Encls (83), (84)]

63.  WHIDBEY ISLAND's 3MCA was conducted underway.  As a result,
ATGN's 3MCA report was not provided to the ship at the 3MCA
debrief.  The naval message erroneously stated that it was
provided.  An electronic copy was sent to the ship on 01 July
2010 and instead of a formal debrief, daily debriefs were
conducted.  [Encl. (83)]

Subj:  COMMAND INVESTIGATION INTO THE FIRE THAT OCCURRED ON USS
       WHIDBEY ISLAND (LSD 41) ON 5 OCTOBER 2010

64.  Normally, three major items are provided to a ship at the
completion of 3MCA: a detailed, hand-written report of
deficiencies used by ATGN inspectors, with specific items noted
for ship's force use and follow-up; a naval message outlining
the ship's overall performance on the 3MCA; and an electronic
"packet" containing all reports and spread-sheets, including the
naval message listed above.  [Encl. (83)]

65.  My review of WHIDBEY ISLAND's 3M Sked program revealed that
from the beginning of the calendar year, and as of 11 October
2010, approximately 439 PMS checks were not done by OE06.  The
ship's 3M Sked Program Cycle Board is functional.  The Sked
Program Completion Report is replete with non-accomplished PMS
checks.  [Encls (46), (83), (84)]

66.  The current OE06 work center supervisor (WCS) is
        .  His first day of work was 04 October 2010.  Prior to
his arrival, OE06 WCS was              .  [Encl. (46)]

67.  The Operations Officer,                 , reported in
June 2010.  He claimed that he was not aware of the major PMS
issues in OE06 identified by ATGN.  When shown the MRC
accomplishment report, he was not sure if those checks had been
completed.  [Encl. (51)]

68.  In the 3MCA process, the Total Weighting Factor (TWF) in
the Command (Department) Total Score (CTS) is based on the
number of completed PMS checks.  If a division does not do the
checks, then the TWF is lower, thereby enabling stronger
division's TWF to mask the missed checks in the final score.
This enabled Operations Department to have an overall RAR of
90.16%, while OE06 had a RAR of 23.68%.  [Encl. (84)]

69.  The cause of the fire cannot be conclusively determined.
[Encls (16), (75)]

                            Opinions

1.  Since the cause of the fire cannot be conclusively
determined, the two theories set forth by the NRMAFES Fire
Inspectors and the Navy Research Laboratory – Chesapeake are
equally probable.  Linseed Oil, spray paint cans, and perhaps
other flammables were under the LCPO's desk and would have
certainly added to the intensity of the fire, but causation of
fire was not, with certainty, established.  [FF (27), (54),
(55), (56), (57), (58), (69)]

                              13

Subj:   COMMAND INVESTIGATION INTO THE FIRE THAT OCCURRED ON USS
        WHIDBEY ISLAND (LSD 41) ON 5 OCTOBER 2010

2.   The OOD failed in his duties when he did not immediately
call away "white smoke."  By opting to use a very slow telephone
to ask for an S&S investigation and then have the S&S report to
DCWS, who in turn reported the findings to the OOD, the OOD
effectuated a delay that affected Rapid Response Team's ability
to locate and respond to the fire.  [FF (1), (2), (3), (4), (7),
(9), (29), (32)]

3.   DCWS's failure to use the 1MC at any time to expedite the
notification process created delays that significantly affected
Rapid Response Team's ability to respond to the fire.  [FF (2),
(4), (7), (29), (32)]

4.   The failure of DCWS to secure the ventilation allowed the
fire to actively feed until the base fire department
extinguished the fire. [FF (9), (30), (34)]

5.   The DCWS, EDO and CDO failed to effectively order or
establish smoke and fire boundaries around the source of the
fire, which allowed the fire to spread from Deck Office to the
R-division fan room.  [FF (17), (28), (29)]

6.   The Rapid Response Team and IET Hose Team, once notified,
reacted quickly and professionally.  Their efforts, combined
with the base fire department, were the driving force in
controlling and extinguishing this fire. [FF (9), (10), (11),
(12), (13), (14)]

7.   Comprehensive Damage Control Command and Control was not
established until the ship's DCA arrived, and assumed fire-
fighting efforts from the EDO.  [FF (18)]

8.   Ship's force's knowledge and use of installed sound powered
phone systems was unsatisfactory which led to an arcane process
where Rapid Response/IET members had to leave the scene to act
as messengers to DC Central.  [FF (7), (29), (32)]

9.   The ship's Heat Sensing Device (HSD) in the Deck Office did
not work, was ignored, or was in cutout so it would not be
noticed.  OE06 is responsible for these systems.  [FF (34),
(35), (37), (38), (61)]

10.   Even more significant than the OOD's slow response was the
fact that there was no response to the HSD alarm in the Deck
Office.  This directly contributed to a long gestation period
for the Alpha Fire. [FF (34), (35), (37), (38)]

Subj:  COMMAND INVESTIGATION INTO THE FIRE THAT OCCURRED ON USS
       WHIDBEY ISLAND (LSD 41) ON 5 OCTOBER 2010

11.  The general condition of DC Central alarms and console is
unsatisfactory and should have been obvious to the CO, XO,
DCO/CHENG, Operations Officer, DCA, and any other khaki walking
in to DC Central. [FF (34), (35), (36), (37), (38), (39), (40),
(41)]

