**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**EDMUND DI LISCIA**, *et al.*,

*Plaintiffs*,

v.

**PETE HEGSETH**, in his official capacity as Secretary of the United States Department of Defense, *et al.*,

*Defendants*.

Civil Action No. 1:21-cv-01047-TJK

**STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO ENFORCE STIPULATION**

(Hearing Requested)

## TABLE OF CONTENTS

**Page**

INTRODUCTION ..... 1

BACKGROUND ..... 2

STANDARD FOR GRANTING INJUNCTIVE RELIEF ..... 9

ARGUMENT ..... 9

I. The Court should enforce the parties' Stipulation. ..... 9

A. Defendants' actions contravene the Stipulation. ..... 9

B. OS1 Shoyeb will suffer imminent, irreparable harm if the Stipulation is not enforced. ..... 12

C. The balance of harms and public interest favor OS1 Shoyeb. ..... 13

CONCLUSION ..... 16

## INTRODUCTION

Threatening to forcibly shave a Jewish sailor at sea is what started this litigation over five years ago. And yet Defendants are again seeking to force a sailor to cut his religious beard without justification. To avoid the risk of an adverse ruling five years ago, Defendants relented with respect to the Jewish sailor, agreeing to accommodate him and two other Muslim Plaintiffs who already had beards. Plaintiff OS1 Shoyeb had to file a motion for preliminary injunction seeking a similar accommodation to grow out the religious beard required by his Muslim faith.

Once the briefing was completed, and just before the hearing, Defendants agreed in a joint stipulation (the "Stipulation") that OS1 Shoyeb could maintain a four-inch beard "while in a duty status for the pendency of the litigation." Joint Mot. to Withdraw PI, Ex. A (Dkt. 30-1). Ever since, the litigation has been stayed and OS1 Shoyeb has been bearded while Defendants try figuring out their religious-beard policy. Five years in, after delay upon delay, the answer remains unclear. But the Stipulation still squarely governs OS1 Shoyeb. Now, in direct contravention of the Stipulation's express terms, Defendants are again threatening to force OS1 Shoyeb to cut his beard in violation of his Islamic faith to transfer to his next assignment on sea duty with the USS Higgins.

Earlier this year, the Department of War announced that all servicemembers with existing religious grooming accommodations must submit a renewed application, which OS1 Shoyeb did on June 24, 2026. After Defendants missed their promised deadline of making a decision on that request by August 26, 2026, Defendants confirmed that upon OS1 Shoyeb's transfer to the USS Higgins scheduled for September 29, 2026, he must shave his beard to a quarter-inch in violation of both his religious beliefs *and* the parties' Stipulation, or instead be separated from his unit, deprived of duty for which he has trained, lose an important opportunity to advance in his career, and be prevented from fully serving his country.

Since 2018, hundreds of service members across all branches of the military have served with religious beards, including aboard ships. *See, e.g.*, *Singh v. Berger*, 56 F.4th 88, 93 (D.C. Cir. 2022) (describing military religious beard accommodation). And before that tens of thousands have served nearly everywhere with religious beards, medical beards, special-ops beards, or—in the Navy—morale beards while at sea. That includes Plaintiff EMN3 Di Liscia's service at sea with his religious beard intact and Plaintiff OS1 Shoyeb's service at sea on the USS Pearl Harbor from 2022-2023.

The Court should thus grant the motion to enforce for two reasons: The parties' Stipulation requires it, and no safety concerns counsel against it. Even assuming Defendants have some safety reason for banning religious beards in rare circumstances, Defendants can try to prove that in the ongoing litigation. But in the meantime, there is no reason OS1 Shoyeb cannot continue serving as he has since 2021 and as required by the Stipulation.