12.  The claim by ship's force that all of the deficiencies
"just happened" is not supported by photographs taken on 17
December 2009, or the assessment I made after the fire.  [FF
(36), (37), (38), (39), (40), (41)]

13.  Alarms not being worked by MHI and in completely different
zones are still deficient.  During my last tour of DC Central,
DCWS could not (and did not know how to) monitor the fire main
on the 03 level loop, or secure ventilation in any zone of the
ship.  Nor did he know how to secure ventilation locally.  All
DC Central Console zone ventilation shut down was tagged out.
Simple ship's force duties, such as replacing out light bulbs,
were not done.  DCWS was under the impression that MHI Ship 51
was/is fixing "everything."  There is no "list" that DCWS can
look at to determine what the contractors or ship's force is
working on. [FF (34), (35), (38), (39), (40)]

14.  WHIDBEY ISLAND ship's force systematically ignores their DC
Central Watch station instruction.  [FF (33)]

15.  OE06 PMS program failure was never clearly articulated to
the ship, ADCOM ISIC, or TYCOM and instead was buried in a very
large 3MCA report.  The ship's 3MC was aware of OE06's
deficiencies.  [FF (60), (61), (62), (63), (64), (65), (67),
(68)]

16.  The Operations Officer (newly reported in June 2010) and
the ship's 3MC failed in their duty to identify and notify all
concerned of this dire failure.  The Operations Officer does not
understand the significance of IC systems on a ship, whether
they are in Operations, Damage Control, Engineering, or Ballast
Operations.  [FF (34), (40), (41), (60), (61), (62), (67), (68)]

17.  Current OE06 WCS,              , reported the day of the fire
and is not responsible for the dire state of OE06.  Unlike the
ship's current 3MC, who is an ICC, he understood the
significance of the non-accomplished PMS checks on other IC
systems, such as main control and ballast systems.  [FF (66)]

18.  Deck Department is splintered.  Ship's First Lieutenant,
First Division Officer, Petty Officers, and Seamen knew of the

15

Subj:   COMMAND INVESTIGATION INTO THE FIRE THAT OCCURRED ON USS
        WHIDBEY ISLAND (LSD 41) ON 5 OCTOBER 2010

common use of Linseed Oil, and were very forthcoming in
providing information in this area.  Ship's BMCS and CWO4
claimed to not be aware.  In addition, BMCS and CWO4 are under
the erroneous impression they have little to no role in Deck
Departmental/Divisional PMS.  [FF (54), (56), (59)]

19.  The manufacturer's warning of Linseed Oil "spontaneous
combustion" was not heeded and the provided disposal guidelines
were not followed which is why the Linseed Oil cannot be
excluded as a possible cause of fire.  [FF (54), (55), (57),
(58)]

20.  There was an apparent lack of effort to improve on
deficiencies noted during fire-fighting training, particularly
in establishing smoke and fire boundaries.  ATG input appears to
have been systematically ignored.  [FF (28), (29), (31)]

21.  Watchbill management is ineffective.  While the CO, XO,
SWO, and Department Heads believed there was a signed watchbill
due to recent ATFP guidance, it could not be produced and was
not used as a practical matter.  [FF (42), (43), (44)]

22.  The Watchbill coordinator believed that not assigning all
personnel in section to duties, including additional personnel
to IET, was acceptable.  [FF (43), (44)]

<u>Recommendations</u>

1.  I recommend that                    , the former Commanding
Officer, be taken to nonjudicial punishment for dereliction of
duty, specifically for ineffective oversight of Damage Control
Central installed alarms and monitoring systems and the failure
of OE06 PMS as a functioning work center.

2.  I recommend that                    , the new Commanding
Officer and the Executive Officer at the time of the fire, be
taken to nonjudicial punishment for dereliction of duty,
specifically for ineffective oversight of Damage Control Central
installed alarms and monitoring systems, ineffective oversight
of duty section training (particularly C2 aspects), and the
failure of OE06 PMS as a functioning work center.

3.  I recommend that                    , the Operations Officer,
be taken to nonjudicial punishment for dereliction of duty for
the condition of OE06 and his failure to notify the chain of
command after assuming his duties and/or receiving his
department ATG 3MCA report.

16

Subj:   COMMAND INVESTIGATION INTO THE FIRE THAT OCCURRED ON USS
        WHIDBEY ISLAND (LSD 41) ON 5 OCTOBER 2010


4.  I recommend that a Letter of Instruction (LOI) be issued to
                   , the current Executive Officer, for failing to
meet the leadership standards demanded and expected of a Surface
Warfare Officer.  As the PXO, living in a stateroom with a non-
functional 1MC, LCDR Stanfield made no effort to have the 1MC in
his stateroom repaired.  His subsequent use of the broken 1MC as
an excuse for not responding to the fire is sub-par.  Further,
the CHENG (who drove in from home to respond to the fire) had to
divert his attention as DCO to personally "fetch" the ship's
prospective Executive Officer.                further failed as
a leader by "hanging out" with the duty section because he
"hadn't officially" taken over as the Executive Officer.