**BACKGROUND**

In spring 2021, four sailors prepared to seek an order from this Court protecting their free exercise of religion. Plaintiff EMN3 Edmund Di Liscia, then stationed aboard an aircraft carrier in the middle of the Indian Ocean during a time of high tensions with nearby nations, anticipated that a pending application to renew his longstanding religious accommodation might be denied. Compl. (Dkt. 1) ¶¶ 65-71; PI Reply (Dkt. 27) at 10. Plaintiff MC3 Leonidis Katsareas, after seeking a full religious accommodation for the first four years of his military service, was finally permitted to grow a four-inch beard in 2020, only to be told in 2021—after being transferred to shore duty in the legal department—that his accommodation would be rescinded. Dkt. 1 ¶¶ 91-106. Plaintiff ABF3 Dominque Braggs had been permitted to maintain a beard for medical reasons, but only if he shaved monthly, and his request for a religious accommodation was first denied and then stalled

on appeal. *Id.* ¶¶ 110, 115-16. Plaintiff OS1 Mohammed Shoyeb had "never shaved" prior to joining the military, but—unaware of a possible religious accommodation—he shaved out of a "desire to serve and defend his country." *Id.* ¶¶ 50, 120-21.

The filing of their complaint was expedited when, on April 14, 2021, Di Liscia's chief announced that Di Liscia must shave "prior to quarters 16APR2021" or face disciplinary action. *Id.* ¶ 3. Because Di Liscia was serving on a warship at sea, counsel rushed to file an application for a temporary restraining order on his behalf by the next day. The ultimate result was a party agreement on April 22, 2021, that three Plaintiffs—EMN3 Di Liscia, MC3 Katsareas, and ABF3 Braggs—would not be forced to shave while Defendants contemplated a "final decision" on their applications for a religious accommodation. In case of any "adverse decision," Defendants agreed not to "execute or permit execution of" the decision until Plaintiffs had adequate opportunity to challenge it, including by exhausting "any interlocutory appellate rights." Joint Status Report (Dkt. 10).

Because Plaintiff Shoyeb did not then have a beard, Defendants refused to include him in the agreement, forcing counsel to move for a preliminary injunction on his behalf instead. Once the motion was fully briefed, and immediately before a hearing scheduled on the matter, however, Defendants again agreed "to grant a religious accommodation permitting then-OS2 Shoyeb to grow a four-inch beard" for as long as he remained "in a duty status for the pendency of the litigation." Dkt. 30-1. Like the agreement with the other three Plaintiffs, the Stipulation imposed no limit on where OS1 Shoyeb could serve and, in fact, specified that Defendants would not remove OS1 Shoyeb from his then-present duty station "because" of his new accommodation. *Id.*

One year later, OS1 Shoyeb was transferred from shore duty in Japan to sea duty in San Diego, where he served on the USS Pearl Harbor. Shoyeb Decl. ¶ 6. The USS Pearl Harbor was docked

at Naval Base San Diego, the same port where—two years earlier—the USS Bonhomme Richard had suffered a catastrophic fire. *Id.* As a result, the USS Pearl Harbor was on high alert for the entire year OS1 Shoyeb served there, with at least semi-weekly drills testing extensive CBRN and fire scenarios. *Id.* at ¶¶ 6-7. During that time, OS1 Shoyeb was required to don protective gas or firefighting masks at least 60 times, never failing once to fully achieve a seal and participate successfully in the safety exercises. *Id.* at ¶¶ 8-12.

In the meantime, Defendants continued contemplating the religious beard rule. On November 15, 2021, the Secretary of the Navy issued a memorandum describing efforts to "draw[ ] upon the strength[ ] of all segments of our society." Joint Mot. to Stay, Ex. A (Dkt. 35-1) at 1. Pursuant to that effort, the Secretary ordered the Navy and Marine Corps by January 31, 2022, to "revisit and update" their grooming standards to relieve "undue burdens" for "Service members suffering from Pseudo Folliculitis Barbae" (PFB) and thus needing medical beards. *Id.* at 3. By February 3, 2022, they were to "propose changes" to uniform regulations to better accommodate service members' needs related to "racial, ethnic, religious, and gender" considerations. *Id.* And, "[n]o later than March 31, 2022," they were to initiate a "study examining the impacts of facial hair on gas mask functionality" and "identify potential alternatives for Service members with beards." *Id.* In response to these initiatives, the parties agreed to stay this lawsuit "until the action items in the Navy Memo are finalized or further order from this Court." Joint Mot. to Stay (Dkt. 35) ¶ 7.