5.  I recommend that a LOI be issued to                     ,
First Lieutenant, for his ineffectiveness as the Command Duty
Officer and for procuring and using non-authorized and hazardous
material, the linseed oil, for shipboard use.  I do not
recommend disciplinary action for the simple reason that
        was the only officer who was completely forthcoming
during this investigation.  He provided assistance without
hesitation and was determined to understand the cause and
identify his own shortfalls.

6.  I recommend that a LOI be issued to           , DCO, for his
inability to ensure DC Central systems operate according to
standards and that his orders are followed by the watch
standers.  Also, his oversight as Senior Watch Officer was not
effective.  As both DCO and SWO, his response to initial
indications of "white smoke" was simply unsatisfactory.

7.  I recommend that the Chief Engineer be relieved as the
Senior Watch Officer.  His copious hard administrative
requirements simply do not afford him the time required to
effectively oversee inport duty sections.

8.  I recommend that a LOI be issued to                     ,
Ship's Bos'n, for his failure to address deviations from Navy
standards on the deck plates, including PMS and HAZMAT issues.

9.  I recommend that a LOI be issued to               , 1st
Division LCPO, for his failure to address deviations from Navy
standards on the deck plates, including PMS and HAZMAT issues.

10. I recommend that a LOI be issued to             , the
ship's Damage Control Assistant, for the material condition of
DC Central; ineffective supervision of DCWS; ineffective

                              17

Subj:  COMMAND INVESTIGATION INTO THE FIRE THAT OCCURRED ON USS
       WHIDBEY ISLAND (LSD 41) ON 5 OCTOBER 2010

training of IET, to include Command and Control; lack of DCWS
training; and his and DCWS lack of knowledge of the installed
ventilation, electrical isolation, use of 1MC in emergencies,
and use of installed SP Phone systems.  While his ability to
lead and organize chaos was very good, his knowledge of the ship
was poor.

11.  I recommend that a LOI be issued to            , the OOD on
the morning of the fire, for failing to immediately call away
the first report of "white smoke" which resulted in a possible
26-minute delay before fire-fighting efforts began.

12.  I recommend that a LOI be issued to            . for failing
to read the linseed oil warning, not complying with disposal
instructions, and for blindly obeying his chain of command when
told to improperly dispose of hazardous material.

13.  In addition to            receiving a LOI for improperly
handling hazardous material, I recommend            be
commended for his superior performance as nozzleman. He
succeeded in getting the Class Alpha fire under control.

14.  I recommend removal of            qualification as
DCWS until he demonstrates effective knowledge of systems and
emergency response procedures, to include all DCWS in his re-
qualification process.

15.  I recommend removal of            qualification as EDO
until she can demonstrate the ability to serve as DCA, in DCA's
absence.  All EDO training should be included in her
requalification training process.

16.  I recommend immediately changing DCWS rules to allow use of
the 1MC to direct S&S to investigate an alarm.  Walkie-talkies
are an inefficient means to manage S&S.  S&S should make rounds
and return to DCC.

17.  I recommend that DCWS and EDO be fully assessed during IET
drills.

18.  I recommend that            be provided immediate
assistance from a seasoned senior IC-man (preferably LDO) to
supervise, assist and work in reestablishing OE06 as a
functioning PMS work center.  One of the senior IC-man's key
duties should be to protect OE06 from senior WHIDBEY ISLAND
leadership until it is functioning well on a routine basis.  I
do not believe the CO, XO, Operations Officer, CHENG, or 3MC are

18

Subj:  COMMAND INVESTIGATION INTO THE FIRE THAT OCCURRED ON USS
       WHIDBEY ISLAND (LSD 41) ON 5 OCTOBER 2010

capable of providing this assistance.  They do not understand
the systems, and will impede a rapid reset.  After OE06 is re-
established, I recommend it be allowed to simply "start over."

19.  I recommend that the OE06 work centers be returned to the
Engineering Department as IC01.

20.  I recommend that ATG add a DC Central assessment to DCMA.
The functionality of this can be completed in less than one
hour.

21.  I recommend that ATG provide a plain language paragraph (in
the 3MCA report) that specifically identifies "failed" work
centers.  I am not convinced that the current process, while
clearly identifying shortfalls on deck plates, alerted the ship,
Commodore, or TYCOM to the conditions found in OE06.

22.  I recommend that ATG re-assess the plethora of
administrative reports in the current process and eliminate
reports that distract from deck plate execution of PMS.

23.  I recommend that Commander, Naval Surface Force Atlantic
issue an ALSURFLANT message reiterating the prohibition of
linseed oil from shipboard use, as well as reiterating standing
Navy policy regarding the use of unauthorized HAZMAT.

24.  I recommend that            ,            ,            ,
                      and            receive Navy Commendation
Medals for their superior perrormance while fighting a Class
Alpha fire, which imposed great risk to their own safety.

25.  I recommend letters of commendation for            and
         for stepping forward and establishing Repair 4, although
neither was assigned to this duty.