In early March 2022, Defendants reported that the standards for medical beards in the Marine Corps had been significantly relaxed. PFB was "no longer a condition" that could be a "basis for separation"; Marines with PFB would no longer "be required to retain a copy of the medical waiver … on their person"; and medical officers were granted "final authority" for granting "temporary or permanent 'no shave' status for Marines" with a PFB diagnosis. Joint Status Report

(Dkt. 36) ¶ 2. As to uniform regulations, Defendants reported "13 … relevant changes," including relaxed standards for religious beards. *Id.* ¶¶ 4-5 & n.2. And in May 2022, Defendants confirmed they had "secured the Naval Health Research Center ('NHRC') in San Diego to conduct the study" regarding the impact of facial hair on gas masks. Joint Status Report (Dkt. 37).

Defendants completed the "data collection phase for the study" and commenced their "data analysis" in early 2023. Joint Status Report (Dkt. 45) ¶ 4. Around that same time, in *Singh v. Berger*, the Court of Appeals for the D.C. Circuit enjoined the Marine Corps from forcing three Sikh recruits to shave their hair and beards to participate in boot camp. 56 F.4th 88. The Court held unanimously that the Marine Corps had failed to show it had a compelling interest in requiring shorn heads or that shorn heads were the least restrictive means of achieving the Marine Corps' interest in unit cohesion. *Id.* at 99-106; Dkt. 37 ¶¶ 4-5.

By March 2023, the NHRC had completed its study and "transmitted" it to "the Department of the Navy for the Secretary's review and consideration." Joint Status Report (Dkt. 48) ¶ 3 . There it waited more than nine months until, on December 14, 2023, the Secretary "directed the Assistant Secretary … to review the report and coordinate with the U.S. Navy and the U.S. Marine Corps on an assessment of the report's impact as applied to religious accommodation and medical waiver policies both at sea and ashore." Joint Status Report (Dkt. 61) ¶ 4. That was "anticipated to take 180 days to complete," *id.*, with the deadline later extended another 45 days, Joint Status Report (Dkt. 65) ¶ 6. Even then the assessment was simply delayed without formal extension until finally being returned to the Secretary on January 13, 2025—thirteen months from the original directive and nearly two years after the study had been completed. Joint Status Report (Dkt. 69) ¶¶ 6-7.

On March 12, 2025, the Secretary responded by directing that the Under Secretary (Personnel) "gather existing standards … pertaining to grooming, to include, but not limited to, beards, and to

conduct a review of the standards." Joint Status Report (Dkt. 70) ¶ 7. Two days later, without explanation, Defendants issued a new "permanent religious accommodation" for OS1 Shoyeb, which would "remain in effect throughout [his] naval career unless rescinded by the Chief of Naval Personnel." *Id.* ¶ 8. That accommodation, however, was incomplete, allowing OS1 Shoyeb to maintain his full religious beard only while ashore, and forcing him to shave to a quarter-inch beard in violation of his religious beliefs "[w]hen assigned for duty aboard a ship or in an operational environment." Joint Status Report (Dkt. 72) ¶ 11.

Aware that OS1 Shoyeb was scheduled to go to sea in September 2026, in the parties' next joint status report, filed on May 22, 2025, OS1 Shoyeb's counsel advised the Court that the new so-called "permanent" accommodation was inconsistent with the parties' Stipulation and a violation of OS1 Shoyeb's sincere religious beliefs. *Id.* Counsel thus requested a scheduling conference with the Court "to discuss reopening this lawsuit and setting deadlines for moving the matter forward." *Id.* ¶ 13. The Court ordered another status update by July 7, 2025. 5/27/2025 Min. Order.

In that status report, counsel again requested to reopen the litigation. Joint Status Report (Dkt. 73) ¶¶ 10, 16. Although counsel believed OS1 Shoyeb was protected by the Stipulation, Dkt. 30-1, counsel noted it would take "at least one year of discovery to access evidence" necessary to show Defendants are aware that quarter-inch beards are "***not*** 'the least restrictive means of furthering [a] compelling interest'" and "to rebut any expert testimony." Dkt. 73 ¶¶ 14-15. To "avoid putting [then-]OS2 Shoyeb at a disadvantage in emergency proceedings that *may* otherwise be required when transferred to sea duty," counsel thought it wise to move the litigation forward. *Id.* ¶ 16 (emphasis added). Another status report, which had been ordered for August 21, 2025, reiterated that request. 7/9/2025 Min. Order; Joint Status Report (Dkt. 74) ¶¶ 11-12.

When the Court ordered another status report, 8/25/2025 Min. Order, Defendants argued for the first time that the Stipulation protected OS1 Shoyeb only "while assigned to his *current* duty assignment," ignoring the Stipulation's explicit language protecting him "while in *a* duty status for the pendency of the litigation." *Compare* Joint Status Report (Dkt. 75) ¶ 9 *with* Dkt. 30-1 (emphases added). Defendants also ignored that OS1 Shoyeb had twice already changed duty stations, including to a one-year stint in San Diego on sea duty. Shoyeb Decl. ¶¶ 2, 6.

In the meantime, the Department of War had taken up the issue. In late August 2025, the Department issued memoranda tightening allowances for medical beards, Dkt. 74 ¶ 7; Memorandum on Grooming Standards for Facial Hair (Aug. 20, 2026), https://perma.cc/67TF-822V, and restricting religious beards to "non-deployable roles with low risk of chemical attack or firefighting requirements," Dkt. 74 ¶ 8; Memorandum Grooming Standards for Facial Hair Implementation 2 (Sep. 30, 2025), https://perma.cc/5JLW-N5V9. If followed, these restrictions would result in OS1 Shoyeb and around at least 100 other sincere Sikhs, Jews, and Muslims from continuing their military service. *See, e.g.*, Dkt. 75 ¶ 11. Nevertheless, by this time, counsel for Shoyeb had "received information that—notwithstanding these restrictions … —new guidance [was] forthcoming that [would] direct all military branches to accommodate religious grooming requirements consistent with the First Amendment [and] the Religious Freedom Restoration Act." *Id.* ¶ 13. OS1 Shoyeb thus dropped his request to re-open the lawsuit, reserving the "right to apply to the Court for emergency relief" if OS1 Shoyeb were "put at risk of being required to shave or to trim his beard to a length shorter than the four inches allowed" by the parties' Stipulation. *Id.* ¶¶ 13-14.

Nothing changed until May 27, 2026, when the Secretary of the Navy announced it would "examine all [existing] religious accommodations that allow waiver of grooming standards" and

"subject [them] to review under [an] updated religious accommodation policy." Joint Status Report (Dkt. 79) ¶ 9. Counsel was informed that the new approach was intended to weed-out insincere beard accommodations, which had proliferated in the preceding years. *See* Transcript, Secretary of War Addresses General and Flag Officers at Quantico, Virginia, U.S. Dep't of War (Sep. 30, 2025), https://perma.cc/KBN5-GR8E (noting the military is not "full of Nordic Pagans," yet an inordinate amount of such beard accommodations had been granted by leaders failing to enforce sincerity standards). Pursuant to that effort, OS1 Shoyeb was directed by his chain of command to submit a renewed application for religious accommodation, Shoyeb Decl. ¶ 20, which counsel submitted on his behalf on June 24, 2026, *id.*

On August 5, 2026, Defendants acknowledged receipt of OS1 Shoyeb's re-application and indicated that "the Navy anticipates making a decision on that request by August 25, 2026." Joint Status Report (Dkt. 80) ¶ 10. When that deadline was missed, OS1 Shoyeb's counsel reached out to counsel for Defendants, again seeking to confirm that they would honor the Stipulation—a material request as OS1 Shoyeb's transfer to the USS Higgins is scheduled for September 29, 2026. Baxter Decl. ¶¶ 2-7. Defendants responded by reiterating their position contrary to the Stipulation's explicit terms that "OS1 Shoyeb may keep his rolled two-inch beard [only] if the Navy pulls his current orders to the USS Higgins and modifies those orders to a shore command." *Id.* ¶ 8. "If OS1 Shoyeb executes his current orders to the Higgins … he will be expected to trim his beard to one-quarter inch." *Id.* OS1 Shoyeb thus files this motion to enforce the terms of the Stipulation, allowing him to maintain his religious beard while on "duty status" aboard the USS Higgins. Dkt. 30-1.

## STANDARD FOR GRANTING INJUNCTIVE RELIEF

A plaintiff seeking an injunction must show: (1) irreparable injury; (2) that traditional remedies available at law, such as damages, could not compensate for that injury; (3) that the balance of hardships warrant an injunction; and (4) that a permanent injunction would not disserve the public interest. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). As explained fully below, OS1 Shoyeb will suffer irreparable injury if Defendants are allowed to violate the parties' Stipulation and his rights under federal law by forcing him to be left behind by his unit, denied his ability to fully serve his country, and prevented from fairly advancing his career. As all other factors weigh in his favor, the Court should grant him injunctive relief as to the Stipulation.

## ARGUMENT

The parties' Stipulation ensures OS1 Shoyeb the right to maintain his religious beard through the pendency of this litigation. If the Stipulation is not enforced, OS1 Shoyeb will suffer irreparable harm to his religious freedom rights secured by the First Amendment's Free Exercise Clause and the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb, *et seq.* The balance of the harms and public interest also weigh in his favor. The Court should thus grant injunctive relief by enforcing the Stipulation.

### I. The Court should enforce the parties' Stipulation.

#### A. Defendants' actions contravene the Stipulation.

The parties' Stipulation "is essentially a contract." *Segar v. Mukasey*, 508 F.3d 16, 21 (D.C. Cir. 2007). As such, it carries "the force of law" and grants OS1 Shoyeb defined "legal rights." *Am. Hosp. Ass'n v. Sullivan*, 938 F.2d 216, 220 (D.C. Cir. 1991). The court enforces those rights as "a matter of contract law," *Segar*, 508 F.3d at 21-22, honoring "the mutual intent of the parties[,]" *Pigford v. Schafer*, 536 F. Supp. 2d 1, 10 (D.D.C. 2008). Where the parties' terms are

"clear and unambiguous," the court applies their "ordinary meaning," *id.*, and the question of the parties' intent "begins and ends with the text," *In re United States*, 143 F.4th 411, 427 (D.C. Cir. 2025). The court further interprets the parties' terms "consistent with each other," so that each bears not only a "reasonable" interpretation, but an "effective" one. *Segar*, 508 F.3d at 22.

The plain terms of the parties' Stipulation unambiguously promised to maintain OS1 Shoyeb's religious accommodation "to grow a four-inch beard … while in a duty status for the pendency of the litigation." Dkt. 30-1. Instead of honoring that commitment, Defendants issued OS1 Shoyeb a new, materially different "permanent accommodation" in March 2025 and now claims that this new "accommodation" controls. Knowing that OS1 Shoyeb will join the USS Higgins sometime around September 29, 2026, Defendants are now putting him to an impossible choice: cut his beard in violation of his religious beliefs or be denied the opportunity to serve his country and advance his career. Shoyeb Decl. ¶¶ 21-24. This violates the clear terms of the Stipulation.

The first paragraph of the Stipulation is the relevant provision. It imposes only two conditions for OS1 Shoyeb's religious accommodation: (1) remain in a "duty status" for (2) the "pendency of the litigation." OS1 Shoyeb meets both of those conditions today. He remains on active duty, the same status he had in 2021, and his lawsuit is ongoing. *See* Shoyeb Decl. ¶ 2; Shoyeb Decl. (Dkt. 22-3) ¶ 2. The Stipulation has no other "limitation[s]." *In re Fannie Mae Sec. Litig.*, 552 F.3d 814, 821 (D.C. Cir. 2009). Thus, under a "straightforward reading" of its terms, Defendants must continue to honor OS1 Shoyeb's accommodation. *Id.* at 820.

Defendants reject this straightforward reading. In communications with the undersigned, counsel for Defendants sought to justify their ultimatum under the Stipulation's second provision, which states that Defendants "shall not transfer or remove OS2 Shoyeb from his present duty station *because* the U.S. Navy granted him a religious accommodation to grow a four-inch beard."

Dkt. 30-1 ¶ 2 (emphasis added). Counsel for Defendants reasoned that because Defendants did not order OS1 Shoyeb to the USS Higgins "because of the accommodation," then "nothing in the stipulation prohibits [them] from cancelling" OS1 Shoyeb's order "to allow him to maintain his preferred beard length." Baxter Decl. ¶ 8.

Defendants miss the point. To be sure, their position may not violate the *negative* obligation found in the Stipulation's second provision—to refrain from retaliation on account of OS1 Shoyeb's accommodation. Yet, Defendants disregard their *positive* obligation found in the first term—to maintain OS1 Shoyeb's accommodation throughout the litigation. OS1 Shoyeb need not cancel his orders to the USS Higgins because Defendants promised he could keep his beard wherever they stationed him. By essentially saying "never mind" to that promise made in the Stipulation's first provision, Defendants "violate[ ] [the] cardinal principle of contract construction … that a document should be read to give effect to all its provisions." *Segar*, 508 F.3d at 23-24. The Stipulation is not "reasonably susceptible" to Defendants' interpretation. *Id.* at 25. Its plain meaning guarantees OS1 Shoyeb's accommodation through his upcoming transfer.

Yet, even if Defendants could introduce ambiguity into the Stipulation, the "circumstances surrounding [its] formation" demonstrate the parties' intent to grant OS1 Shoyeb an accommodation for the pendency of the litigation. *Deutsche Bank Nat'l Tr. Co. v. Fed. Deposit Ins. Corp.*, 109 F. Supp. 3d 179, 197 (D.D.C. 2015) (quoting *United States v. ITT Cont'l Baking Co.*, 420 U.S. 223, 238 (1975)). The parties entered into the Stipulation in lieu of pursing the preliminary injunction. And in the parties' joint motion to withdraw the application, Defendants acknowledged they had "granted [then] OS2 Shoyeb an accommodation … for the pendency of this litigation," which "resolved the issues raised in the preliminary injunction." Joint Motion (Dkt. 30) at 1. The primary issue raised in the preliminary injunction was, of course, OS1 Shoyeb's

request to "live and serve in a manner consistent with his religious beliefs" "*during the pendency of this action*." PI Mem. (Dkt. 22-1) at 1 (emphasis added). Defendants could only have "resolved" that issue by providing ongoing relief—just as this Court could have "resolved" it only by considering and granting the motion.

Nor would that relief have been unusual. Just four months earlier, Defendants had promised the other three Plaintiffs in this case that they would allow for "emergency briefing" and exhaustion of their "interlocutory appellate rights" before "execution" of any "adverse decision" on their "religious accommodation requests." Dkt. 10 at 1. "Adverse action" would have included forcing them to shave to go on sea duty, a core aspect of Navy military service. *See* Shoyeb Decl. ¶ 24. And, in fact, this prior promise ensured that Plaintiff Di Liscia was able to maintain his accommodation while serving at sea on a warship. Di Liscia Decl. ¶¶ 3, 8. Yet, despite having entered a similar formal Stipulation to avoid a preliminary injunction *in this same case*, Defendants now suggest OS1 Shoyeb somehow received even less protection than the other three Plaintiffs.

Defendants' efforts to avoid the Stipulation's plain terms are also inconsistent with their past practice. Within one year of entering the Stipulation, Defendants transferred OS1 Shoyeb to sea duty in San Diego. There he spent an entire year in an especially rigorous testing environment with gas and firefighting masks, which he navigated without incident. Shoyeb Decl. ¶¶ 6-17. This shows that Defendants interpreted the Stipulation to apply to sea duty, at least until now.

### B. OS1 Shoyeb will suffer imminent, irreparable harm if the Stipulation is not enforced.

As detailed at length in OS1 Shoyeb's preliminary-injunction papers, Dkt. 22-1; Dkt. 22-3, forcing him to shave in violation of his faith violates both the Free Exercise Clause and RFRA. As both the Supreme Court and this Court have recognized, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Mahmoud v.*

*Taylor*, 606 U.S. 522, 569 (2025); *Berger*, 56 F.4th at 109. The same is true for loss of RFRA protections, especially where, as here, there is no "relevant daylight between the RFRA and First Amendment analyses." *Berger*, 56 F.4th at 109; *Fellowship of Christian Athletes v. District of Columbia*, 743 F. Supp. 3d 73, 93 (D.D.C. 2024). That's because RFRA "covers the same types of rights as those protected under the Free Exercise Clause." *Roman Catholic Archbishop of Wash. v. Bowser*, 531 F. Supp. 3d 22, 45 (D.D.C. 2021).

Although this loss of First Amendment freedoms is sufficient, OS1 Shoyeb also faces serious, ongoing consequences for continuing to abide by his sincere religious beliefs—namely, a halt to his military career advancement. Shoyeb Decl. ¶¶ 23-25. It is clearly irreparable harm to force OS1 Shoyeb "to choose" between abandoning his religious beliefs or his accomplished military career, inflicting upon him "the indignity of being unable to serve for reasons that … bear no relationship to [his] ability to perform." *Berger*, 56 F.4th at 110 (cleaned up); *see also Singh v. Carter*, 168 F. Supp. 3d 216, 230-31 (D.D.C. 2016) (military "singling out for special scrutiny" Sikh service member has "coercive effects" on his religious exercise of maintaining beard).

**C. The balance of harms and public interest favor OS1 Shoyeb.**

OS1 Shoyeb likewise meets the balance-of-harms and public-interest factors. These factors "merge when, as here, the Government is the opposing party." *Berger*, 56 F.4th at 107. And "[e]nforcement of an unconstitutional law is always contrary to the public interest." *Id.* at 108 (quoting *Karem v. Trump*, 960 F.3d 656, 668 (D.C. Cir. 2020)). Defendants particularly cannot show they will suffer harm here, where an injunction would simply maintain, for the course of this lawsuit, an accommodation that has already been in place for five years. Indeed, in *Singh v. Berger*, the D.C. Circuit held that the public interest weighed in favor even of plaintiffs who—contrary to here—sought an injunction that would "change the status quo in military training during

litigation." *Id.* at 108. If Defendants wish to negate the Stipulation, they can move to reopen the lawsuit and litigate their claims in the ordinary course. They may even petition the Court to expedite those proceedings. But OS1 Shoyeb's beard will do no harm while that litigation proceeds.

In the five years Defendants have taken to "study … the impacts of facial hair on gas mask functionality," they have not identified any harms that would justify forcing OS1 Shoyeb to shave while on sea duty. Dkt. 80 ¶1. Indeed, the evidence is quite to the contrary. Potentially thousands of sailors have worn beards on vessels at sea for medical and morale reasons. Dkt. 22-1 at 8-10; Baxter Decl. (Dkt. 2-3) ¶¶ 2, 4, 5 (demonstrating medical beard accommodations used by sailors); Di Liscia Decl. (Dkt. 2-4) ¶ 5 (describing sailors aboard the USS Roosevelt with no-shave chits for morale). Again, take Plaintiff Di Liscia's religious accommodation as an example, which allowed him to deploy on *two* ships for a total of *four years*. Di Liscia Decl. ¶ 3. On both ships, he donned firefighting masks as part of his training role and never had trouble achieving a seal. Di Liscia Decl. ¶ 9. For his part, OS1 Shoyeb has donned both SCBA and CBRN masks dozens of times in the years while he has had a religious accommodation during this litigation. Shoyeb Decl. ¶¶ 7, 10-11. He has never failed to achieve a seal on a mask or received any indication that his beard interfered with the performance of his duties. Shoyeb Decl. ¶¶ 16-17. If Defendants sincerely believed beards at sea inescapably caused real harm, they would not have agreed to let Plaintiff Di Liscia continue serving for years into this litigation or signed the Stipulation that allowed OS1 Shoyeb to go on sea duty in San Diego.

Any arguments of harm are further discredited by the nature of the masks at issue. As just an initial matter, SCBA firefighting masks are tightened with straps to ensure an adequate seal. Shoyeb Dec. ¶ 12. But even if a seal were not obtained, SCBAs are positive-pressure masks,

meaning that any leak would result in air leaking *out of*, not *into*, the mask, causing—at most—the oxygen tanks to empty faster than normal. And that is a not infrequent occurrence even for clean-shaven sailors, who may hyperventilate or overexert themselves and thus "overbreathe" their tanks. Shoyeb Decl. ¶ 14. The effects are minimal. *Id.* ¶ 14. And as for CBRN gas masks, Defendants' existing MOPP system, which dictates when sailors must don such masks, already anticipates more than adequate time for OS1 Shoyeb to shave before he would be required to don a mask, which he has testified he is willing to do if his or others' lives are at stake. Dkt. 22-3 ¶ 20; *see* Shoyeb Decl. ¶¶ 8-10. Considering these facts and Defendants' past practice with beards, the Court should have no concerns with enforcing the Stipulation's plain terms.

Finally, OS1 Shoyeb has also met his burden under the public-interest prong by showing that he will suffer irreparable constitutional harm if forced to cut his beard to serve on the USS Higgins. Imposing an unconstitutional condition is, again, "always contrary to the public interest," *Karem*, 960 F.3d at 668, and no less so when it comes to the "vital" task of "safeguarding religious freedoms protected by the Constitution and by statutes enacted by Congress." *Roman Catholic Archbishop of Wash.*, 531 F. Supp. 3d at 47. Enforcing OS1 Shoyeb's accommodation accounts for the gravity of the public interest in protecting those freedoms.

* * * *

In 2021, Defendants entered the Stipulation to avoid the need for a decision on OS1 Shoyeb's fully briefed motion for preliminary injunction. The language and intent of that Stipulation were to negate the motion by allowing OS1 Shoyeb to maintain his religious beard without adverse consequences while the Court more fully addressed his claims in this lawsuit. Five years later, having extended its own timelines numerous times, Defendants are now declining to provide OS1 Shoyeb the full benefit of that Stipulation, creating the need for emergency relief yet again. Should

Defendants now wish to litigate a preliminary injunction on his statutory and constitutional claims or proceed to discovery, they should be required to do so while the Stipulation accommodating OS1 Shoyeb's religious beard is enforced. To discriminatorily require OS1 Shoyeb to be left behind at his current duty station rather than progress with the service he's trained for and the career Defendants would otherwise afford him would subvert the parties' intent and alter the status quo. This motion should thus be granted, and Defendants—if they insist on re-opening the matter—should be required to do so in the ordinary course while OS1 Shoyeb accepts his duty assignment to the USS Higgins with his religious accommodation in place.

**CONCLUSION**

The Court should enforce the parties' Stipulation and require Defendants to accommodate OS1 Shoyeb's religious beard as long as he remains "in a duty status for the pendency of the litigation."

Dated: September 17, 2026

Respectfully submitted,

/s/ *Eric S. Baxter*

Eric S. Baxter (D.C. Bar No. 479221)
Daniel Blomberg (D.C. Bar No. 1032624)
Diana Verm Thomson (D.C. Bar No. 1811222)
Laura Wolk Slavis (D.C. Bar No. 1643193)
Caleb Henley Angell (D.C. Bar No. 1738150)
Katelyn G. Graziano (D.C. Bar No. 90046617)*
The Becket Fund for Religious Liberty
1919 Pennsylvania Ave. NW, Suite 400
Washington, DC, 20006
(202) 955-0095
*ebaxter@becketfund.org*

*Application for Admission forthcoming

Amandeep S. Sidhu (D.C. Bar No. 978142)
WINSTON & STRAWN LLP
1901 L St., NW
Washington, DC 20036
(202) 282-5828
*asidhu@winston.com*

*Counsel for Plaintiffs*